**FILED**

SEP 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**SAMUEL K. JACOBS**
  2300 M Street NW,  Suite 838
  Washington, D.C.  20037, and,
**NANCY M. HECKERMAN**
  2300 M Street NW,  Suite 838
  Washington, D.C.  20037
    **PLAINTIFFS,**

  v.

**SIDNEY S. FRIEDMAN,**
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
**VIJAY PATEL**
  4576 Felix-LeClerc,
  Ville-Laurent, Quebec HR-2R2,
  Canada;
**DILIP PATEL**
  1135 Du Phare ST.
  Leval, Quebec H7R- 6H5
  Canada;
**GREG I. ROSE,**
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
**WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.**
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
**YELIN SHI**
  12922 River Road
  Potomac, Maryland 20854; and,
**YU FAN**
  12922 River Road
  Potomac, Maryland 20854
    **DEFENDANTS.**

Case: 1:07-cv-01625
Assigned To : Walton, Reggie B.
Assign. Date : 9/13/2007
Description: Pro Se General Civil

JURY ACTION

**COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED AND CORRUPT ORGAINIZATIONS ACT (RICO) AND THREATS AGAINST THE UNITED STATES**

**JURY TRIAL DEMANDED**
Amendment VII & FRCP RULE 38

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## COMPLAINT UNDER CONSPIRACY UNDER RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AND THREATS AGAINST THE UNITED STATES

*SAMUEL K. JACOBS, et al, v. SIDNEY S. FRIEDMAN, et al*

## TABLE OF CONTENTS

**DOCUMENT**                                             *PAGE NUMBERS*

I. COMPLAINT, INTRODUCTION, PARTIES, JURISDICTION AND VENUE ..........1 thru 10

II. **PART ONE:** STATEMENT OF FACT AGAINST VIJAY PATEL AND
DILIP PATEL…..………………………………………………………….......10 thru 38

III. PRAYER FOR RELIEF FOR PART ONE………….………………… ……...…38 thru 39

IV. **PART TWO**:  STATEMENT OF FACT AGAINST SIDNEY S. FRIEDMAN,
GREG I. ROSE,  AND WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A…...……....39 thru 60

V.  COUNTS……………………………………………………….…………....60 thru 68

VI.  PRAYER FOR RELIEF FOR PART TWO…………..……...…………………..68 thru 70

VII. **PART THREE**: STATEMENT OF FACT FOR CONSPIRACY AND RICO…….... 70 thru 78

VIII. PRAYER FOR RELIEF FOR PART THREE……………………...…………….. 78 thru 80

IX.  TRIAL BY JURY…………………………………………………………….80

X.  APPENDIX……………………………………………………………...…..i thru iv

XI.  EXHIBITS

## COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AND THREATS AGAINST UNITED STATES

COMES NOW the Plaintiffs, Samuel K. Jacobs and Nancy Heckerman, in and for the United States District Court For The District of Columbia upon their oaths and affirmations, do present that the following Defendants Vijay Patel, Sidney S. Friedman, Dilip Patel, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and who have falsely and fraudulently interfered with the Commerce of the United States and Canada by inducing breach of contract with a third party pursuant to Article I, Section 8, cl. 3 of the Constitution of the United States; committed or threatened to attempt overt acts of murder and other bodily injury against the Plaintiffs, their family, and their associates and their families, in violation of Amendment IV; and, have joined those who would or who have planned, to commit acts of international terrorism against the United States and Canada in violation of Article III, Section 3.

In addition to the foregoing constitutional violations, said Defendants did conspire pursuant to Title 18 U.S.C.A. § 241 (Conspiracy against rights) to interfere with the Plaintiffs' right to conduct interstate and foreign commerce through the threats against the staff of the Plaintiffs' office by force or violence, and accomplished these goals by threats, intimidation, fraud, and deception in a pattern of racketeering activities through the specific violations of Title 18 U.S.C.A. § 1961 (Definitions); Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence); Title 18 U.S.C.A. § 1956(c)(7)(D) (Laundering of monetary instruments); Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television); Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity); Title 18 U.S.C.A. § 1117 (Conspiracy to murder); and, Title 18 U.S.C.A. § 1113 (Attempt to commit murder or manslaughter) all under Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).

That Plaintiffs assert that the conspiracy of the Defendants for and by which they committed the RICO predicate and overt acts is an enterprise not in "innocent hands." ALL of the Defendants knew that they were committing deceitful, fraudulent, willfully intentional and severely negligent acts which were meant to inflict harm on the Plaintiffs, their family and their associates through violations of the Consumer Protection Act, the Fair Debt Collection Practices Act, the Extortionate Credit Transactions statutes, the Federal Health Care Act, through multiple breaches of contract.

Defendants Vijay Patel and Dilip Patel induced the breach of contract among the Defendants, the Plaintiffs and third parties. Defendants Yelin Shi and Yu Fan, and their associates, breached multiple contracts against the Plaintiffs. Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan orchestrated the overt and predicate acts in conspiracy with Defendants Vijay Patel and Dilip Patel against the Plaintiffs.

Therefore, there are three parts to this Complaint because the parties joined in a conspiracy through the support of the criminal acts by third parties, and through the libel of the internet, after entirely separate and unrelated acts of breaches of contract and inducement to breaches of contracts were committed in domestic and international commerce.

These two cases: 1) for Defendants Vijay Patel and Dilip Patel, and 2) for Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, would never have had contact with each other if the internet search engines had not played the most significant part in laying the foundation for this combined conspiracy for multiple constitutional violations for fraud, threats of murder and kidnapping, invasion of privacy, defamation of character, negligence, slander, and libel through wire fraud in violation of Title

18 U.S.C.A. § 1343 (Fraud by wire, radio, or television). The conspiracies and extraneous RICO enterprises extend far beyond this complaint.

That Plaintiffs aver generally that all conditions precedent have been performed or have occurred, and plaintiffs state the following, to-wit:

## I. INTRODUCTION

1. This Complaint is divided into *tres partes,* and are separate yet related sets of issues:

a. The first part of the Complaint is against two Canadian Defendants named Vijay Patel and Dilip Patel and involved the following  torts issues involving threats against persons and terrorism:

A.  Interference with Commerce by Inducing Breach of Contract;

B. Criminal Acts Committed Against  Persons in the United States; and

C. Threatened Acts of Terrorism Against the United States and Canada.

b. The second part of the Complaint for violations of  RICO statutes against Defendants Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan who have breached contracts, or induced the breach of contracts, and perpetrated overt and predicate criminal acts through:

A. Pattern  Of Racketeering  Activities;

B.  Invasion  Of Privacy, Civil Rights and Constitutional Rights Violations; and,

C. Violations of  Fair Debt Collection Practices Act and Consumer Protection  Act.

c.  The third part of the Complaint relates to the interrelationship between all of these Defendants through a pattern of racketeering activities which have affected international and domestic commerce through:

A. Wire Fraud;

B.  Conspiracy of domestic and international terrorism; and,

C.  Fraud.  Defamation of Character and Invasion of Privacy.

2.  That since there are three parts to this case which have been consolidated because of the conspiracy allegations among these parties, and other parties to be named later, the brief is lengthy but not  ambiguous or redundant. Each part is necessary because of the time element of RICO pursuant to Title 18 U.S.C.A. § 1961(5) (Definitions); the incidents have occurred over a period of more than five  years. The incidents and the parties are commingled through conspiracy in violation of Title 18 U.S.C.A. § 1962 (b), (c), and (d) (Prohibited activities).

> In hearings before the Senate Judiciary  Committee, then Assistant Attorney General (now Ninth Circuit Judge) Steven S. Trott stated:
> [I]n gauging the overall deterrent value of auxiliary enforcement by private plaintiffs, the deterrence provided by the mere threat of private suits must be added to the deterrence supplied by the suits that are actually filed. Furthermore, as the federal government's enforcement efforts continue to weaken organized crime and dispel the myths of invulnerability that have long surrounded and protected its members, private plaintiffs may become  more willing to pursue RICO's attractive civil remedies in organized crime contexts . . . Finally, *civil RICO's utility against continuous large-scale criminality not involving traditional organized crime elements should be kept in mind.* These considerations suggest that private civil RICO enforcement  in areas of the organized criminality may have had a greater deterrent impact than is commonly recognized, and .. . might be expected to produce even greater deterrence in the future. *Oversight  on Civil RICO Suits: Hearings before the Senate Committee on the Judiciary,* 99th Cong., 1st Sess. 40-41 (1985) (Emphasis added).

3.  Therefore, for the convenience of the Honorable Court, the Plaintiffs have attached an Appendix which includes the citations of the RESTATEMENT OF LAW (SECOND) OF TORTS , and the Consumer Protection Act upon which the Plaintiffs rely for this complaint.

## II.  PARTIES

4.  The names and addresses of the Plaintiffs are as follows:

a.  SAMUEL K. JACOBS, (hereafter known as "Jacobs"), and his address is 2300 M Street NW,  Suite 800, Washington, D.C.  20037; and,

b.    NANCY HECKERMAN, (hereafter known as "Heckerman"),and her address is 2300 M Street NW,  Suite 800, Washington, D.C.  20037.

Except where the context is otherwise indicated, reference to "Plaintiffs" refers to each of the named Plaintiffs.

5.    On information and belief, the names and addresses of the defendant corporations and individuals are as follows:

a.    SIDNEY S. FRIEDMAN, Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, has represented Defendants Yelin Shi and Yu Fan for more than  two years in cases which the Plaintiffs have filed against these Defendants;

b.  VIJAY PATEL,  4576 Felix-LeClerc, Ville-Laurent, Quebec HR-2R2, Canada.

c.  DILIP PATEL, 1135 Du Phare St., Leval, Quebec H7R- 6H5, Canada;

d.  GREG I. ROSE, Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, is licensed to practice in this State and has previously filed an Appearance in this Court for at least two cases;

e.  WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, is a professional association which transacts its affairs in this State as well as others;

f.  YELIN SHI, (a.k.a. JACK SHI), individually and jointly, resides at 12922 River Road, Potomac, Maryland 20854, has known the Plaintiffs for over and has a furniture business named "STARLIN INTERIORS" at 9748 Traville Gateway Drive,  Rockville, Maryland 20850. He is the  purported husband of Yu Fan; and,

g.  YU FAN, individually and jointly, resides as 12922 River Road, Potomac, Maryland 20854, and is a registered Real Estate Broker in the State of Maryland and Virginia. some of the

names of her firms are: Nations realty, United Realty, and BMI Realty. Yu Fan resides, conducts, or has an agent who transpires her affairs in Virginia as well as Washington, D.C.

### III.  JURISDICTION  AND  VENUE

6.   That the jurisdiction for this cause lies with Article III, Section 2; Article I, § Section 8, cl. 3; Amendment IV; and Amendment V of the Constitution of the United States, and, Title 28 U.S.C.A. § 1332(a)(2) (Diversity of  citizenship; amount in controversy; costs). Parties are Citizens of two different countries: Plaintiffs are Citizens of the United States. Two of the Defendants are Citizens, or Residents, of Canada, two may be Citizens of The Peoples Republic of China and residents of the United States, and the remainder of the Defendants are purportedly Citizens of the United States.

a.  The laws enacted  thereof entitled  Title 18 U.S.C.A. § 1346 (Definition of "scheme of  artifice  to  defraud")  in  conjunction  with  the  RESTATEMENT  (SECOND)  OF RESTITUTION, QUASI CONTRACTS, AND CONSTRUCTIVE TRUSTS, § 202(c);

b.  RESTATEMENT OF LAW (SECOND) OF TORTS as Adopted and Promulgated by THE AMERICAN LAW INSTITUTE at Washington, D. C., May 17, 1979:  § 285, §290, § 291, § 292, § 293, § 311,§ 328B, and § 430, § 500, and § 501  for the deprivation of life, liberty and property;

7.  That paramount above all aforementioned Laws is the violation of Article III, Section 3, of the Constitution of the United States, and in this case,  in conjunction with Title 18 U.S.C.A. § 2382 (Misprision of treason) and Title 18 U.S.C.A. § 2383 (Rebellion or insurrection) and Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).

8. That, furthermore, in conjunction with the aforementioned violations of the Constitution of the United States, the Plaintiffs cite the following statutes which the Defendants are alleged to have violated:

    a.  Title 18 U.S.C.A. § 241 (Conspiracy against rights);

    b.  Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee);

    c.  Title 18 U.S.C.A. § 794 (Gathering or delivering defense information to aid foreign government);

    Title 18 U.S.C.A. § 875(b),(c), and (d) (Interstate communications);

    d.  Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit);

    e.  Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means);

    f.  Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information);

    g.  Title 18 U.S.C.A. § 1028A. (Aggravated identity theft);

    h.  Title 18 U.S.C.A. § 1113 (Attempt to commit murder or manslaughter);

    i.  Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television);

    j.  Title 18 U.S.C.A. § 1346 (Definition of "scheme or artifice to defraud");

    k.  Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence);

    l.  Title 18 U.S.C.A. §1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises);

    m.  Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments);

    n.  Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity);

o. Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity);

p. Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries);

q. Title 15 U.S.C.A. § 1692d. (Harassment or abuse); and,

r. Title 15 U.S.C.A. § 1692e. (False or misleading representations).

9.  That venue is still proper in this district for the review of this Complaint under Title 28 U.S.C.A. § 1391(b) (Venue generally), and the clause in that statute which states: "*except as otherwise as provided by law*", is the criteria by which this Complaint is filed pursuant to Title 18 U.S.C.A. § 1965 (a), (b) and (d) (Venue and process) which designates that a proceeding may be instituted in any court in any district (of a United States District Court) wherein a defendant is known [1] or "*resides, is found, has an agent, or transacts his affairs*" is pertinent because all of the parties have an agent, are found, or transact their affairs in the District of Columbia, primarily through wire fraud.

10.  That the value in controversy is over $75,000.00 and the parties are citizens of, or reside in, different states.[2] The Plaintiffs claim damages in excess of $2,300,000.00. Trial by Jury requested pursuant to **Amendment VII** of the Constitution of the United States and **Rule 38 of the Federal Rules of Civil Procedure**.

11.  That this case has parts which have evolved into a request that a formal investigation be conducted by the Attorney General of the United States pursuant to Title 18 U.S.C.A. § 1963 (f) (Criminal penalties), and Title 18 U.S.C.A. § 1966 (Expedition of actions)

---

[1] FRCvP Rule 65. Injunctive relief.— One fundamentally simplistic but potentially compelling argument is that a federal court has inherent power to issue equitable relief, or, alternatively, that § 1964(a) of RICO itself provides that the district courts have "*. . .jurisdiction to restrain violations of § 1962 of this chapter.. .*"

[2] A person has statutory standing if the person has constitutional standing and is within the plaintiff class the statute creates. *Federal Election Commn. v. National Conservative Political Action Comm.,* 470 U.S. 480, 484-490 (1985).

when deemed applicable and feasible by the Attorney General of the United States. *Plaintiffs implore the Department of Justice to open this cause of action for review.*

## PART ONE

### IV.   STATEMENT OF FACT AGAINST VIJAY DILIP PATEL

### A. INTERFERENCE WITH COMMERCE BY INDUCING BREACH OF CONTRACT

12. That in the first week of October, 2005, Defendants Vijay Patel and Dilip Patel falsely and fraudulently and with intent to deceive and defraud the Plaintiff Samuel Jacobs, represented to the Plaintiff Jacobs their proposal to start a charter airline from Montreal, Canada, to Mumbai, India. At the beginning of the discussions, both Defendants stated that they wanted Plaintiff Jacobs to be a partner in their airline in an advisory position or/as a Director because of his many years of experience in the airline industry.

13. That Jacobs stated that they would have to see how the airline developed and whether he had the time to devote to such an endeavor in Canada. The time for commuting to Montreal and the running of a business would be difficult when Plaintiffs' office is in Washington, D.C.

14. That the Defendants Vijay Patel and Dilip Patel claimed to have a partner from the Ivory Coast named Mr. Gazu whose father owns Sava-Air in Dacca, and was helping with the financing for the new airline, and that associate had a friend who was a Prince from Dubai named Jaleli, who had offered to lease an airplane to the new airline and also finance it. Said aircraft was supposedly located in Brazil. The Plaintiff asked for the information to confirm that the aircraft did belong to Prince Jaleli through its registration number. Defendant Dilip Patel

stated that he was contacting Prince Jaleli through Mr. Gazu to verify his commitment of this airplane for this new airline.

15. That the said commitment by Plaintiff Jacobs was taken upon the knowledge that the father of Mr. Gazu, the partner from the Ivory Coast, who was also an employee of Northwest Airlines, was known to be a person of substance for financing, and well able to finance his part of the pledged obligation for the new airline. Plaintiff Jacobs also had knowledge, from other creditable sources, that the Prince Jaleli was also a man of substance and a creditable and honorable businessman.

16. That based upon the representation of the financial commitment of Mr. Gazu from the Ivory Coast, and the substance and commitment of the airplane to the new airline by Dubai Prince Jaleli, Plaintiff Jacobs made a decision to proceed with the Defendants' new airline project.

17. That Plaintiff Jacobs then made recommendations concerning the next procedure to the Defendants Vijay Patel and Dilip Patel which was to hire a firm, preferably out of New York, which could raise the start up capital for the airline, and later outline the procedure for procuring the financing for the operation for at least two years after it was up and running.

18. That Plaintiff Jacobs stated that the expenses for the Private Placement firm would cost at least $250,000.00, and he would only want expenses to start the process and meet with the Defendants with the Private Placement firm in New York.

19. That the Defendants Vijay Patel stated that they had $179,000.00 to hire the Private Placement firm in New York to raise capital for the new airline, but they were receiving more money and could meet the obligation from Mr. Gazu. When asked to accompany Plaintiff Jacobs to New York to meet with the accountants, attorneys, and Private Placement firm, Defendant

Vijay Patel declined to leave Canada stating that he had other things to do and asked Plaintiff Jacobs to meet with them to start the procedures and to meet and give progress reports to him and Defendant Dilip Patel back in Canada.

20.  That Plaintiff Jacobs agreed to go to New York and start the project since both Defendants stated that they wanted Plaintiff Jacobs to represent them with these professionals since they did not know how to conduct such or even initiate such programs. Plaintiff Jacobs told the Defendants the start up fee of about $250,000.00 should  be sent directly to the Private Placement firm  in New York and that they should work out the arrangements with the firm. Plaintiff Jacobs distinctly stated that he was not a courier and that the $250,000.00 for the Private Placement should not be given to him.

21.  That  both Defendants vehemently objected to sending the money directly to the firm, and Vijay Patel acted insulted stating that he was a very wealthy man and did not have the time to  meet with anybody in New York about the project. The Defendants asked Plaintiff Jacobs to represent them completely in these agreements. Jacobs agreed to start the process, but stated to the Defendants that after the placement was initiated the Defendants would need to take charge and run their own business.

22.  That  on December 20, 2005, through Defendant Vijay Patel, Defendants  gave Plaintiff Jacobs $35,000.00 to start the project and Plaintiff Jacobs signed a Promissory Note for the $45,000.00 and a Sight Draft was issued for the $45,000.00 payable on January 17, 2005, as requested by Vijay Patel. It was agreed that the $250,000.00 would be paid to the Private Placement firm when by January 17, 2005, and that the $45,000.00 for the expenses would then be paid out of the $250,000.00 for the Private Placement. The money was for expenses to start

the charter airline project.  A copy of this Promissory Note is attached as 'Exhibit A' and incorporated by reference herein.

23.  That Plaintiff Jacobs proceeded to contact the firm in New York and initiated the Private Placement process. The placement was proceeding at the normal pace, but after Plaintiff Jacobs' work for the placement arrangements was completed,  Jacobs became quite ill with a virus, and during recovery and on the way to the doctor, he fell on the ice and broke his arm. The  Defendants Vijay Patel and Dilip Patel were both aware that Plaintiff Jacobs had broken his arm and had eleven fractures, a dislocated elbow, and had to have major surgery to install eleven screws and a steel plate in his left wrist.

24.  That Plaintiff Jacobs was in excruciating pain and  could not monitor the work; therefore, he did not pay attention to the progress of the Private Placement. Plaintiff told the Defendants that they should put everything on hold until he recuperated if they still wanted him in the business, and  to stop the private placement immediately. Both Defendants Vijay Patel and Dilip Patel knew the particulars of the firm in New York and could have called and stopped the Private Placement immediately.

25.  That  about six months later, Plaintiff learned that  the Defendants'  airline project was put on hold but  the Private Placement firm had not been contacted to stop until further notice. The Private Placement firm had continued work and the billing was quite large.

26.  That Plaintiff Jacobs had  his attorney attempt to confirm the lease for   Prince Jaleli's airplane  through regular channels of commerce, and Prince Jaleli declined  to continue to commit to any such arrangements with the Defendants since Mr. Gazu, his friend from the Ivory Coast, had withdrawn his financial commitment. The whole project was beginning to reveal itself as a scam by two Defendants who gave false and fraudulent representations to the Plaintiff

Jacobs. In other words, the Defendants were attempting to defraud others into committing for this airline with their funds and expertise and after the work was completed they intended to step in and claim the results of these efforts. The following rational is the basic summation of this bad business venture:

> The tort which has come to be known as "inducing breach of contract" is one of several segments of a large area of the law of tort in which damages may be recovered for unlawfully causing loss to the plaintiff in connection with his business relations. It differs from deceit in that the loss in the latter case results immediately from conduct of the plaintiff himself, induced to take injurious action by reliance upon the defendants' fraudulent misrepresentations. Moreover, usually, although not invariably, the business relations out of which the damage arises in a deceit case are between the plaintiff and the defendant whereas in the case of inducement to breach of contract, the contract involved is between the plaintiff and a third person. The loss results from the action taken by the third person, as a result of the defendant's conduct. [3]

27.   That Mr. Gazu, Prince Jaleli and   Plaintiff Jacobs were all provided fraudulent and false representations by the Defendants. These representations each relied upon  the performance of the other parties who either were going to provide initial financing for the project, supply aircraft for the project, or obtain long term financial commitments for Defendants' airline without the Defendants Vijay Patel and Dilip Patel supplying even the least of the out of pocket expenses.

28.   That immediately upon discovery, Plaintiff, in May, 2006, gave Defendant  notice that he had rescinded said Private Placement on account of said fraud and misrepresentations, and cancelled said contract for the Private Placement.

29.   That said representations were false and were then and there  known by the Defendants to be false; that in truth and in fact,  Defendant Vijay Patel did not have the $179,000.00 that he claimed to have for investment to even start the initial proceedings for the

---

[3]  FOWLER V. HARPER, INTERFERENCE WITH CONTRACTUAL RELATIONS, 47 Northwestern  Univ.L.Rev., p. 873(1953).

airline. In fact, Defendant Vijay Patel later stated that he had a hard time raising the $35,000.00 which he gave to Plaintiff Jacobs for expenses to meet with the professionals (Accountants, attorneys, Private Placement specialist from the brokerage houses) in New York.

30.    That Plaintiff Jacobs asked Defendants Vijay Patel, and Dilip Patel, why they had lied to him about their true financial condition and why they had pursued this airline while knowing that they did not have the funds and yet were fraudulently stating that they could procure the necessary funds for the operation plans to be developed.

31.    That initially, Plaintiff Jacobs was personally undertaking the obligation of signing for the Private Placement fees of over $250,000.00, and these two Defendants wanted a note for the fees of $45,000.00 back after the $250,000.00 was sent. Jacobs thought that the Defendants were only being cautious, and only later did it become clear when Plaintiff Jacobs discovered that Vijay Patel did not have any sort of bank account for the business totaling $179,000.00 that he was not a rich man and had lied about the pair's whole financial capabilities.

32.    That then Plaintiff Jacobs met Defendant Vijay Patel at a hotel in Canada to return the $45,000.00. Defendant Vijay Patel threw the original Sight Draft and the Promissory Note back at Jacobs and said that he was not going to be working for the computer company and needed $100,000.00 instead of $45,000.00.[4] At that point, Plaintiff Jacobs also learned that Vijay Patel had been laid off from his job and needed the money; he had not quit his job just to start the airline as he had previously stated. This was another lie.

---

[4] Plaintiffs allege that the demand for $100,000 constituted a usury violation because the lending of money at a rate usurious was at least twice the enforceable rate pursuant to Title 18 U.S.C. § 892(b) (1)(B), (b)(2), and (b)(4).
Plaintiffs allege that this is a RICO violation of Title 18 U.S.C. § 1961(6) because of the continued pattern of activity of the enterprise pursuant to Title 18 U.S.C. § 892 (3)(B).

33.  That Defendant Vijay Patel had stated that he had lived in Texas, and hated the U.S. because they treated him badly.  Defendant Vijay Patel left the United States and Plaintiff Jacobs has asked the Department of Homeland Security why he abruptly left the United States and under what conditions.

34.  That, furthermore, Plaintiff Jacobs later discovered from Defendant Dilip Patel that Defendant Vijay Patel had been arrested at least once for beating his wife, and, had spent time in jail during one of those arrests. ***Defendant Vijay Patel could never be an Officer, or even on the Board of Directors, for any airline in the world if he had a criminal record pursuant to, as an example,  Title 49 U.S.C.A. §46311 and §40115.***

35.  That the hiding of this information by Defendant Vijay Patel from Jacobs was a criminal overt act in itself on behalf of Defendant Vijay Patel. This is negligence on the part of Defendants pursuant to § 290 What Actor is Required to Know, § 291. Unreasonableness; How Determined; Magnitude of Risk and Utility of Conduct, and § 292. Factors Considered in Determining Utility of Actor's Conduct. *(See Appendix).*

36.  That Plaintiff believed and relied upon Defendants Vijay Patel and Dilip Patel's said representations and was thereby induced to contact and order the Private Placement of the stocks for said airline which the Defendants were attempting to start. The Plaintiff would not have entered into said commitments for the Private Placement work or had the services performed if he had known that said representations were false and fraudulent,  that while he was recuperating from injuries Mr. Gazu cancelled his commitment for initial funding, and Prince Jaleli had withdrawn his offer of commitment for the aircraft whatever reason he had discovered.

37.  That said obligation to the Private Placement firm has matured and the billing statements  have not been paid, and the Private Placement firm is in the process of filing against

this Plaintiff for the debt incurred by Defendants Vijay Patel and Dilip Patel. The Plaintiff relied upon the statements and representations of the Defendants to his serious detriment and was as a result thereof persuaded and induced to, and thereupon did, take and accept responsibility for the raising of the capital for the airline with the Private Placement firm, and agreed to pay large sums of money in carrying out the terms and conditions thereof before he discovered the Defendants' fraud and misrepresentation. Defendants induced Plaintiff Jacobs to commit a breach of contract with this third party.

38. That had it not been for said willfully and knowingly false and fraudulent statements and representation by Defendants to Plaintiff, and his belief and reliance thereon, Plaintiff would not have taken or accepted said responsibility for Private Placement for the sum which has resulted in approximately $312,000 as of this filing date. On account of said false and fraudulent representations said fees for the Private Placement and the interest acquired therein by Plaintiff was of no value to him, or at all, and he has sustained a pecuniary loss and injury in the sum of $312,00.00 for these professionals' work.

39. That the funds of Mr. Gazu were not those of the Defendants Vijay Patel and Dilip Patel to commit as they represented to Plaintiff, and that said statements and representations were, or became wholly false, and were known by Defendants to be wholly false and were made by them expressly to induce Plaintiff to accept said conditions of the Private Placement and to carry out each and every term and condition thereof, as he did until he discovered that said representations were false and fraudulent.[5]

---

[5] *Skene v. Carayanis* (1926) 103 Conn. 708, 131 A. 497 (P., a real estate broker, was deprived of opportunity to complete negotiations for sale of property by D., another broker. Said Maltbie, J., "The law does not, however, restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or

40. That when the Defendants Vijay Patel and Dilip Patel made the representations they knew that they were false, and they made the representation recklessly, without regard to any knowledge or its truth or falsity, and as a positive assertion. Said fictitious value was created and caused by the wrongful acts of Defendants Vijay Patel and Dilip Patel in making said false representations.

41. That Plaintiffs allege that these falsities are sufficient to sustain this action for deceit. The Defendants made these representations to Plaintiff Jacobs with the intention that the information be given or made to a class of which this Plaintiff is affiliated, or to the public generally. Defendants made the representations with the intent to deceive and for the purpose of inducing Plaintiff Jacobs to act upon it.

42. That the Plaintiffs acted in reliance upon these representations.    Plaintiff Jacobs relied upon: (a) his ignorance of the falsity of the representation; and (b) his right to rely on the truth of the representation.

43. That the Plaintiff sustained the alleged loss and injury as the proximate result of the false representations having been made. That in procuring the obligation for the Private Placement, the Plaintiff has been put to great expense, for travel expenses, attorney's fees, and other expenses, in all the sum of approximately $69,000.00 as of this date.

44. That the Plaintiffs assert that Defendants Vijay Patel and Dilip Patel owe the Plaintiffs and the brokerage firm over $381,000.00 for these damages, expenses, and other costs. The $45,000.00 claimed by these two Defendants is only about 1/9[th] of what is owed to the

---

occupation, and to secure to himself the earnings of his industry. * * * 'No man can justify an interference with another man's business through fraud or misrepresentation, nor by intimidation, obstruction, or molestation.' ")

brokerage firm and the Plaintiffs. For Defendant Vijay Patel to repeatedly state that he was going to kill Plaintiff Jacobs and his family for this $45,000.00 when the Defendants Vijay Patel and Dilip Patel are liable for $381,000.00 for their own business venture proves the absurdity of their claims and their violent threats.

45. The Plaintiffs state that said Defendants Vijay Patel and Dilip Patel committed these alleged frauds and inducements to breach the contract through:

a) *wire fraud* in violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television) and Title 18 U.S.C.A. § 875 (Interstate communications);

b) *conspiracy* in violation of Title 18 U.S.C.A. § 241 (Conspiracy against rights) incorporating threats of violence and murder in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1113 (Attempt to commit murder or manslaughter), and, Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity); [6]

c) *breach of contract* pursuant to RESTATEMENT (SECOND) OF RESTITUTION, QUASI CONTRACTS, AND CONSTRUCTIVE TRUSTS, § 202(c); and,

d) *tortious and personal injury* inflicted upon the Plaintiffs due to the unlawful conduct of the Defendants pursuant to RESTATEMENT OF LAW (SECOND) OF TORTS as Adopted and Promulgated by THE AMERICAN LAW INSTITUTE at Washington, D. C., May 17, 1979: § 285, §290, § 291, § 292, § 293, § 311,§ 328B, and § 430, § 500, and § 501. (See Appendix at end of Complaint).

---

[6] The "core component" requires allegation of "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citation omitted) as quoted in The Law of Civil RICO, § 3.1, by Douglas E. Abrams, Little, Brown & Company, (1991).

46. That Defendant Vijay Patel refused to accept the return of anything that Plaintiff had received from him or in any way restore to Plaintiff the things of value received by Defendant from Plaintiff. Plaintiff is now ready, able, and willing, and continues to offer to restore to Defendants all things of value received from them on account of said Promissory Note, on condition that Defendants will be required to do likewise by paying the outstanding costs for the work performed for their Private Placement for their airline.

47. That if the Defendants Vijay Patel and Dilip Patel refuse to acknowledge their obligation for this debt for this Private Placement to these firms or investment bankers, then Plaintiffs will join them as co-defendants in any forthcoming legal actions initiated by these firms for which the Defendants Vijay Patel and Dilip Patel are obligated for the performance of said work.

> "One of the dominant purposes of the law of torts is to allocate the losses caused by conflicts among individual interests. In modern industrial society, these conflicts inevitably multiply in frequency. At the same time, scientific advancements continue to enlarge each individual's power to harm others. An elastic tort policy is therefore needed to provide adequate remedies for the increasing possibilities of injury. The prima facie tort doctrine is an established reformative instrument which can do much to further that objective. In jurisdictions adopting the doctrine, litigants need not be denied relief because the common law has not yet been extended by analogy to fit newly emerging problems. While the prevailing theory of torts is still 'no liability without fault,' the prima facie tort doctrine is helping to develop the concept of 'no fault without liability'." [7]

48. That Plaintiff Jacobs went to Canada and offered to repay the $45,000.00 to Defendant Vijay Patel, but Vijay Patel refused the repayment, returned the Promissory Note, and demanded $100,000.00 which is a repayment at a rate usurious in violation of Title 18 U.S.C.A. § 1961 (6) (Definitions). Plaintiffs refused to pay this extortionate amount for the usurious unlawful debt demanded.

---

[7] Law of Torts, Third Edition, by William M. Hepburn, Sometime Dean of the School of Law and Professor of Law in Indiana University, West Publishing Co., 1954, Pg. 10.

49.  That by demanding this extortionate amount of money more than twice the amount agreed to in writing, the Defendants Vijay Patel and Dilip Patel violated   Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and § 894 (Collection of extensions of credit by extortionate means). Both Defendants Vijay Patel  and Dilip Patel deny their responsibility for their debt to this Private Placement investment banker, and this  friction has brought about this part of the lawsuit for the inducement of breach of contract.

50.  That, however, when Plaintiff refused to repay Defendant Vijay Patel  the usurious amount of $100,000.00, especially without settling the   Private Placement obligation which both Defendants now deny, Vijay Patel started making numerous telephone calls not only to the Plaintiffs, but used the internet 'people finder' services to contact mainly unrelated parties with threats and slanderous accusations against the Plaintiffs in all parts of the United States at all hours of the day and night.

51.  That some of these people have in turn have contacted the Plaintiffs about Vijay Patel's obscene, threatening statements and the harassing telephone calls which he has set on speed dial. This has brought about the second part of this lawsuit against Vijay Patel and Dilip Patel:

## B.  CRIMINAL ACTS COMMITTED AGAINST  PERSONS IN THE UNITED STATES

52.  That after Plaintiff Jacobs refused to return the $45,000.00 unless  Defendants Vijay Patel and Dilip Patel accepted the responsibility for the Private Placement, several conference calls were made on the telephone among the parties, and many calls between Jacobs and Vijay Patel, and between Dilip Patel and Jacobs were held. Both Defendants knew that Plaintiff Heckerman was attempting to start an airline in the United States named "Jet Airways."

53. That Plaintiff Nancy Heckerman owns a Trademark in the United States for the name "Jet Airways" and Indian airline "JET AIRWAYS JOY OF FLYING" has filed a "Petition for Cancellation" of that name. **In response to this Petition for Cancellation, Plaintiff Heckerman did some investigating and discovered that the airline is funded directly by the Al Qaeda terrorist Dawood Ibrahim, (a.k.a. Sheikh Dawood Hassan, a.k.a. Dawood Ebrahim), and the United States has designated Ibrahim as a 'Specially Designated Global Terrorist' under Executive Order 13224.[8]**

54. That Dawood Ibrahim is also referred to in India as "India's Osama Bin Laden"[9] known due to the fact that he has been associated with multiple terrorists attacks in India including the hijack of a train outside of New Delhi where the doors were chained shut and then a fire was set to the train—with passengers left inside the burning train.

55. That JET AIRWAYS JOY OF FLYING has gone to extensive lengths to threaten, slander and libel the name of Plaintiff Heckerman for daring to object to the theft of the Plaintiff's Registered Trademark name. When Plaintiff Heckerman applied for the Trademark name in 2002, and later received the Registered Trademark name with no opposition or objections, JET AIRWAYS JOY OF FLYING was a domestic Indian airline with no chance of coming to the United States, or even to Europe, until the United States and India signed an Open Sky Treaty in April, 2004.

---

[8] **"U.S. DESIGNATES DAWOOD IBRAHIM AS TERRORIST SUPPORTER," FROM THE OFFICE OF PUBLIC AFFAIRS, United States Treasury, October 16, 2003; FACT SHEET, www.usembassy.it/file2003.**

[9] "Pakistan after India's 'Osama', too," by Siddharth Srivastava, New Delhi-based journalist, *Asia Times Online Ltd.*, 2004.

Under statutes so providing fear such as will lay the basis for a charge of extortion may be induced by a threat to expose any derogatory information or impute to an individual any deformity or disgrace,[10] or to expose any secret affecting him.[11]

56.  That after the incident where Defendant Vijay Patel irately and vehemently refused to accept the repayment of $45,000.00, and instead demanded $100,000.00 in violation of the usury laws in the United States,[12] Defendant Vijay Patel stated that JET AIRWAYS JOY OF FLYING was going to finance for their new charter airline. Defendant Vijay Patel stated that if the $100,000.00 was not paid to him he would contact JET AIRWAYS JOY OF FLYING and help them put all sorts of incriminating information against Plaintiff Heckerman on the internet.

57.  That Defendant Vijay Patel stated that JET AIRWAYS JOY OF FLYING was going to work with him if he gave them all of the information that he could find out about the both Plaintiffs to this Indian airline in order that they could threaten and intimidate Plaintiff Heckerman to give them her "Jet Airways" Trademark.

A threat need not be in any particular form and may be expressed in very general or vague terms without indicating the precise nature of the accusation or the degree of crime intended,[13] or containing all of the statutory elements of the offense to be charged.[14]

58.  That, after running up these bills by fraudulently using the Plaintiff for the Private Placement firm, Defendants Vijay Patel announced that JET AIRWAYS JOY OF FLYING was going to finance their charter airline in return for giving them information about the Plaintiffs,

---

[10] *People v. Goldstein,* 191 P.2d 102, 84 C.A.2d 581; *ex parte* 28 P.2d 132, 55 Nev. 169; *State v. Gilkes*, 345 N.W.2d 5313, 118 Wis.2d 149; *Commonwealth v. Miller,* 432 N.E.2d 463, 385 Mass. 521; *Stein v. Commonwealth,* 402 S.E.2d 238, 12 Va.App. 65.
[11] *People v. Goldstein*, 191 P.2d 102, 84 C.A.2d 581.
[12] Plaintiffs do not know if the Canadians have similar laws concerning the usury laws, but they do know that the Consumer Protection Act in Canada is practically identical to the U.S. version. The only difference between these laws in most parts is the number of the section of the law.
[13] *State v. Wilbourn*, 257 N.W. 571, 219 Iowa 120; *People v. Percin*, 47 N.W.2d 29, 330 Mich.
[14] *Bush v. State,* 168 P. 508, 19 Ariz. 195; *State v. Wilbourn*, 257 N.W. 571, 219 Iowa 120.

and, as Vijay Patel stated, *"Jet Airways can destroy you and your wife for daring to challenge them and making it difficult to come to the U.S."*

> Contractual interests may be impaired by false statements about the plaintiff which, because they adversely affect his reputation in the community, induce third persons to break their contracts with him. This phase of the matter has crystallized into the law of defamation and is governed by the special rules which have developed in that field. Again, third persons may refuse to carry out their contracts with the plaintiff because of false statements circulated about the plaintiff's property, as by throwing doubt on his title thereto  or by reflecting adversely upon the equality thereof. This type of injury falls within the pattern of disparagement of title and is governed by the special rules pertaining to slander of title or trade libel although it is sometimes treated generally as an unjustifiable interference with the plaintiff's profitable economic relations with others in the nature of injurious falsehood. [15]

59. That both Defendants Vijay Patel and  Dilip Patel have stated that even though  the Private Placement was initiated on behalf of them and their airline, they  were not   responsible and never asked Plaintiff Jacobs to start the procedure.  However, by demanding that there be a Promissory Note for the fees to arrange the Private Placement, Defendant Vijay Patel confirmed the fact that the two Defendants had indeed asked that Plaintiff Jacobs represent them to the firm for the Private Placement.

60. That Defendant Dilip Patel remained calm and business like throughout all of these previous proceedings, but Defendant Vijay Patel became irrational, and often threatened to come to the U. S. and kidnap or bodily harm  the Plaintiffs  in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence) and Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity).

> The making of a threat of personal violence or injury has been held an indictable offense at common law where the threat is made with a view to extorting money and is of such a

---

[15] As quoted in: *Campbell v. Gates*, Court of Appeals of New York, 1923. 141 N.E. 914. 236 N.Y. 457.

character as would be apt to induce a firm and prudent man to submit, although he may not have yielded to the threat.[16]

61. That Defendant Vijay Patel threatened to murder the Plaintiffs and their family on the telephone and left threatening messages on answering machines. (*"It has been held that a demand for a settlement of a civil suit between the parties is not extortion by threats, although the basis for such suit might also be grounds for a criminal charge."[17]*)

Any language which conveys with sufficient clearness to be understood the proposition that a charge will be made is sufficient.[18]

62. That on September 11, 2006, a man called Plaintiffs' office in Washington, D.C. and identified himself as "Eve La Fontaine" of the Royal Mounted Canadian Police. When the call was returned it was discovered that the number belonged to a telephone sim card, not a land line. Plaintiffs aver that if the call was from a real Royal Canadian Mountie then the telephone number would go directly to a bona fide office for the Royal Canadian Mounted Police.

63. That later Defendant Vijay Patel called both of the Plaintiffs and told them he was a Royal Canadian Mounted Policeman named "Sandy Johnson" which was sometime in November, 2006. He even left a telephone message stating that he was "Sandy Johnson," but his voice was clearly identifiable as Vijay Patel. Defendant Vijay Patel has made multiple telephone calls using that name.

64. That Defendant Vijay Patel later called and identified himself as a detective named "Marvin Crosby" from Canada. This time he made his voice sound very low but the accent was still distinguishable. There are tapes of the telephone messages.

---

[16] *State v. Evans,* Houst.Cr. 97.

[17] *McMillen v. State,* 60 Ind. 216.

[18] *People v. Percin*, 47 N.W.2d 29, 330 Mich.

65. That the Plaintiffs have a business associate named Mr. Milan Patel who works with them and who lives in a Washington, D.C. suburb. Mr. Milan Patel has a wife, and a baby a little over two years. (*"Under a statute so providing, the offense is committed whether the threat is to injure the person or property of the individual threatened or that of any relative of his or any member of his family, or of any corporation of which he is an officer, stockholder, employee, or agent."[19]*).

66. That Mr. Milan Patel has never met either Defendant, and had no part in the arrangements for the Defendants' airline other than once answering a telephone call from Plaintiff Jacobs and sending him a fax for him when Jacobs was in Canada during meetings with the Defendants.

> Where contains no limitation with respect to the person as to whom the threat is made or the person from whom it is intended to extort the money, the threat may be made to anyone, either the person to be injured, the person from whom it is intended to extort the money, or to a different person.[20]

67. That Defendant Vijay Patel not only made these threatening calls to the Plaintiffs, he has made, and continues to make, harassing calls to Mr. Milan Patel at all hours of the day or night.[21] He stated to Mr. Milan Patel: *"I know where you live, and I will come get your wife and your baby. And I will get even with you."* This is another threat pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence) and Title 18 U.S.C.A. § 1201 (Kidnapping). (*No precise words are needed to convey threat.* [22]).

---

[19] *People v. Lamm*, 54 N.E. 2d 374, 292 N.Y. 224.

[20] *Commonwealth v. Pelligrini*, 54 N.E. 552, 283 Mass. 300.

[21] Mr. Milan Patel is not related to either Defendant, but his family originally came from that part of India two generations ago, and the surname is common like "Smith" in the United States. Some of the Defendants' messages have been left in the native language of that region.

[22] *State v. Stockford*, 58 A. 769, 77 Conn. 22; *State v. Howe*, 247 N.W.2d 647; *States v. Brunswick*, App., 91 N.E.2d 553, 56 Ohio Law Abs. 207.

68. That attached to this Complaint is a copy of a letter and Affidavit that Mr. Milan Patel sent to the Royal Canadian Mounted Police about Vijay Patel. (True and correct copies of the letter and Affidavit are attached as 'Exhibit B' and incorporated by reference herein.).

69. That the acts of Defendant Vijay Patel were committed with a wanton, willful and malicious intention to inflict fear and extreme mental anguish and distress against all those he has called pursuant to § 500. Reckless Disregard of Safety Defined and § 501. Liability for Conduct in Reckless Disregard of Another's Safety. (See Appendix)

70. That Mr. Milan Patel has resorted to turning off his telephone when Defendant Vijay Patel's starts ringing him up since the calls have literally worn out one telephone, and threatened his and his family's peace and tranquility, especially when Defendant Vijay Patel starts calling between 1:00a.m. and 6:00a.m. Mr. Milan Patel is not represented by these Plaintiffs, but has presented his documents to prove how irrational and dangerous these Defendants appear to be to all of the victims, not just these Plaintiffs.

Implicit in the word threat is the requirement that the expression in its context have a reasonable tendency to create apprehension that its originator will act according to its tenor.[23]

71. That Defendant Vijay Patel also called Milan Patel on December 20, 2006, at 10:23 A.M. and identified himself as "Sandy Johnson," a member of the Royal Mounted Canadian Police, but Mr. Milan Patel could readily identify the Defendant Vijay Patel as the caller.

72. That Defendant Vijay Patel called Milan Patel on December 27, 2006, and identified himself as "Marvin Crosby" the detective.

73. That Defendant Vijay Patel then started calling the Plaintiffs and Mr. Milan Patel at all hours of the day and night and would make as many as 20 to 75 telephone calls per day to

---

[23] *People v. Maldonado,* 1 Dist., 617 N.E.2d 236, 187 Ill.Dec. 28, 247 Ill.App.3d 149, appeal denied 622 N.E.2d 1219, 190 Ill.Dec. 902, 152 Ill.2d 571.

each person usually ranting and raving, or slurring his words so that he is not understandable. The number of calls made each day, and which are STILL BEING MADE   each day, are not exaggerated since Defendant Vijay Patel has sent Plaintiff Jacobs e-mails demanding that he pay the Defendant's telephone bills.

74.  That  each fraudulent use of wire or mail constitutes a RICO predicate act. Plaintiffs allege that the use of the mails and the wire transfer to the bank was  in furtherance of the scheme or artifice to reach the fruition of the extortion. Plaintiffs allege that this scheme or artifice consisted of affirmative misrepresentation or of concealment in violation of Title 18 U.S.C. § 1346 (Definition of "scheme or artifice to defraud").

75.  That one e-mail stated that he had lost several telephone accounts because of all of the calls he was making to the Plaintiffs, their family members, and associates with his threats. See 'Exhibit B' for the e-mails sent to the Plaintiffs with one of them containing a "cc" to S. Datta at JET AIRWAYS JOY OF FLYING  in Mumbai, India. True and correct copies of these e-mails are attached to this Complaint as 'Exhibit C' and  incorporated by reference herein.

76.  **That Defendant Vijay Patel  has verified in writing and has left messages on answer machines, which these Plaintiffs and others have recorded, that he has committed literally hundreds of acts of wire fraud in violation of  Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television), and, in his e-mails he has threatened:** *"make sure you hide very well because when I find you, you will be punished," "I will get even,"* **and,**  *"I will track you down. "'*

> A threat otherwise coming within the purview of the statute need not, unless the statute expressly so requires, be in any particular form[24] or in any particular words,[25] and it may

---

[24] *State v. Wilbourn,* 257 N.W. 571, 219 Iowa 120.
[25] *Bush v. State,* 168 P. 508, 19 Ariz. 195; *State v. Wilbourn,* 257 N.W. 571, 219 Iowa 120.

be made by innuendo or suggestion.[26] All that is necessary is that it be definite and understandable to a mind of ordinary intelligence.[27] Furthermore, the statute may not require an overt act to carry out the threat.[28] (C.J.S. THREATS)

77. That Defendant Vijay Patel has committed these threatened acts of violence in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity), Title 18 U.S.C.A. § 875 (Interstate communications), Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), Title 18 U.S.C.A. § 1113 (Attempt to commit murder or manslaughter), and, Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).

78. That the overt acts of Defendant Vijay Patel were knowingly committed with an intent to injure the Plaintiffs and inflict bodily harm pursuant to § 311. Negligent Misrepresentation Involving Risk of Physical Harm, and § 430. Necessity of Adequate Causal Relation.

79. That in trying to resolve this whole issue, the Plaintiffs have tried to keep in contact with Defendants Vijay Patel and Dilip Patel. Jacobs called back some of the other telephone numbers which Defendant Vijay Patel has used in May, June, and July, 2007, and Jacobs has reached Citizens in Canada who are very upset because someone is using their telephone number to make calls to the United States and they do not know any of these people. At first, some of the numbers which are only one digit apart, appeared to be made from a company with a large sequential switchboard, but when the Plaintiffs returned the calls, the callers were unrelated to each other. In some cases it is as if the caller has randomly picked a series of numbers and used

---

[26] *People v. Jones,* 77 P.2d 897, 25 C.A.2d 517.

[27] *Bush v. State,* 168 P. 508, 19 Ariz. 195.

[28] *People v. Poindexter*, 361 N.W.2d 346, 138 Mich.App. 321 appeal denied.

them to charge long distance telephone calls over a period of days. Plaintiffs will submit these numbers to the Canadian authorities and ask that they be verified.

80.  That in all of the e-mails that Defendant Vijay Patel has sent to the Plaintiffs, their family, and their associates, where he has asked for the money, Vijay Patel has not once stated that Plaintiff Jacobs presented a repayment of $45,000.00 to him in Montreal and that he returned the Promissory Note and Sight Draft after Jacobs discovered that the Defendants' representations concerning their airline were not truthful.

81.  That the Defendant Vijay Patel also never mentions in his e-mails, when he asks for money, the fact that the Defendants called Plaintiff Jacobs repeatedly for weeks urging him to make the Private Placement in New York. The Defendants never acknowledge the fact that the $45,000.00 was for the expenses for Jacobs to make the necessary contacts and meet all of these professionals which take time and money. The actual costs exceeded this amount.

82.  That a project like this airline cannot be started in one day with a simple telephone call. Appointments have to be made for everyone's convenience, and, therefore, each business trip to make these arrangements and schedules takes at least two or three days and there are multiple trips to New York over a period of weeks required to finish up the preliminary plans.

83.  That the Defendants Vijay Patel and Dilip Patel have stated that they have contacted many people who are going to join them against Plaintiffs. If not voluntarily submitted immediately, Plaintiffs will serve a subpoena for the list of those people that the Defendants have contacted in JET AIRWAYS JOY OF FLYING and other "groups" who are going to join the Defendants to defame and injure the Plaintiffs pursuant to Rule 26 (General Provisions Governing Discovery; Duty of Disclosure).

84. That threats of physical injury and death require that every person associated with these Defendants be investigated and held responsible for the threats of violence in this case, and it does not matter in what official robe the coconspirator is clothed as long as the person was in collusion with the other parties making the threats even if he or she was not aware of the other conspirators' threats.

85. That along with Defendants' e-mails, telephone calls and other overt acts, Vijay Patel has threatened that he has contacted   employees of JET AIRWAYS JOY OF FLYING who work in Canada, *"and my Muslim friends in that Jet Airways will   take care of you Americans."* [29] Plaintiffs aver that this can only be taken as a threat pursuant to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries). The  Plaintiffs ask the Department of Justice  or Department of Homeland Security to file for the extradition of Vijay Patel pursuant to Title 18 U.S.C.A. § 2332b to obtain these names.

86. That Plaintiff Jacobs also wrote a letter and an Affidavit to the Royal Canadian Mounted Police and that letter and Affidavit are attached as 'Exhibit D.' True and correct copies of this letter and Affidavit by Plaintiff Jacobs are attached to this Complaint as 'Exhibit D' and incorporated by reference herein.

87. That Plaintiffs demand that Defendants reveal the names of everyone who has supplied any information concerning the Plaintiffs which has lead to their detriment and injury,

---

[29] The words "levying war," as used in the constitutional definition of "treason," include not only the act of making war for the purpose of entirely overthrowing the government, but also any combination forcibly to oppose the execution of any public law of the United States, with intent to prevent  its enforcement in all cases, if accompanied or followed by an act of forcible opposition to such law in pursuance of such combination. Charge to the *Grand Jury- Neutrality Laws and Treason*, [2 Curt.630.], Circuit Court, D. Massachusetts. Oct. 15, 1851, 30 Fed. Case No. 18269; *Charge to Grand Jury- Treason,* Id. 18,276.

and which has likewise affected the national security of the United States, or has lead to the injury of any of Plaintiffs' associates or their families.

88.  That since the Plaintiffs have informed the F.B.I. and Homeland Security of these telephone calls, they, by law, have been monitored and Plaintiffs demand that this list of aiders and abettors be revealed so that they can be joined with these Defendants pursuant to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries), Title 18 U.S.C.A. § 2382 (Misprision of treason) in concurrence with Title 18 U.S.C.A. § 2384 (Seditious conspiracy).

89.   That the criminal acts of the Defendants Vijay Patel and Dilip Patel are of one mind, joint in the affect of overt acts and crimes against the United States with known enemies of the United States.  The Defendants have declared their association with JET AIRWAYS JOY OF FLYING  and this association has been revealed as criminal in nature through their own written and verbal revelations.

90.  **That, therefore,  the Plaintiffs implore that the Government of Canada release any surveillance tapes to the Government of the United States in order to protect both countries from possible terrorist attacks such as those planned last August 10, 2006, in London, England, when an employee of JET AIRWAYS JOY OF FLYING  was one of the first 24 suspects to be arrested when the plans were discovered that  bombs were going to be hidden within  ten commercial airliners  headed for North America.**

91.  That the Plaintiffs have written and recorded proof  that the statements that they have made in this Complaint are the truth. Plaintiffs maintain that the statements made against them were false and maliciously made and published through corrupt or malevolent motives.

92.  That the Defendant Vijay Patel sent his e-mails to  Plaintiff Jacobs knowing that the internet site was shared with his wife and that others often read the e-mails. Therefore, the emails

sent to that address are publicly published missives through negligence. Plaintiffs have supplied proof that these libels were published and made, and that there exists further proof of slanderous accusations and falsehood which shall be made public at trial through the recordings.

93.    That for the fraudulent, slanderous and abusive telephone calls, the libelous and falsely accusatory e-mails,  the allegiance to a criminal conspiracy attacking the Plaintiffs outside the bounds and obligation of decency, which have affected not only the Plaintiffs, their family and associates, but their business associations, the Plaintiffs are demanding the compensatory sum of $3,000,000.00USD.

## C. THREATENED ACTS OF TERRORISM AGAINST THE UNITED STATES

94.    That Plaintiffs  hereby disclose their knowledge of the commission of any treason against the United States *"to some judge of the United States"* pursuant to Title 18 U.S.C.A. § 2382 (Misprision of treason).[30]

95.    That Defendants Vijay Patel and Dilip Patel, are admittedly in conspiracy with Zahir Fancy of St.-Laurent, Quebec,  and several Canadian based employees of JET AIRWAYS JOY OF FLYING, the Indian  airline headquartered in Mumbai, India. Defendant Vijay Patel has admitted that some of his  actions are being orchestrated by JET AIRWAYS JOY OF FLYING under the direction of S.Datta, a high level employee of that airline.

96.    That attached to this Complaint are copies of e-mails detailing this conspiracy, and there are tapes of telephone conversations which Defendant Vijay Patel knowingly gave, and messages  he left on telephone answering machines which threaten  the lives of these Plaintiffs,

---

[30] Warlike array is not necessary. It is only a circumstance. *1 East's Cr. Law, 66.* According to the English books, a *direct* levying of war, is a war directly against the person of the king. A *constructive* levying of war, is war against the government. *Ex Parte Bollman and Swartwout,* 4 U.S. 75.

their families, and associates. Defendant Vijay Patel stated openly to Plaintiff Jacobs that under

the orders of JET AIRWAYS JOY OF FLYING the Plaintiffs will be destroyed. Some of

these calls and e-mails contain threats of murder and other forms of bodily injury.

> A man is bound not to use his property so as to infringe upon another's right. *"Sic utere tuo ut alienum non laedas."* [31] If engaged in actions which may involve danger to others, he ought, speaking generally, to take reasonable care to avoid endangering them. * * * Of the general proposition, that certain kinds of conduct not criminal in any one individual may become criminal if done by combination among several, there can be no doubt. The distinction is based on sound reason, for a combination may make oppressive or dangerous that which if it proceeded only from a single person would be otherwise, and the very fact of the combination may show that the object is simply to do harm, and not to exercise one's own just rights. In the application of this undoubted principle it is necessary to be very careful not to press the doctrine of illegal conspiracy beyond that which is necessary for the protection of individuals or of the public; and it may be observed in passing that as a rule it is the damage wrongfully done, and not the conspiracy, that is the gist of actions on the case for conspiracy: [Citations omitted] But what is the definition of an illegal combination? It is an agreement by one or more to do an unlawful act, or to do a lawful act by unlawful means" *O'Connell v. The Queen*, 11 Cl. & F.155; *Reg. v. Parnell*, 14 Cox, Crim. Cas. 508; and the question to be solved is whether there has been any such agreement here. Have the defendants combined to do an unlawful act? Have they combined to a lawful act by unlawful means? [32]

97. That at a meeting in Montreal, Canada, with Defendant Vijay Patel and a man

named Zahir Fancy of St.-Laurent, Quebec, Defendant Vijay Patel stated that he did not know

why Americans were so afraid of everything and that it was easy to disrupt them and scare them

with bomb threats.

98. That both Defendant Vijay Patel and Zahir Fancy referred to the 1985 airline incident

from India in which a bomb was placed on an Air India airplane and over 300 people were

killed, and stated that neither the Americans or the Canadians handled the situation in the right

---

[31] Use your own property in such a manner as not to injure that of another.

[32] *Mogul Steamship Co., Limited, v. McGregor, Gow & Co. et al*. <u>LAW OF TORTS</u>, Hepburn, pg. 480-481.

way. They further stated that they can perform similar acts over any city in the U.S. or Canada once their new airline is operating. [33]

99. That the recordings of the messages left by Defendant Vijay Patel will be submitted during discovery and interrogatories, but some of the recordings are being translated through an official court interpreter. Other recordings will be requested of the U.S. and Canadian Governments since the Defendant Vijay Patel and his associate Zahir Fancy have used the words "bomb" and "aircraft" together on international telephone calls in violation of Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).

100. That the Plaintiffs aver that the Defendants are part of a cause, and although they might not sound rational at first observance, their objectives are those of these radical groups which are targeting the Western civilization for terrorism.

101. That Defendant Vijay Patel and Zahir Fancy stated that passports can be changed in India for Indian Muslims to have their names changed to Hindu names, and they can easily board JET AIRWAYS JOY OF FLYING which has a staff of over 55% Muslim crews and employees. This is an unusual figure when only 14% of the entire Indian population is Muslim.

102. That the letters and Affidavits of Plaintiff Jacobs and Mr. Milan Patel have already been submitted to the Department of Homeland Security, Washington, D.C., and the F.B.I. in the U. S. as well as to the Royal Canadian Mounted Police in Montreal, Canada. Defendants have also stated acts of violence and treason against the United States and Canada in conspiracy

---

[33] The presence of numbers two manifest an intent to use force, if found requisite to obtain their demands, may compel submission to that force, which is present and ready to inflict injury, and which may thus be effectually used to oppose the execution of the law. *Charge to the Grand Jury*, 30 Fed. Case No. 18,269.

with other employees of the JET AIRWAYS JOY OF FLYING who are already working in Canada.

## V. CONCLUSION FOR PART ONE

103.    That the Plaintiffs Samuel K. Jacobs and Nancy Heckerman aver that  the Defendants Vijay Patel and Dilip Patel have committed the afore stated acts which they knew would fraudulently, falsely, and feloniously interfere with  contractual relations inducing breach of contract in foreign commerce, but Defendants attempted to reach their goal using other people's money and expertise before their true intentions were fully revealed.

104.    **That after the Defendants had the Plaintiffs, and third parties, spend the effort, time,  and money to start this project, Vijay Patel and Dilip Patel  reneged  on the project leaving a large debt for these Plaintiffs and that debt is still owed to others; *it is not a money for a debt which the Plaintiffs claim for themselves*.  Defendants caused this debt for their own project and left the Plaintiffs with the bill, and then criminally attacked the Plaintiffs for demanding that the Defendants' debt be paid.**

105.    That these  Defendants used available and valuable sources who believed in the project and then dumped the project when it required some of the Defendants'  Vijay Patel and Dilip Patel's own money and most of their time which they were not willing to part with for their own project.

106.    That the only thing left of the project is the Defendants' large debt to these Plaintiffs for the third parties who performed the majority of the work, and for the unwarranted criminal attacks through wire fraud, both in telephone and internet.

107.  That the Plaintiffs are being billed for the Defendants' work, and it is the Plaintiffs' outstanding good name and reputation which are being  defamed since this debt is not settled.

The criminal actions of these Defendants Vijay Patel and Dilip Patel have   ruined years of good standing with  this class of professionals in the business of setting up new commerce through legal and respected forms of private placement which are monitored by the Securities Exchange Commission.

108.  That the Plaintiffs would never have approached these private placement firms in the United States if the Defendants had not represented their project  as a legitimate business venture in the field of international aviation with other investors and principals. Although the debt of $312,000.00, which is still accumulating, is owed to the investment banking firm, extreme harm and severe injury has been endured by these Plaintiffs which has affected their reputation, defamed their good name in the industry, slandered their names to those persons known and unknown and to complete strangers.

109.  That through a constant, menacing, and destructive barrage of wire fraud the Defendants have destroyed a year and a half of lost business opportunities by affecting the Plaintiffs' ability to perform on other projects including charitable works, and Defendant Vijay Patel MUST stand trial for his criminal overt acts.

110.  That  the names of Defendants Vijay Patel and Dilip Patel now represent  the criminal elements of fraud and deceit in this equation, and, if they do not satisfy their debts to the satisfaction of these third party actors,  the Plaintiffs will prevail in convincing the Department of Justice into converting this lawsuit into a criminal action for crimes against the United States in addition to the charges which will result from the discovery portion of this lawsuit. The Plaintiffs assert that they have the proof to prevail in this matter.

> In civil suits, unlike criminal cases, the burden of proof does not require that the jury be convinced beyond all reasonable doubt, but only that they be persuaded that a preponderance of the evidence is in favor of the party sustaining the burden. This is true

as to the issue of negligence, even though the act to be proved may also be a crime. The burden of proof of the defendant's negligence is every where on the plaintiff, since he is asking the court for relief, and must lose if his case does not outweigh that of his adversary. [34]

111. That Plaintiffs ask that defendant Vijay Patel be contained as soon as this lawsuit is served upon him since he is extremely volatile. Even if Defendants can not enter the United States, Vijay Patel has stated that he can hire murderers for 5000 rupees ($200.00USD) to come to the United States and do the job, especially if JET AIRWAYS JOY OF FLYING is allowed to enter the United States.

## VI.  PRAYER FOR RELIEF FOR PART ONE

WHEREFORE the Plaintiffs pray:

A. That the Defendants Vijay Patel and Dilip Patel be held accountable for their actions which have caused the Plaintiff to incur debt of over $312,000.00 and costs of $69,000.00;

B. That the Defendant Vijay Patel be extradited to the United States to stand trial for the criminal acts of threatened murder, kidnapping, and other acts of bodily harm for which there is sufficient proof to present to the Grand Jury for criminal indictment;

C.      That compensatory damages be awarded to the Plaintiffs in the amount of $3,000,000.00, and a trial by jury determine all punitive or general damages to be awarded to these Plaintiffs in addition for these extended acts of conspiracy with S.Datta, and all other employees in Canada and India of JET AIRWAYS JOY OF FLYING  who have aided and abetted the Defendants in their criminal acts of threatened bodily injury and safety;

D.      That the Defendant Vijay Patel, Dilip Patel, and S. Datta, employee of JET AIRWAYS JOY OF FLYING    stand trial for conspiracy for defamation of character, libel,

---

[34] THE LAW OF TORTS by William L. Prosser, (1941), page 288:

slander through extreme and reckless disregard for the safety of another through wanton and willful misconduct and negligence;

E.   That the Defendants Vijay Patel and Dilip Patel be detained until they reveal all known plans of terrorist attacks, the associations in charge in addition to JET AIRWAYS JOY OF FLYING, and the other persons who are involved in these plots of terrorism against the United States;

F.   For all other documentation which may be presented in the form of recordings which attest to the veracity of the averments in this Complaint;

G.   That  the right to amend this complaint be preserved upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed.

## PART TWO

### VII.  STATEMENT OF FACTS AGAINST SIDNEY S. FRIEDMAN, GREG I. ROSE, AND, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

112.   That Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have formed a conspiracy of enterprises which have initiated a pattern of racketeering activities which  transcend the predicate and overt acts so stated in the previous legal actions against Defendants Yelin Shi and Yu Fan. The  Plaintiffs will state the criminal overt acts and RICO predicate acts committed of which they have knowledge and/or proof, and Plaintiffs will beseech the Attorney General of the United States to initiate  a plan for  discovery to determine if there are others so similarly situated who could be victims of

the RICO enterprises encased within an otherwise legitimate business of "debt collection" named

Weinstock, Friedman & Friedman, P.A.

> Congress enacted RICO as Title IX of Organized Crime Control Act of 1970 because it
> found that 18th and 19[th] Century jurisprudence was ineffective to combat white-collar
> crime and fraudulent behavior. The statute's Statement to Findings recognized that
> organized crime "is a highly sophisticated, diversified, and widespread activity that
> annually drains billions of dollars from America's economy by unlawful conduct and the
> illegal use of force, *fraud,* and corruption," that such activities "weaken the stability of
> the Nation's economic system, *harm innocent investors and competing organizations,*
> interfere with free competition, seriously  burden interstate and foreign commerce,
> threaten domestic security, and undermine the general welfare of he Nation and its
> citizens" and that organized crime "continues to grow" because "the sanctions and
> remedies available to the Government are necessarily limited in scope and impact."  5-
> 42, § 1962: Prohibited Conduct, December, 1992, McGraw-Hill.

## *A. PATTERN OF RACKETEERING ACTIVITIES*

### *a. Banking Violations*

113.   That the Plaintiffs contend that the "debt collection" enterprise of Defendants

Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A.  has operated

against these Plaintiffs as a "protection" service for their clients Yelin Shi and Yu Fan by

committing predicate and overt acts similar to those for which the original RICO statutes were

first enacted in 1934. (Moreover, there is authority that the crime of threatening to injure is

complete as soon as a threat is communicated to a third party, regardless of whether the intended

victim ever knows of the plot to injure him. *Beard v. U.S.,* App., 535 A.2d 1373.)

> In the often-quoted words of Judge Pratt of the Second Circuit:
> When Congress provided severe sanctions, both civil and criminal, for conducting the
> affairs of an "enterprise" through a "pattern of racketeering activity," it provided no
> exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If
> the conduct of such people can sometimes fairly be characterized as "garden variety
> fraud," we can only conclude that by the RICO statute congress has provided an
> additional means to weed the "garden" of its fraud. . . . It seems almost too obvious to
> require statement, but fraud is fraud , whether it is committed by a hit man for organized
> crime or by the president  of a Wall Street brokerage firm. *Furman v. Cirrito,* 741 F.2d

524, 529 (2d Cir 1984), *vacated in part on other grounds sub nom Joel v. Cirrito,* 473 U.S. 922 (1985).

114. That, furthermore, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. claim to have thousands of such clients for whom they provide the same measures of "protection." To what extent does this "debt collection" service perform its functions? This is additional information for which the Plaintiffs have no access.

115. That the Plaintiffs allege that this "debt collection" enterprise of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. have used its license as an otherwise legitimate law firm to obtain private information through devious and dubious means about these Plaintiffs which exceeds the essential right to zealously defend their clients Yelin Shi and Yu Fan.

116. That Plaintiffs assert that the Defendants have used contacts at banking institutions in violation of Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee) to obtain information which is, or should be by law, restricted and confidential in violation of Title 18 U.S.C.A. § 1028 and Title 18 U.S.C.A. § 1028A.

> Effect will be given to states punishing the extortion of money or other property by threats which, as dependent on the particular statutory provisions, may be general in their nature or may be required to be of certain specified kinds.[35]

117. That Plaintiffs aver that this is true because of the previous comments made by Defendants Yelin Shi and Yu Fan about the Plaintiffs' banking relations with Chevy Chase Bank

---

[35] *State v. Essex,* 250 N.W. 895, 217 Iowa 157; *People v. Percin,* 47 N.W.2d 29, 330 Mich. 94; *State v. Williams,* 71 S.W.2d 732, 335 Mo. 234.
Validity.
(1) Extortion statute was not unconstitutionally vague insofar as it failed to define "threat," "character," "pecuniary benefit," and "extort"; "threat," "character," and "pecuniary benefit" were all ordinary, everyday words whose meanings were plain to person of normal intelligence and education, and "extort" had established and well recognized meaning. *Stein v. Commonwealth,* 402 S.E.2d 238, 12 Va.App. 65.

and the use of an employee at that bank to obtain information not only about the Plaintiffs' bank account, but about their physical activities. Defendant Yelin Shi has recited bank account balances, and other activities which could only be obtained through the use of the bank's ATM/Debit Card which could only come from a bank employee. (The intended victim of a threat need not be aware of the threat, for the crime is completed when the threat is communicated to a third party.[36])

### b. Threats of Force and Violence

118.   That Plaintiff Heckerman received a telephone call from the receptionist at her office in Washington, D.C. one day in February, 2007, and was told by the very upset receptionist that this man had called for the Plaintiffs and had started screaming at her, and had threatened to get the Sheriff and come confiscate all of the furniture and equipment in the office. She said the man identified himself as Defendant Sidney S. Friedman and said that he stated that he was an "investigator,"  and, furthermore, she said he had implied  in a rather confused identification  that he was from the "Government."   She stated that Sidney S. Friedman did not identify himself as an attorney.

119.   That the receptionist  stated that she was calling the Plaintiffs because she was so alarmed with his actions. Although  he had called several times before, this time he had become extremely  violent and abusive on the telephone. She further stated that she did not think that he was from the Government because *"those Government people do not threaten anyone, they just call and identify themselves quite clearly with their names, their department, and their telephone numbers if the person they want to talk to is not there they leave a message. They  never scream like that."*

---

[36] *Joiner v. U.S.,* App., 585 A.2d 176.

Statutes frequently provide a punishment for the extortion of money or property through threats of injury to person or property or economic injury and will be given effect in accordance with their terms.[37] Threats of injury at the hands of third parties are punishable under such statutes.[38] It is not necessary that a weapon be used or exhibited in connection with such threats.[39] Such a statute has been construed as intended to include a threat to invade any right for the invasion of which an action in damages would lie for injury to the persons or property.[40] A threat to throw away property is a threat to cause damage to property for purposes of the offense of theft by extortion.[41] Furthermore, the term "property" as used in a statute prohibition injury to the property of another, with intent to extort money, encompasses an interest in a lawsuit.[42]

120. That Plaintiffs state that this is a violation of Title 15 U.S.C.A. § 1692e (False or misleading representations) of the Fair Debt Collection Practices Act.[43] (Finally, terrorizing over a prolonged period of time is not required.[44]

121. That the receptionist stated that he had called several times before and he had talked to another staff member also, and they had put him through to Plaintiffs' voice mail. However, the last few times he had called he had demanded in an increasingly abusive manner that they divulge personal information about the Plaintiffs, and, the two women who work on different floors, had met to discuss the situation since they were both upset with his threats.

Under one type of statute, the threat need not be made directly to the intended victim, but may be made to his agents or employees.[45]

122. That to say that this interrupted and interfered with the Plaintiffs' business is an understatement since this woman called Plaintiff Heckerman and her voice was exceedingly distressed that these Defendants would appear one day and commit some acts of violence against

---

[37] *People v. Hopkins*, 233 P.2d 948, 105 C.A.2d 708; *Peterson v. Mayo*, 65 So.2d 48.

[38] *Bush v. State*, 168 P. 508, 19 Ariz. 195.

[39] *Burleson v. State*, 96 S.W.2d 785, 131 Tex.Cr. 76.

[40] *Meek v. State*, 185 N.E. 899, 205 Ind. 102.

[41] *State v. Davis*, 839 P.2d 283, 115 Or.App. 711.

[42] *State v. Manthey*, App.., 487 N.W.2d 44, 169 Wis.2d 673, review denied 491 N.W.2d 768.

[43] Title 15 U.S.C.A. § 1692e (False or misleading representations). See *Appendix for Complaint*.

[44] *Warren v. State*, 613 S.W.2d 97, 272 Ark. 231.

[45] *Lenoir v. State*, 80 A.2d 3, 197 Md. 495.

the other people in the office, and against them personally since they refused to give out any information other than what they had been instructed to tell all callers to Plaintiffs' office.

> Under a statute so providing, the offense is committed whether the threat is to injure the person or property of the individual threatened or that of any relative of his or any member of his family, or of any corporation of which he is an officer, stockholder, employee, or agent.[46]  Where contains no limitation with respect to the person as to whom the threat is made or the person from whom it is intended to extort the money, the threat may be made to anyone, either the person to be injured, the person from whom it is intended to extort the money, or to a different person.[47]

123.  That when the main receptionist refused to give out any information other than direct the caller to the answering machine for messages, Defendant Sidney S. Friedman starting yelling quite loudly and told them that he would come bring the Sheriff and confiscate all of the office furniture and equipment.

> Where the theory of prosecution is larceny by extortion, proof that the accused compelled or induced another to part with property in instilling fear of future injury is necessary; but larceny by extortion does not require evidence of an actual ability to cause the threatened harm in the threatened manner, only that the person threatened believed that the accused possessed such an ability.[48] However, there is also authority that unless the statute so provides, the person threatened need not actually  have been put in fear,[49] it being sufficient if the threat is of such character as might reasonably have that result.[50]

124.   That the receptionist stated to  Plaintiff Heckerman later that his statements did not quite add up when he continued with his other inquiries and then tried to badger her into telling him the whereabouts of the Plaintiffs, and what other business they conducted. The Plaintiffs share the services of the office with other people and businesses with which  they are not related other than address.

---

[46] *People v. Lamm*, 54 N.E. 2d 374, 292 N.Y. 224.

[47] *Commonwealth v. Pelligrini*, 54 N.E. 552, 283 Mass. 300.

[48] *People v. Capparelli*, Super., 603 N.Y.S.2d 99, 158 Misc.2d 996.

[49] *People v. Robinson*, 20 P.2d 369, 130 C.A. 664; *People v. Percin*, 47 N.W.2d 29, 330 Mich. 94; *O'Neil v. State*, 296 N.W. 96, 237 Wis. 391, 135 A.L.R. 719.

[50] *People v. Robinson*, 20 P.2d 369, 130 C.A. 664.

It is essential that there be an attempt to extort money or property.[51] It is not essential, however, that it be obtained at the very time the threat is made,[52] and under some statutes the crime may be complete even though no money or property is ever actually obtained.[53]

The receptionist stated that if he was with the Government he would not ask those questions on the telephone since it was her experience that those people had always come to the office and ask questions in person when they had questions about other cases.

A criminal extortion statute is applicable to efforts to collect legally enforceable debts.[54] Furthermore, it is not required that the person communicating the threat be attempting to obtain anything for himself;[55] it is sufficient that there be an attempt to obtain something or another.[56]

125. That Plaintiffs state that this is a violation of Title 15 U.S.C.A. § 1692d (Harassment or abuse) of the Fair Debt Collection Practices Act,[57] and Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television). (It has been held that a demand for a settlement of a civil suit between the parties is not extortion by threats, although the basis for such suit might also be grounds for a criminal charge.[58])

"Racketeering," from the standpoint of coercion, usually takes the form of compelling, by the use of threats to person or property, a person to do or abstain from doing an act which such other person has the legal right to do or abstain from doing.[59]

126. That after the call from the receptionist, Plaintiff Nancy Heckerman immediately called Defendant Greg I. Rose at Defendants Weinstock, Friedman & Friedman, P.A. since he was the attorney of record in a case against Defendants Yelin Shi and Yu Fan. Plaintiff was

---

[51] *People v. Robinson*, 20 P.2d 369, 130 C.A. 664
[52] *Burleson v. State,* 96 S.W.2d 785, 131 Tex.Cr. 76.
[53] *O'Neil v. State*, 296 N.W. 96, 237 Wis. 391, 135 A.L.R. 719.
[54] *People v. Rosenberg,* 572 P.2d 1211, 194 Colo. 423.
[55] *State v Taylor,* 632 P.2d 892, 30 Wash.App. 89, review denied 96 Wash.2d 1012.
[56] *State v Taylor,* 632 P.2d 892, 30 Wash.App. 89, review denied 96 Wash.2d 1012.
[57] Title 15 U.S.C.A. § 1692d (Harassment or abuse). See *Appendix for Complaint.*
[58] *McMillen v. State,* 60 Ind. 216.
[59] *U.S. v. McGlone,* D.C.Pa., 19 F.Supp. 285.

informed that Greg I. Rose did not call her, that he was no longer handling the case, and that the telephone calls had been made by Defendant Sidney Friedman. She asked to be transferred to him and was told he was not there. Plaintiffs are still waiting for his return call.

127. That the Defendants Sidney S. Friedman, and other representatives of Weinstock, Friedman & Friedman, P.A., after harassing the staff at the Plaintiffs' office and making multiple threatening telephone calls to this staff, have affected the Plaintiffs' business and reputation at their own office and this is an invasion of privacy which is an unWarranted search and seizure of Plaintiffs' persons, papers, and effects without Oath and affirmation, and there is no probable cause for which these Defendants have a justifiable defense.

128. That these acts are violations of Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means).

> *Collection of extensions of credit by extortionate means.*
> Under a statute, the use of any extortionate means to collect any extensions of credit or to punish any person for the nonrepayment thereof is a criminal offense.[60]  In order to convict for collection of extensions of credit by extortionate means the state must prove not only that the creditor knowingly and voluntarily participated in act constituting the offense, but it must also prove that the creditor was aware that his participation was threatening to the debtor.[61]

129. That these two women are so afraid of this man that they do not want to sign their names to an Affidavit since they are concerned that the Defendants might retaliate or attack them in some way for testifying against him. However, they are willing to give statements to a person from the Office of the Attorney General if their names can be withheld from these Defendants and their other associates.

---

[60] *State v. Frustino*, App., 689 P.2d 547, 142 Ariz. 288.

[61] *State v. Frustino*, App., 689 P.2d 547, 142 Ariz. 288.

Statute defining offense of retaliation against prospective witness seeks to encourage citizen's participation without fear of retribution  in reporting criminal activities, testifying in official proceedings, or cooperation with government in criminal investigation. *Morrow v. State,* Cr.App., 862 S.W.2d 612.

130.    That Plaintiffs aver that Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. and their other associates, even if they are nothing but "debt collectors" as stated on their stationary, have no legal, ethical or moral justification for this type of wire fraud, consumer protection act violations, invasion of privacy, and attempted identity theft. These actions  violate the original criminal RICO statutes initiated in the 1930's which were passed to curtail extortion and protection racketeers.

131. That Plaintiffs aver that these criminal offenders who have committed the most base of RICO criminal acts are the Defendants who are the  licensed attorneys who know better than to violate the laws.[62] The Defendant law firm, Weinstock, Friedman & Friedman, P.A., is a RICO Defendant[63] conducting a  separate RICO enterprise which is operating within a Professional Association  to commit a plethora of violations of the Consumer Protection Act, Fair Debt Collection Practices Act, and Equal Opportunity Act pursuant to Title 18 U.S.C.A. § 1964 (Civil remedies) upon which this complaint is filed.[64]

---

[62] *Gramercy 222 Residents Corp v. Gramercy Realty Assocs,* 591 F. Supp. 1408, 1412 (SDNY 1984) (upholding § 1962 (c) claims against individual defendants who were partners in architectural firm whose report was included in cooperative's selling prospectus).

[63] By naming Imrex as a defendant but not as the enterprise, Sedima avoided implicating the enterprise-defendant distinction question. Liability may be imposed only on the culpable "person," not on the enterprise. 1962(c).

The majority decisions focus on section 1962(c)'s language, concluding (as the Seventh Circuit put it) that a person cannot be "employed by or associated with itself."

[64] The Supreme Court has used RICO's Liberal  Construction Clause to interpret the statute in both civil and criminal cases, *see Tafflin v. Levitt,* 493 U.S. 455, 467 (1990); *HJ, Inc. v. NW Bell, 492* U.S. 229, 348-9; *United States v. Monsanto,* 491 U.S. 600, 609; *Russello,* 464 U.S. at 21; *United States v. Tarquette,* 452 U.S 576, 587, 593; and the circuit courts faithfully follow its

In *Sedima*, the Supreme Court also stated that "if Congress' liberal-construction mandate is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident." 473 U.S. 491 n. 10.

132.    That Plaintiffs allege that these Consumer Protection Act violations were committed through the RICO enterprises' generation of a pattern of racketeering activities which has a continuity which is evident in this lawsuit. The Plaintiffs are not naïve enough to believe that this association of "debt collectors" has limited itself to just these Plaintiffs.[65] The staff is too large, and the arrogance of the actors denotes that this is a typical manner of operation for these Defendants. (*"to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts."* United States v. Adams, 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985)).

133.    That Sidney S. Friedman and  Greg I. Rose of Weinstock, Friedman & Friedman, P.A., revealed that they have "thousands of clients" who sign up for their "legal" protection services for a yearly fee. At the Pre-Trial Hearing Defendant Sidney S. Friedman told Plaintiffs that this would be the first time that he had met his clients Defendants  Yelin Shi and Yu Fan and he had just reviewed what this case was all about.

134. That Defendant Weinstock, Friedman & Friedman, P.A.  is a large organization of attorneys, or "debt collectors," and Plaintiffs  ask the Department of Justice to start an inquiry into the names of some of the other victims who have suffered from the same or similar tactics of wire or mail fraud at their place of employment or home by this RICO enterprise.[66] The

---

mandate in criminal RICO litigation, se e.g., *United States v. Argiulo,* 897 F.2d 1169, 1216, cert denied, 111 S.Ct. 130 (1990).

[65] "Association does not require that the defendant be employees by or legitimately  connected to the racketeering enterprise." *United States v. Mokol,* 957  F.2d 1410, 1417 (7th Cir 1992).

[66] In *United States v Elliot,* 571 F.2d 880, 903 (5th Cir), *cert denied,* 439 U.S. 953 (1978), the Fifth  Circuit observed that "the RICO net is woven tightly to trap even the smallest fish, those

Plaintiffs ask that this investigation be initiated pursuant to Title 18 U.S.C.A. § 1963 and Title 18 U.S.C.A. § 1966 .

135.    That Plaintiffs aver that this organization is a sordid segment of society. The actions of organizations such as these Defendants discredits the entire legal profession because they operate to commit more crimes against the people that they are, in effect, terrorizing with the theft of their credit reports and other private identity information which was given under duress if this type of credit collection is the result. This is not zealously defending a client, it is an enterprise which blatantly pursues a financial goal without a regard for ethics or legality.

136.    That in addition to the other cases which will be filed for these consumer act violations, the acts themselves lead to parallel offenses for extreme negligence, severe emotional distress leading to physical injury, which is the basis for claims for tort lawsuits.

137. That the manner in which these Defendants operate in the Court and in the business world through a pattern of racketeering activities is a basis for a antitrust violations [67] pursuant to the Sherman Antitrust Act,[68] Title 15 U.S.C.A. §§§§ 1-4 [69] since these Defendants and their

---

peripherally involved with the enterprise," and Rico applies to both insiders (officers, directors, controlling shareholders) an outsiders, those persons or entities such as accounting firms, **law firms,** lenders, and other providers of services, who participate directly or *indirectly* in the enterprise's affairs through a pattern of racketeering activity. *See* 18 USC § 1962(c). *Supra*, RICO In Business And Commercial Litigation by Kevin P. Roddy, at 5-26. (**Bold** emphasis added).

[67] "Restraint may be exerted through force or fraud or agreement." *Lumber Co. v. United States,* 257 U.S. 377, 414 (1921).

[68] "to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams,* 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985).

[69] In determining any controversy arising under antitrust laws, the interests of the consuming public are paramount. *Columbia River Packers Ass'n v. Hiuton, D. Cor.,*1940, 34 F.Supp. 970, reversed 117 F. 2d 310, reversed 62 S.Ct. 520, 315 U.S. 143, 86 L.E4. 750; Immunity from the antitrust laws is not lightly imputed. *U. S. v. Philadelphia Nat. Bank,* Pa.1963, 88 S.Ct. 1715, 374 U.S. 321, 10 L.Ed.2d 915.

Defendant RICO enterprises in Weinstock, Friedman & Friedman, P.A. have interfered with the Plaintiffs' business and these acts have affected Plaintiffs' interstate and foreign commerce.

138. That Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. crossed State lines and threatened the staff of the Plaintiffs' office that they would come to the office of the Plaintiffs and take all of the furniture and equipment, whether it belonged to the Plaintiffs or other persons or businesses in the Plaintiffs' office through theft by conversion, and implied threats of bodily harm and injury to Plaintiffs' staff which would be the ultimate monopoly of Plaintiffs' trade and commerce in violation of the Sherman Act.[70]

> There is authority that the existence of fear of economic loss under the Act is determined from the perspective of the victim, not the extortionist; and that the victim must have a reasonable belief that the alleged extortionist had the power to harm the victim and would exploit that power to the victim's detriment. [71]

139. That the Plaintiffs state that these overt acts are part of a pattern of racketeering activities which have been perpetrated over years, not just months, and these multiple acts of wire fraud which were committed violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television), Title 18 U.S.C.A. § 1951[72] are the predicate and Title 18 U.S.C.A. § 1952 by Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. Yelin Shi, and Yu Fan.

---

[70] Chief Justice Rehnquist has stated that "[w]hite collar crime is 'the most serious and all-pervasive crime problem in America today.' " *Braswell v. United States,* 487 U.S. 99, 115 n9 (1988) (quoting Conyers, Corporate and White-collar Crime: A view by the Chairman of the House Subcommittee on Crime, 17 Am Crim L Rev 287, 288 (1980)). He added, "[a]lthough this statement was made [by Rep. Conyers] in 1980, there is no reason to think the problem has diminished in the meantime." Id.

[71] *U.S. v. Covino,* C.A.2(N.Y.), 837 F.2d 65—*U.S. v. Billups,* C.A.Va., 692 F.2d 320, certiorari denied 104 S.Ct. 84, 464 U.S. 820.

[72] The Hobbs Act protects intangible as well as tangible property. A person can be guilty of extortion under the Act for obtaining his own property from another by the wrongful use of actual or threatened force, violence, or fear. *U.S. v. Agnes,* C.A.Pa., 753 F.2d 293.

Furthermore, it is not necessary to show that accused caused the fear or made a direct threat; rather, it is sufficient to prove that accused intended to exploit the fear. Moreover, to secure a conviction under the Act, the prosecution is not required to show that accused acted to receive, either directly or indirectly, the proceeds of his extortion of any benefit therefrom; and a Hobbs Act prosecution is not defeated simply because the extorter transmitted the extorted monies to a third party.[73]

140.    That   Plaintiffs assert that for these acts of conspiracy through a pattern of racketeering activities the Defendants should stand trial before a jury of their peers for these predicate and overt acts.

### c. Pattern of Racketeering Activities

141.  That when the Plaintiffs filed their first complaints against Defendant Yu Fan  for other patterns of racketeering activities, the name of her real estate firm was "Nations Realty" and, upon information and belief, she also owned, or partly owned, another firm known as "United Realty." Both  of these firms have now just "disappeared." There is no trace of either firm in Maryland or Virginia.

142. That Plaintiffs believe that Defendant Yu Fan is now operating under the name "BMI Realty" in Maryland. Plaintiffs state that Defendant Yu Fan  has had multiple real estate companies registered in the State of Maryland, Virginia and the District of Columbia in the last five years, and that the names have changed frequently because Realtor Broker Yu Fan has had at least three hearings for violations of the Real Property laws in Maryland for which she has been fined or her license suspended. The Plaintiffs lack details of a previous case against her in Virginia, but  are aware that there is another ongoing investigation against her. Plaintiffs have no knowledge of any hearings in the District of Columbia against Defendant Yu Fan at this time.

---

[73] *U.S. v. Haimowitz,* C.A.Fla., 725 F.2d 1561, certiorari denied 105 S.Ct. 563, 469 U.S. 1072, 83 L.Ed.2d 504.

143. That Plaintiffs state that Defendant Yu Fan's real estate firms are financed through factions in China and established for the purpose of money laundering enterprises and arranging property purchases through trusts and other entities for aliens who are either not registered in the United States immigration offices, or are involved in criminal activities which would incriminate them in the purchase of a certain property.

144. That Plaintiffs further believe that these real estate companies have been used for 'pay offs' in Virginia through trusts pursuant to Title 18 U.S.C.A. § 1961(4) (Definitions) through violations of Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity) .

### d. Banking Violations and Identity Theft.

145. That in conjunction with the predicate and overt acts committed at the office of the Plaintiffs in Washington, D.C., all Defendants know exactly where the Plaintiffs' office is located in Washington, D.C., and that the Plaintiffs have had a permanent office address in Washington, D.C. for over nine years. Furthermore, the Defendants know full well that the Plaintiffs have had no permanent residence in Maryland for three years.

146. That Plaintiffs state that Defendant Yelin Shi introduced the Plaintiffs to his Chinese friend at Chevy Chase Bank in 2002 when they opened the bank account, and Shi stated that his banking friend could get him any information that he wanted about people.

147. That the Plaintiffs' Chevy Chase Bank statements have come to a private post office box at 267 Kentlands, Blvd., Gaithersburg, Md. 20878 for three years, and that address was not known to the Defendants Yelin Shi and Yu Fan when they were on better terms with the

Plaintiffs. *So, how did the Defendants know exactly where these bank statements were being sent if they were not informed by someone inside the bank?*

148.  That Plaintiffs state that this is too obvious on the face of the record to be ignored. In addition to committing these overt RICO acts, the Defendants have incriminated an otherwise 'innocent hands' banking institution  in their pattern of racketeering activities in violation of Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee), and Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) , and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means).

149.  That, furthermore, the Plaintiffs assert that the Defendants' "friend" at the Chevy Chase Bank has committed an identity theft of the Plaintiffs' private information in violation of Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information)   and Title 18 U.S.C.A. § 1028A.  (Aggravated identity theft)  *since there is simply no other way that this private post box information for the bank account could have been known by the Defendants.*

### e. Fraud upon the Court by Defendants' Attorney

150.  That the Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan at all times used  fraudulently acquired information to obtain a fraudulent judgment in a Maryland State Court so that Writs of Attachment or Garnishment were issued on a *parol* agreement for an *ordinary unsecured obligation* which is not legal under Maryland law: [74]

    a) when  *"such judgments do not create a lien upon real estate or chattels real in Maryland, or upon chattels permanently located here"*; and,

---

[74] *Brengle v. McClellan*, 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.

b) where such judgments are regarded as *"ordinary unsecured obligations"* because:

> i. the judgment was awarded for a, supposed,  parol agreement, and parol agreements are *"ordinary unsecured obligations"* upon which a lien can not be attached; and,
>
> ii. they are regarded as *"specialty debts, within the meaning and effect of our Statute of Limitations."*

. . . attention should be called to the  fact that, whether rendered by the courts of foreign countries or by the courts of the United States in any other district than Maryland, or by the courts of our sister States, such judgments do not create a lien upon real estate or chattels real in Maryland, or upon chattels permanently located here,[75] nor are they entitled to priority, in the distribution of the estates in this State of the parties thereto.[76] They are regarded as specialty debts, within the meaning and effect of our Statute of Limitations, but so far as they relate to the right of the judgment creditors to participate in the distribution of the estate or assets, in this State, of the judgment debtors, they are regarded as ordinary unsecured obligations.[77]

151.  That this Honorable Court also operates under these same Maryland laws since this courthouse sits on Maryland land conceded to the District of Columbia pursuant to the Organic Act of 1801 and although this fraudulent judgment is not being contested in this Court, this unlawful debt is brought forward to prove the extent and continuity of the pattern of racketeering activities pursuant to Title 18 U.S.C.A. § 1961(4) and (5) (Definitions).

152.  That there was never a written agreement of any kind for this Foreign Judgment claim between Plaintiffs and Defendants Yelin Shi and Yu Fan. The legitimate issues concern the induced breach of written contracts for soy beans and crude oil  for which the Plaintiffs suffered great economic loss and for which they are still obligated for these contracts to third parties. Those issues have never been fully and fairly adjudicated and complaints concerning

---

[75] *Bank of U.S. v. Merchant's Bank,* 7 Gill, 437.
[76] *Brengle v. McClellan,* 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.
[77] *Brengle v. McClellan,* 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.

these contractual disputes are going to be filed separately after the previous criminal activities concerning these contracts are separated from the civil issues.

> In *United States v. Scotto*, 641 F.2d 47 (2d Cir 1980), cert. denied, 452 U.S. 961 (1981), the Second Circuit fashioned a two-part test to determine what constitutes "conducting the activities of an enterprise," holding that the proper connection is established when "1)one is enabled to commit the predicate offenses solely by virtue of [one's] position in the enterprise or involvement or control over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise."

### *f. Continuity of Pattern of Racketeering Activities*

153.   That the Defendants originally submitted the Plaintiffs' correct address in Washington, D.C. when the Defendants filed the Complaint for Foreign Judgment in the Circuit Court for Montgomery County, Maryland, but, the Defendants, realizing that they had no real permanent address to which they could attach property in Maryland then attached the Plaintiffs' private box number from a 'Parcels Plus' retailer in Gaithersburg, Maryland, to the State Court as a "residence." This is intrinsic and extrinsic fraud in multiple directions.

154.   That, first of all, the Defendants should never have used a mail box as a "last known address" since the Plaintiffs have never resided in a postal box, and Defendants knew full well the Plaintiffs' office address since they had just committed a list of criminal acts against the staff of the Plaintiffs' legitimate office in Washington, D.C.

155.   That the Plaintiffs aver that the answer lies with the fact that the Defendants had no subject matter jurisdiction, no personal jurisdiction, and no venue for a Foreign Judgment in Maryland. This entire case will now be tried under the laws of the District of Columbia since Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan:

a. started the groundwork for this complaint by sending threatening letters to the Plaintiffs' office address in Washington, D.C. in violation of Title 18 U.S.C.A. § 1341 (Frauds and swindles);

b. made numerous telephone calls and sent faxes to Plaintiffs' office in Washington, D.C. in violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television);

c. initiated multiple overt and predicate acts of fraud, deceit, extortion, threats of violence,  and interference with commerce in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity), Title 18 U.S.C.A. § 875 (Interstate communications), Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means) through wire fraud to the staff in Plaintiffs' office in Washington, D.C., and,

d. then willfully and falsely  filed in a Maryland State Court to obtain a felonious foreign judgment and fraudulent Writs of Attachment.

156. That the Plaintiffs allege that the Defendants will cry foul because some of the issues are going to be retried in this Court due to the Defendants' criminal activities in other proceedings. The Defendants' criminal acts performed through multiple RICO enterprises nullify all previous cases and filings; the case have to be tried anew, and this time with a jury trial,  due to the manifold constitutional violations. None of these proceedings was ever fully adjudicated on the merits of the cause of action in a court of fair and just law.

157.  That the conduct of the enterprises activities has always been under the control of Defendant Sidney S. Friedman   and the other principles of Weinstock, Friedman & Friedman,

P.A. They took control of the enterprise and although Defendants Yelin Shi and Yu Fan brought

about the complaint, they turned the control over to these "debt collectors" and it is the

Weinstock, Friedman & Friedman, P.A. enterprise within the enterprise with the other

Defendants which has orchestrated the series of events and is responsible for the most

incriminating acts which makes this such a textbook RICO case.

> "Conduct" is synonymous with "management" or "direction." Webster's Third
> New International Dictionary 473 (1961). The "conduct of [the enterprise's] affairs" thus
> connotes more than just some relationship to the enterprise's activity; the phrase refers to
> the guidance, management, direction or other exercise of control over the course of the
> enterprise's activities. In order to participate in the conduct of an enterprise's affairs,
> then, a person must participate, to some extent, in "running the show." *Yellow Bus Lines,*
> *Inc. v. Local Union 639,* 913 F.2d 948, 954 (DC Cir. 1990).
> Furthermore:

>> We note that our construction of the statute does allow for participation in the conduct
>> of an enterprise's affairs by "outsiders" as well as "insiders." Section 1962 (c)
>> provides that participation may be indirect as well as direct, 18 U.S.C. § 1962 (c),
>> and nothing in our interpretation of the participation requirement  precludes liability
>> on the part of outsiders. The crucial question is not whether a person is an insider or
>> an outsider, but whether and to what extent  that person controls the course of the
>> enterprise's business. *Id.*

158.    That the other Defendants pay for these criminal acts to be performed, and the

depth of the criminal acts has incorporated others who had the authority to stop the enterprise

when they realized that the plot was criminal, but failed to do so.

> The courts are split on the issue of whether a defendant must actually agree to commit the
> predicate acts *himself or herself* in order to be liable under § 1962 (d). The majority rule
> recognizes that a defendant need not personally commit the predicate acts as long as he or
> she actually agrees to their commission by another party. *Shearin v. EF Huton Group,*
> *Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).

## B.  INVASION  OF PRIVACY

159.    That the standard by which  the right of privacy is measured is that of the person

of ordinary sensibilities. The acts of the Defendants constitute an invasion of the right of privacy,

and the Defendants' acts are of such a nature that a reasonable man would foresee that the acts

would probably cause mental distress and injury to anyone of ordinary feelings and intelligence situated in like circumstances as the Plaintiffs.

160.    That in order to recover for an invasion of the right of privacy, it is not necessary for Plaintiffs to prove that they suffered special damages, but in this case the Plaintiffs have been denied their constitutional rights and because of this loss, the Plaintiffs have been denied their civil rights pursuant to Title 42 U.S.C.A. § 1983 (Civil action for deprivation of rights).

161.    That the Plaintiffs' right to privacy and  reputation has been in good standing in the community and the Plaintiffs Samuel K. Jacobs and Nancy M. Heckerman have been embarrassed and humiliated, and their  privacy has been unwarrantedly invaded by the actions of the Defendants since 2002 when they were instructed to accidentally meet the Plaintiffs through Defendants' "lost" dog.

162.    That Plaintiffs have received many evidences of loss of esteem and practice arising from the Defendants' said derogatory statements and papers  of false claims and have sustained personal pecuniary loss thereby.   That the continuation of the distribution of these libelous  and defamatory statements and papers injures more and more the Plaintiffs' standing and reputation within the community and the income that they  derive from their professions; that Plaintiffs have already sustained much injury  in that regard to these damages.

163.    That because of the Defendants' malicious, unlawful and reckless violation of Plaintiffs' right to privacy, and  disregard, the Plaintiffs' right to work   has been obstructed by fraudulent claims of felonious debts, and punitive and exemplary damages should be assessed against Defendants, to-wit:

164.    That unless restrained from so doing by this Court, Defendants threaten and will continue to invade Plaintiffs' privacy by following and harassing them; that Plaintiffs have no adequate remedy at law.

165.    That Plaintiffs aver that the U.S. District Court must consider why a Maryland State Court openly defied its own precedents, not to mention the Federal statutes, when it failed to question the efficacy of a  Foreign Judgment which was in violation of not only the Maryland Rules, but, and more importantly, established Maryland Laws pursuant to the Constitution of the State of Maryland. [78]

## VIII.  CONCLUSION FOR PART TWO

166.    That a threat of bodily harm is neither an intrinsic distinction nor a necessary association of the crime of extortion under the Hobbs Act (Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence). Therefore, the fear element under the Act can be fulfilled by threats other than threats of bodily harm or physical injury, such as by putting the victim in fear of economic harm or loss; and the offense of extortion occurs under the Act when accused utilizes or exploits a victim's reasonable fear of economic harm or loss.

167.    That the type of "debt collection" services practiced by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. denotes an invasion of privacy that extends beyond the reasonable norm for a legitimate business. Said "debt collection" practices constitute extreme negligence and severe economic injury as revealed in this case.

---

[78] The fact that a judgment was obtained through fraud or collusion is generally held to constitute a sufficient reason for opening or vacating such judgment either during or after the term at which it was rendered. *Griffin v. Griffin*, App.D.C., 66 S.Ct. 975, 328 U.S. 876, 90 L.Ed. 1645; *In re Laing*, C.A.10(Okl.). 945 F.2d 354; ***Rook v. Rook, 353 S.E.2d 756, 233 Va. 92.***

168. That the Plaintiffs assert that the authorization for this type of legal business offends the very basis of the Citizens' fundamental constitutional rights pursuant to the:

169. **Article I, § 8, cl. 3** right to not have a State interfere with contracts of commerce which do not confer authority for the State to issue unWarranted liens and writs of attachment which are the result of denial of **Amendment IV** rights "*against unreasonable searched and seizures*" and which, if convoluted by the State, deprive the Citizen of his or her **Amendment V** and **Amendment XIV** rights to not "*be deprived of life, liberty, or property, without due process of law;...*" and **Amendment VII** "*right of trial by jury shall be preserved,*" without which there are no guarantees to each Citizen of his or her **Amendment XIV** right to not be denied the jurisdiction for "*the equal protection of the laws.*"

170. That the constitutional rights are all stated separately, but if one is violated they all are denied. There are not only constitutional amendments concerning jury trials, there are multiple Laws, Rules, and literally thousands of precedents since the foundation of the country which unfalteringly support the Citizen's right for a trial by jury. If Amendment VII is abrogated, and Rule 38 is denied, then why are they still in the Federal Rules of Civil Procedure taken up valuable paper? What kind of "judgment " call denies a jury trial and nullifies the Constitution of the United States?

## IX.  COUNTS FOR PART TWO

### COUNT 1 - UNFAIR AND DECEPTIVE ACTS AND PRACTICES

171. That the Plaintiffs incorporate and reallege paragraphs 1 through 170 as if fully set forth herein.

172. That at all times relevant to this complaint, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and their various

leaders and associates were, and still are, part of multiple enterprises as defined by Title 18 U.S.C. § 1961 (4) that  engage in, and  whose activities affect,  interstate and foreign trade or commerce.

173.    That these unfair or deceptive acts or practices are actionable under such statutes and the regulations, if any, promulgated by the Attorney General pursuant to Title 18 U.S.C. § 1968. These unfair and deceptive acts occurred primarily and substantially through wire fraud within the States of Virginia, Maryland, other States,   and countries  in which Plaintiffs conduct their interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (b) and (c).

174. That the various subsidiary  enterprises, upon the direction of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan and other associates and entities not so named in this complaint but to be revealed upon discovery, by the commission of unfair and deceptive acts or practices have caused the Plaintiffs to suffer direct, indirect, and consequential damages, including but not limited to:

a.   lost business opportunities from the lack of completion of contracts for interstate and foreign commerce;

b.   lost out-of-pocket  expenses for fees and expenses for outside professionals due to the Defendants' fraudulent and deceptive acts of multiple racketeering  activities;

c.    lost profits from the lack of completion of contracts in the United States, Europe, and China affecting interstate and foreign commerce; and,

d.   lost good reputation and good will.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, who have operated through their multiple subsidiary enterprises, ordering:

A.  a finding that the Defendants used or employed or ordered unfair and deceptive acts and/or practices in violation of Title 18 U.S.C. § 1962(b) and (c);

B.  an award to the Plaintiffs of punitive damages or monetary damages in treble the amount of their actual damages;

C.  a finding that Defendants Yelin Shi and Yu Fan, and others not so named in this complaint, estop them from raising any affirmative defenses to this action; and

D.    such other and further relief as the Court deems proper.

<u>COUNT 2 - WIRE  FRAUD  AND  FEDERAL RICO</u>

175.  That the Plaintiffs incorporate and reallege paragraphs 1 through 174 as if fully set forth herein.

176.    That on at least two or more occasions, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, and/or  their subsidiary enterprises, have continually used the aforesaid intentionally fraudulent and deceptive schemes on the victim Plaintiffs, that were designed to:

a.  bait the Plaintiffs into submitting information not for the purpose intended but  to deceive the Plaintiffs into supplying goods and services for projects the Defendants had no intention of completing, and then fraudulently taking over the contracts to the detriment of the Plaintiffs' business ventures, and their  employees, so that later  an unfounded and false claim could be generated for $140,000.00.

177.  That in furtherance of the aforesaid  intentionally fraudulent schemes, at least two or more of the Defendants Sidney S. Friedman, Greg I. Rose, &  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan through their multiple RICO enterprises made numerous interstate and foreign telephone calls and made use of other interstate wire facilities in repeated

violations of Title 18 U.S.C. § 1343 in order to threaten the Plaintiffs, their family, their associates and their respective families, and their office staff.

178.  That the use of interstate and foreign wire systems included but were not limited to interstate and foreign telephone calls inside Maryland, from Maryland to the District of Columbia, Virginia, and other states, and to Canada and other countries not yet known, the purpose of which was to enter into, execute, effectuate, facilitate, and promote the aforesaid frauds and schemes.

179.  That each of the aforesaid deliberate and willful acts of misconduct by Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan and their multiple enterprises, and by their various associates who are commandeering these predicate acts constituted violations of Title 18 U.S.C. § 1343 (Fraud by wire, radio or television), and other constituted instances of "racketeering activity" as defined in Title 18 U.S.C. § 1961(1) and § 1956 (c) (7) (D).

180.  That the numerous predicate acts of racketeering activity by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, their multiple enterprises, associates, leaders, and other employees, were interconnected and related, and were part of a pattern of racketeering activities and schemes to defraud the Plaintiffs, and perpetrated for the same or other similar purpose, thus constituting a "pattern of racketeering activities" as defined in Title 18 U.S.C. § 1961 (5).

181.  That the Defendant Weinstock, Friedman & Friedman, P.A., with Nations Realty, United Realty, BMI Realty, and Starlin Interiors, and other associations instigated by, or joined by Defendants Sidney S. Friedman, Greg I. Rose, Yelin Shi, and Yu Fan, are each an "enterprise" as defined in Title 18 U.S.C. § 1961 (4).

182.  That through said patterns of racketeering activities:

a.  The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan have attempted to collect unlawfully, willfully, and knowingly  received income derived from direct and indirect racketeering activities, and have invested, directly and indirectly, such income or the proceeds thereof in the promotion and continuation of the RICO enterprises as aforementioned in this complaint in violation of Title 18 U.S.C. § 1962 (a);

b.     The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and other officers, attorneys and employees not so named as of this filing but to be named later, have acquired and maintained, directly and indirectly, an interest in or control of the activities of the "Weinstock, Friedman & Friedman, P.A.," "Nations Realty," "United Realty," "Starlin Interior," and "BMI Realty," which are enterprises, and their  subsidiary enterprises, in violation of Title 18 U.S.C. § 1962 (b);

c.  The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and the other officers, attorneys and employees to be named later, have conducted and participated, directly and indirectly, in the conduct of said RICO enterprises' affairs in an attempt to control the Plaintiffs' interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (c);

d.     The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and other officers, attorneys and employees not so named but who shall be revealed at a later date, conspired together at different places and among multiple different associations to perform those actions and

directions which have been enumerated in paragraphs a-c above in violation of Title 18 U.S.C. § 1962 (d).

183.   That the result of the foregoing violations of the law and the patterns of racketeering activities, and the receipt and investment from the fraudulent patterns, the acquisition or maintenance of control over the activities of the Defendants' enterprises, the conduct of the affairs of the Defendants' enterprises, is that the consumer Plaintiff victims have been injured in their business and property and shall be able to recover threefold the damages sustained and the cost of the suit pursuant to Title 18 U.S.C. § 1964 (c). The Plaintiffs' damages include but are not limited to:

a.   the loss of business contracts for interstate and foreign commerce;

b.   the loss of business contracts for new joint ventures because of the Defendants' predicate acts;

c.   the loss of profits from the contracts that were never brought to fruition in the United States, China and Europe due to Defendants' interference with Plaintiffs' own office;

d.   the loss of honest services from fraudulent contract agreements with the Defendants' enterprises;

e.   the loss of revenue and salaries for the officers from these businesses; and,

f.   the loss of good will and reputation in interstate and foreign commerce.

184.   That Plaintiffs allege that such acts are the predicate acts which include wire fraud, interference with commerce, and attempting to engage in monetary transactions in property derived from specified unlawful activity which have constituted this pattern of racketeering activity. Plaintiffs allege that they have been continuously injured and will continue to be injured pursuant to violations of § 1962 (a) by the Defendants Sidney S. Friedman, Greg I. Rose, &

Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, their multiple enterprises, and individual Defendants.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendant Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan aforementioned:

A.  an award to the Plaintiffs of monetary damages in treble the amount of their actual damages for the violations of these contracts and other interest charges; and,

B.  such other and further relief as the Court deems proper.

## COUNT 3– TITLE 18 U.S.C. § 1962 (b) VIOLATIONS

185.  That the Plaintiffs incorporate and reallege paragraphs 1 through 184 as if fully set forth herein.

186.  That the Plaintiffs allege that pattern of racketeering activities as aforementioned are the actions of an organized crime group by association in fact, and,  under the guise of corporations or companies, the officers and employees of the Weinstock, Friedman & Friedman, P.A., Nations Realty, BMI Realty, and Starlin Interiors are operating these enterprises pursuant to these actions. The  officers and executives, and the employees under the direction and control of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, Yu Fan, and others, have infiltrated  legitimate businesses as members of a crime organization because they have an *interest in* and *control of* the enterprises which affect interstate and foreign commerce in violation of  Title 18 U.S.C. § 1962 (b).

187.  That the Plaintiffs allege that the intentional, fraudulent, and  criminal activities through  extortion by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, their multiple enterprises which are continuing the

same acts of bait and switch of funds which resulted in the stolen $1.5 million dollars during the last ten years by the Defendants' leaders and other associates.

188.    That the continuation of these previous predicate acts of a pattern of racketeering activities along with the threats, thefts by conversion, extortions, identity theft, bank fraud, intrinsic and extrinsic fraud, and other criminal acts are the "causes in fact" which directly and indirectly halted the completion of the Plaintiffs' interstate and foreign commerce due to the constant overriding stress of the threats of attempted murder and kidnapping of the Plaintiffs and their family, and lack of time and resources which were fraudulently and feloniously stolen by the Defendants and their associates during the last ten years.

189.    That the Plaintiffs allege that the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan with whom the Plaintiffs had dealt in a professional manner had the knowledge of the objectives of this situation which increased the amount of criminal activity against the Plaintiffs with the breaches of contract and trust, and with threatened physical and economic violence in violation of Title 18 U.S.C. § 1951 (a) and Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises).

WHEREFORE, Plaintiffs pray that a finding issue from the Court that:

A. the Defendant individuals, and their enterprises, named and not named in this complaint who are part of this conspiracy, who used, employed, or ordered the unfair and deceptive acts in violation of Title 18 U.S.C. § 1951 (a)(Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), and § 1962 (b), be ordered to cease and desist their criminal actions, and that a full investigation be started by the Attorney General of the United States pursuant to Title 18 U.S.C.:

§ 1968 (Civil Investigative demand), § 1963 (Criminal penalties), and § 1966 (Expedition of actions); and,

B. such other and further relief as the Court deems proper.

### COUNT 4 – AIDERS AND ABETTORS

190.   That the Plaintiffs incorporate and reallege paragraphs 1 through 189 as if fully set forth herein.

191.   That the Plaintiffs allege that the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan,  agreed to participate in and commit prohibited predicate acts in violation of Title 18 U.S.C. § 1962 (a) (b) and (c) through their multiple enterprises with other coconspirators. Plaintiffs further allege that the agreement to participate in the predicate acts of the racketeering activities implicated the Defendant individuals as  aiders and abettors of the continued pattern of racketeering activities of the Defendant enterprises in violation of Title 18 U.S.C. § 2 and § 1962 (a).

192.   That the Plaintiffs allege that the injury to their business was directly instigated and developed by the Defendant individuals through the pattern of racketeering activities pursuant to the policies and functions of the Defendant enterprises in violation of Title 18 U.S.C. § 1962 (a).

WHEREFORE, Plaintiffs pray:

A. that the damages for these actions be determined by a jury of their peers; and

B. such other and further relief as the Court deems proper.

### X. PRAYER FOR RELIEF FOR PART TWO

WHEREFORE  Plaintiffs  respectfully  request  that  this  Honorable  Court  find  the interpretation of the law as enacted by Congress pursuant to the Constitution of the United States

and the statutes enacted pursuant thereof; and, FURTHERMORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants as follows:

a.   That the granting compensatory damages in an amount to be proven at trial but at least $5,000,000.00 dollars plus all trial costs, and trebling such damages pursuant to Title 18 U.S.C. § 1964 (c) and (d);

b.   That all costs for the time lost in the last two and one half years which  events have lead to the disruption, failure, and stoppage of the interstate and foreign commerce of the Plaintiffs' business, be granted in the amount of  $2,100,000.00;

c. That an award be granted to the Plaintiffs of all reasonable fees for legal costs in access of $50,000.00, and all costs for the preparation of this complaint;

d. That a finding that the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A.,Yelin Shi, and Yu Fan, through their multiple enterprises, and others not so named in this complaint, estop them from raising any affirmative defenses to this action;

e.   That the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, their multiple subsidiary enterprises, and associates, known and unknown, should for the sake of public policy and to prevent further violations of the law, have orders issued *"imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce"* pursuant to Title 18 U.S.C. § 1964 (Civil remedies)(a);

f.   That Defendants be directed to submit all evidence, documents, publications, contracts, and other communications in their possession  to the Plaintiffs, or their attorney, as

alleged in this complaint by the Plaintiffs pursuant to the Federal Rules of Civil Procedure Rule 26;

g. Such other and further relief as the Court deems proper.

h. Plaintiffs preserve the right to amend this complaint upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed, but before responsive pleadings have been filed pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## PART THREE

### XI. STATEMENT OF FACTS FOR CONSPIRACY AND RICO

### A. INTERNET SEARCH ENGINES—THE REAL WEAPONS OF MASS DESTRUCTION.

193. That after Defendants Vijay Patel and Dilip Patel in Part One of this Complaint, and Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan in Part Two of this Complaint had initiated or mostly completed their separate and distinct patterns of racketeering activities through the aforementioned predicate and overt acts, Defendant Vijay Patel and Dilip Patel shoveled through the internet and discovered the libelous media discharges that JET AIRWAYS JOY OF FLYING had planted on order of its Al Qaeda partners and financiers, Naresh Goyal and Dawood Ibrahim, had been named in the USPTO lawsuit. [79]

---

[79] It may be added, that the United States was the first of all civilized nations to embody these principles in their municipal law, and enforce them by penal enactments. Having so legislated, it has been become the clear duty of the courts of the United States to take cognizance of these offences, and it is to be expected that they will discharge with fidelity and firmness a duty so important to their country and to the peace of the world. *Charge to the Grand Jury- Neutrality Laws and Treason*, 30 Fed. Case No. 18,269.

194. That the information about the liaison between Naresh Goyal and Dawood Ibrahim and their Al Qaeda airline was supplied and verified through   Official Documents from the offices of high level Indian Government officials.  Just as this Court has a case number assigned to every paper filed in the Court, there are document numbers on all papers filed in the Indian Government and the numbers on these documents are true and correct.

195. That, in fact, as of this writing, an official investigation is being held by the High Court of India (Supreme Court equivalent in the U.S.) into the financing of JET AIRWAYS JOY OF FLYING  and that airline's well known association with, and financing by, terrorist Dawood Ibrahim. The Indian judicial system moves at a snail's pace  since the High Court is held and holds itself in high esteem and will not be compromised by low class  criminal bribery and schemes.

196. That Defendants Vijay Patel and Dilip Patel announced that they were in contact with JET AIRWAYS JOY OF FLYING  and that they had retrieved the libelous articles against Plaintiff Nancy Heckerman because she had challenged the Indian airline's "Petition for Cancellation" for her U.S. Registered Trademark for her own airline named Jet Airways, Inc. Slander and libel are a normal occurrence in India and although the Indian media thought it great sport, even the legitimate and honorable newspapers and other media outlets did run these libelous affronts. The JET AIRWAYS JOY OF FLYING  clearly has no legitimate claim to that Trademark which was applied for over two years before the Indian airline usurper was even allowed to fly outside of the borders of its native India.

197. That through the internet search engines, which record any and  all information without an examination into the veracity of the statements, Defendant Vijay Patel contacted any and every name which was associated with the Plaintiffs. Only a few years ago this type of

scandalous disregard for the truth and invasion of privacy would not have been possible since no reputable newspaper or other media would be put in jeopardy of being sued if the information was incorrect or false.

198. That with the advent of this uncontrolled source of electronic information which has no face, has no physical address, and has no ethics so that criminals are able to conspire and fabricate untruths in order to form new criminal enterprises and organizations with new weapons. The internet is the true Weapon of Mass Destruction. The average citizen has no defense against this electronic bomb which lands on a city and spreads its dust of destruction. The internet search engine enters each computer whether invited or not. The internet has become a criminal component in today's society as lethal as a gun in a bank robbery.

199. That the original intention of the internet was for communication and a storage of information which has become jaded and junked by 'suggestions' about persons, entities and companies which the search engines readily admit are not verified. The internet lacks the authority or the ability to command responsibility for compliance of information, and said information can easily be changed by any faceless wanderer with falsities trumping the truth and libels reappearing again and again.

200. That some of the Europeans and Australians have already started filing lawsuits against the search engines who are the real pirates of the electronic airwaves, and masses of lawsuits in this country are lining up. This cause of action will be the basis for one of those cases against the internet search engines.

201. That the United States has laws against every thing imaginable except this electronic criminal which challenges the average citizen to defy it. If a criminal enters a house and murders a person he is hunted down until caught. The internet is being allowed to enter a

persons' house and to murder a person through false accusations which can be as lethal to a life as a knife or gun. The internet search engines supercede any previous assaults on the Bill of Rights and are among the absolute worst violation of the Citizen's Fourth Amendment right to be secure in his papers, person, houses and effects. Where is the Miranda for search engine probable cause and arrest?

202. That where are these search engines' Warrants upon Oath or affirmation before they publish their libelous information? Would any of these libels be submitted if the writer or submitter was forced to physically face the accused in a courtroom before submitting the information? Where are the Citizen's Seventh Amendment rights to a trial by jury? Where are is the Sixth Amendment right for a public trials before a "judgment" is not opinioned by a Court, but decided by an unseen entity? Where are the trials held before these verdicts of the internet search engines are announced?

203. That the internet search engines are star chamber for criminal prosecutions and trials without the constitutional guarantees. American forefathers left the old countries to evade these star chambers and forced involuntary servitude, but two hundreds years later these decisions to accept deceptions without justice and equality are being embraced as if sacred.

204. That if a person submits his own name to these criminal internet search engines, then he is responsible for whatever might be thrown at him, but if the private person has never submitted his name to, nor agreed to be part of that system, then he has the right to decline and reject his name being added to the list of search engine victims. To even identify a person through unfounded characterizations without his permission is to violate almost every part of the Bill of Rights. The media has a professional responsibility to announce who is acquitted or innocent more than who is guilty.

## B. THE FORMING OF A CONSPIRACY.

205. That through the internet Defendants Vijay Patel and Dilip Patel found the U.S.

District Courts and the names of Defendants Yelin Shi and Yu Fan who were part of another

case involving the Plaintiffs. Defendant Vijay Patel found the names of Defendants Sidney S.

Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., and contacted them.[80] A

conspiracy was formed by all of these Defendants pursuant to Title 18 U.S.C.A. § 241

(Conspiracy against rights). [81]

> In civil RICO doctrine, two concepts emerge:
> First ,the plaintiff seeks to impose vicarious liability on an employer that is not
> named as an enterprise. Second, the plaintiff seeks to impose liability on an enterprise-
> employer for a defendant-employee's violation.
> It is necessary to show that an officer or director had knowledge of, or was
> recklessly indifferent toward, the unlawful activity. Once knowledge or reckless
> indifference at this high level has been determined, the court may then consider other
> factors, among them the number of high-level employees involved in the racketeering
> activity, their degree of participation in the racketeering activity, whether these high-level
> employees themselves committed the alleged predicate acts, and whether the corporation
> directly and substantially benefited from the racketeering activity. *Gruber v. Prudential-
> Bache Secs., Inc.,* 679 F.Supp. 165, 181 (D.Conn. 1987).

206. That the conspiracy is being conducted by Defendants Vijay Patel and Dilip Patel

pursuant to Title 18 U.S.C.A. § 1962(b)[82] (Prohibited activities), and is not only conducted by,

---

[80] If a man joins and acts with an assembly of people, his intent is always to be considered and adjudged to be the same as theirs; and the law judges of the intent by fact. *Case of Fries*, Case No. 5,127.

[81] Direct proof of the purpose, however, is not legally necessary. The concert of the purpose may be deduced from the concerted action itself, or it may be inferred from facts occurring at the time, or before orafterwards.*Charge to the Grand Jury-Treason*, [2 Wal. Jr. 134; 4 Am. Law J. (N.S.) 83; 5 Pa. Law J.R. 55; 9 West. Law J. 163.] Circuit Court, E.D. Pennsylvania. Sept. 29, 1851) 30 Fed.Case No. 18,276.

[82] RICO required a specified relationship between the RICO defendant and enterprise. Either the enterprise must be the object or goal of the racketeering activity (§§ 1962(a) and (b)), or it must be a tool utilized to carry out racketeering activity. *Benard v. Hoff,* 727 F. Supp 211, 214 (D MD 1989).

but entirely controlled by Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. pursuant to Title 18 U.S.C.A. § 1962(c).

       Post-Webster decisions also decline invitations to embellish section 1962 (c) with other adornments. The plaintiff need not demonstrate (1) that the defendant solidified or otherwise enhanced his position in the enterprise through commission of the predicate acts, (Scotto) (2) that the racketeering activities corrupted or changed the enterprise's policies or administration, (Scotto) or (3) that the racketeering activity's proceeds went to the enterprise rather than to the defendant. *US v. Welch*, 656 F.2d 1039.

207. That the conspiracy is completed pursuant to Title 18 U.S.C.A. § 1962(d).

       As a threshold matter, most decisions have concluded that RICO conspiracy does not require allegation or proof of an overt act. In *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990), the court of appeals held that although a criminal RICO conspiracy does not require proof of an overt act, standing in a private action alleging a RICO conspiracy requires proof of proprietary injury from an overt act. The injury must be caused by an overt act that is a section 1961(1) predicate act, and not merely one caused by other overt acts furthering the conspiracy. 897 F.2d at 25.

208. That Defendant Vijay Patel then called the Plaintiffs, their family, associates, and others to tell the Plaintiffs that he was talking to Defendant Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. and that they were going to join forces to "destroy you." Since Defendant Vijay Patel had already been charged with committing acts of violence against his wife, and had joined another person who had stated that he could bomb any U.S. city from an airplane, then it is fair and reasonable to take the statements that these men make about bombing Detroit quite literally.[83]

209. That Defendant Vijay Patel has stated to the Plaintiffs both on the telephone and through messages on the answering machines and internet that he has joined in this conspiracy and has gathered information about the Plaintiffs from third parties which is detrimental to them,

---

[83] In treason there are no accessories; all who engage in rebellion at any stage of its existence, or who designedly give to it any species of aid and comfort, in whatever part of the country they may be, are principals in the commission of the crime. *U.S. v. GREATHOUSE*, et al. 26 Fed. Cas. No. 15,254; 4 Sawy. 457; 2 Abb. U.S. 364; Circuit Court, N. D. California.   Oct. 17, 1863.

but he might not work with them if he is given money. Defendant Vijay Patel comes from a country where extortion and bribery are standard in the society. But in the Untied States extortion and blackmail are still violations of Title 18 U.S.C.A. § 1951 and Title 18 U.S.C.A. § 1952.

210.    That since the Plaintiffs contacted the Department of Homeland Security about the possible bombings of Montreal and Detroit, the Defendants Vijay Patel and Dilip Patel have been monitored.[84] And so have all of the people that Vijay Patel has had contact with in the United States. The Al Qaeda is a foreign entity which although it has not a formal government within   boundaries of its own, it has an authority which is at war  upon the United States and an army to carry out its orders and operations.

211.    That Plaintiffs state that every person who Defendant Vijay Patel has had contact with is also being monitored pursuant not only to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries), but also Title 18 U.S.C.A. § 793 (Gathering, transmitting or losing defense information) and § 794 (Gathering or delivering defense information to aid foreign government). This is not an assumption, it has been on the news reports almost every day for the last three months.

212.    That although the monitoring has been challenged and debated in Congress, it is being used legally to monitor such threats as those purposed by these Defendants and their coconspirators pursuant to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national

---

[84] If  war be actually levied, - that  is a body of men be actually   assembled for the purpose of effecting a treasonable purpose,- all those who perform any part, or however remote from the scene of the action, and who are actually leagued in the general conspiracy, are to be considered as traitors.    *Ex parte  Bollman,* 4 Cranch 126;  *United States vs. Burr,* ibid 469;  *People vs. Lynch,* 1 Johns. 553.

boundaries). This is one case which justifies this monitoring according to the reasons why Congress enacted the law.

## C. FUNDAMENTAL RICO

213. That there are four basic causes for this RICO lawsuit:

a.   The cause of injury by the Defendants has been personal, but the effect has been equally disruptive in the Plaintiffs' interstate and foreign commerce. ("primary purpose of RICO. . .[which] is to reach those who ultimately   profit from racketeering, not those who are victimized by it." *Haroco, Inc. v. American Natl Bank & Trust,* 747 F.2d 384, 401 (7th Cir 1984), *affd on other grounds,* 471 U.S. 606 (1985)).

b. The Injury in Fact has been actual and direct, not 'hypothetical' or 'speculative.' The events have occurred and the damages are real. The financial obligations created for the various breaches of contract and inducement of breaches of contract by all of these Defendants are extensive and the merits are not subjunctive hypotheses; the threats of physical injury and violence are real and they have been voluntarily recorded or written, or have been witnessed; and the proof of the Defendants' extrinsic frauds are the overwhelming overt acts which have also been documented.

c. That most of the overt acts to interfere in the commerce of the United States which have been committed against the Plaintiffs have been financed by foreign entities which have orchestrated these crimes to the advantage of a foreign nation or to the detriment or disadvantage of the United States through these foreign puppets.

d. The Plaintiffs will prevail with the Probable Cause for these damages and injuries   if tried in a  court. The probable cause exists because of the merits of the written contracts and

agreements, and upon the testimony of witnesses to these business ventures, and upon the abundance of evidence and proof of these frauds.

214. That these Defendants have formed their conspiracies and their RICO enterprises to injure and damage the Plaintiffs. Each is obligated for a large debt for a business venture for which the Defendants could not perform their part of the task. Now that the obligation is due, the Defendants are each attempting to evade and avoid the larger debts by claiming that the smaller amounts which they claim are superior to the Plaintiffs' claims. The math indicates that this simply does not compute.

215. That $45,000.00 which Defendants Vijay Patel and Dilip Patel demand does not compensate the Private Placement firm for $312,000.00. And, $140,000.00 does not compensate the two breached contracts for the $5,390,000.00 which is a damage Plaintiffs have incurred because of Defendants Yelin Shi and Yu Fan.

## XII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Honorable Court find the interpretation of the law as enacted by Congress pursuant to the Constitution of the United States and the statutes enacted pursuant thereof; and, FURTHERMORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants as follows:

a.    That the granting compensatory damages in an amount to be proven at trial but at least $6,230,000.00 dollars plus all trial costs, and trebling such damages pursuant to Title 18 U.S.C. § 1964 (c) and (d);

b.    That all costs for the time lost in the last two and one half years which events have lead to the disruption, failure, and stoppage of the interstate and foreign commerce of the Plaintiffs' business, be granted in the amount of $3,000,000.00;

c. That an award be granted to the Plaintiffs of all reasonable fees for legal costs in access of $62,000.00, and all costs for the preparation of this complaint;

d. That a finding that the Defendants Sidney S. Friedman, Vijay Patel, Dilip Patel, Greg I. Rose, Weinstock, Friedman & Friedman, P.A.,Yelin Shi, and Yu Fan, through their multiple enterprises, and others not so named in this complaint, estop them from raising any affirmative defenses to this action;

e. That the Defendants Sidney S. Friedman, Vijay Patel, Dilip Patel, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, their multiple subsidiary enterprises, and associates, known and unknown, should for the sake of public policy and to prevent further violations of the law, have orders issued "*imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce*" pursuant to Title 18 U.S.C. § 1964 (Civil remedies)(a);

f. That Defendants be directed to submit all evidence, documents, publications, contracts, and other communications in their possession  to the Plaintiffs, or their attorney, as alleged in this complaint by the Plaintiffs pursuant to the Federal Rules of Civil Procedure Rule 26;

g. That the Court  direct any further actions and orders against the Defendants as it may deem appropriate, but  not known to the Plaintiffs as of filing of this complaint, pursuant to Title 28 U.S.C. § 1651 (Writs), and § 1361 (Action to compel an officer of the United States to perform his duty);

h. Such other and further relief as the Court deems proper.

i.  Plaintiffs preserve the right to amend this complaint upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed, but before responsive pleadings have been filed pursuant to Rule 15 of the Federal Rules of Civil Procedure.

### XIII.  TRIAL BY JURY

Plaintiffs demand a trial by jury pursuant to Amendment VII of the Constitution of the United States and  Federal Rules of Civil Procedure Rule 38 (b). Also, Title 28 U.S.C.A. § 2072 (Rules of procedure and evidence; power to prescribe) COMMENTARY ON 1988 AND 1990 REVISIONS—'Federal Rule—Making Procedure Altered'—Paragraph 3: *". . .Also in that paragraph was the direction that the rules not impair the right to trial by jury guaranteed by the Seventh Amendment.* ***That direction is omitted, but without moment: no reminder is needed that neither a rule nor a statute can upset a constitutional requirement."***

Right to trial by jury in a civil RICO case exists because the Supreme Court of the United States has long upheld this right pursuant to the antitrust laws and precedents which carry such a right. *Fleitman v. Welsbach St. Lighting Co.*, 240 U.S. 27 (1916 ) (Holmes, J.).  The right to trial by  jury is  derived  from  § 1964 (c).

Dated this 12th day of  September, 2007.

Respectfully submitted,

Samuel K. Jacobs

Nancy Heckerman

OFFICE OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753   Cellular: 240-505-1603
E-mail: sjnhjacobs@msn.com

*Samuel K. Jacobs, et al, v. Sidney S. Friedman, et al,*

# **<u>EXHIBITS</u>**

'EXHIBIT  A':   PROMISSORY NOTE

'EXHIBIT B':    AFFIDAVIT OF MILAN PATEL

'EXHIBIT C':   TWENTY  E-MAILS FROM VIJAY PATEL

'EXHIBIT D':   AFFIDAVIT OF SAMUEL K. JACOBS

## PROMISSORY  NOTE

U.S. $45,000                                    Montgomery County, Maryland
                                               December 20, 2005

     FOR VALUE RECEIVED, the undersigned promises to pay to the order of Vijay Patel, (the "Holder"), the principal amount of Thirty-Five Thousand Dollars ($35,000.00), with simple interest thereon at the rate of eight and a half percent (8.5%) per cent annum from the date hereof until this Note is paid in full. The principal of and interest on this Note shall be payable in accordance with the following schedule:

| | |
|---|---|
| January 17, 2006 | Principal amount of $35,000.00 |
| January 17, 2006 | Accrued interest in the amount of $254.39 |
| January  17, 2006 | Additional fee in the amount of  $9,745.61 |

     All principal and interest on this Note, unless paid in accordance with the foregoing schedule, shall be due and payable on January 17, 2006, and/or before that date. This Note may be prepaid in full at any tine without premium. Payments of principal and interest hereon shall be made in lawful money of the United States of America. Additional fee in the amount of Nine Thousand Seven Hundred Fory-Five Dollars and 61/100 ($9,748.29).

     In the event of a default under this Note, the undersigned agrees to pay all costs of collection incurred by the Holder, including, without limitation, reasonable attorneys' fees and court costs.

     The undersigned hereby (i) waives presentment, protest, notice of nonpayment, and notice of dishonor, and (ii) expressly Consents to the release or substitution of any of the property securing this Note.

     This Note shall be binding upon the undersigned and his heirs, personal representatives, successors, and assigns, and shall inure to the benefit of the Holder and its successors and assigns. This Note shall be governed by, and construed in accordance with, the laws of the United States.

     IN WITNESS WHEREOF, the undersigned has executed this Note under seal as of the date and year first above written.

_____

SAMUEL K. JACOBS

SEAL OF NOTARY PUBLIC

_____                _____

Signature of Notary Public                      Witness

'EXHIBIT A'  USDC/DC
Jacobs v. Friedman

# AFFIDAVIT

I declare under penalty of perjury, that to the best of my knowledge, the foregoing is true and correct. Executed on _____ (Date). MILAN PATEL  (Print Name), and

_____ (Signature).


That Milan Patel, being first duly sworn, deposes and says:

1. I, Milan V. Patel, do hereby state that I am the recipient of numerous threatening, harassing, and unwarranted telephone calls almost daily for over a seven months from a man known as Vijay Patel who claims that he resides in Montreal, Canada. I think that this man could be violent from the tone of these telephone calls (from the telephone number 514-334-4078), and since he has threatened my family.

2. Vijay Patel is of no known relationship to me, and in fact, I have never met him in person in order to be able to give a physical description. However, he has obtained my name because of a business relationship and I believe that he has called me using not only his own name but that  he has disguised himself as other people. In particular, I believe that he has been claiming to be an employee of the Royal Canadian Mounted Police by the name of "SANDY JOHNSON." and also as a detective named "Marvin Crosby" who  works for a "private investigative services."

3. Vijay Patel has stated that he has contacts in Maryland who will *"come look me up,"* and has stated that he knows my home address, how many

AFFIDAVIT — Page 1 of 3

'EXHIBIT B'  USDC/DC
Jacobs v. Friedman

children I have, the names of my family, my Social Security number, and other personal information. **I take these statements seriously since I sincerely believe that Vijay Patel has every intention of harming my family and me.** When another person threatens my child(ren) and wife, there is very little reason not to believe that if he has gone to this extent to find out about my personal life then he will carry through with his threats.

4. In a telephone call that I received on January 13, 2007, at 11:00 a.m., Vijay Patel stated that he was working with representatives from Jet Airways in India, and gave the names of these individuals as: Boney Kapoor, Javed Akhtar (Director of Jet Airways), and Saroj Datta (Executive Director of Jet Airways). Although the telephone call is in an Indian language known as Gujarati, I believe a competent translator will verify my statements.


5. Vijay Patel also stated in that telephone call on January 13, 2007, that he knew that that I was in contact with Ms. Nancy M. Heckerman who is President of JET AIRWAYS, INC. in the United States. Ms. Heckerman has filed documents with the United States Patent and Trademark Office and the Department of Transportation against the infringement of her company's trademark by Jet Airways India. He stated in Gujarati that she had lied about Jet Airways India. I believe the documents that Ms. Heckerman filed with the USPTO and the DOT were truthful because they are substantiated with documents from officials of the Indian Government.

7. Vijay Patel has stated that he is coming to Maryland in the United States and is going to come to my house. He has also stated that he has other associates in the U.S. who will harass me with unfounded and untrue statements to the local police departments until I cooperate with him. I believe that Vijay Patel is a danger to my family.

Affidavit pursuant to **Title 28 United States Code Annotated §1746. Unsworn declarations under penalty of perjury.**
See *Dickinson v. Wainwright*,    626 F.2nd. 1184, held   that petition, which contained statement "I declare that under penalty of perjury that the foregoing is true and correct" above petitioner's signature, was sufficient even though certificate of oath may have been defective. One who subscribes to a false statement under penalty of perjury pursuant to federal statute may be charged with perjury just as if statements were made under oath. **Title 18 U.S.C.A. §1621; Title 28 U.S.C.A. §1746.**



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat          Web Search:               Go

msn Hotmail                    Today | Mail | Calendar | Contacts          Options | Help

sjnhjacobs@msn.com                                                        Free Newsletters

Reply | Reply All | Forward | ✗ Delete | Junk | Put in Folder ▼ | Print View | Save Address

From :     Vijay Patel <vijay123sonu@yahoo.ca>                            ▲ | ▼ | ✗ | Inbox
Sent :     Tuesday, June 26, 2007 12:49 AM
To :       samuel k jacobs <sjnhjacobs@msn.com>
Subject :  hello

Hello Mr Jacobs,
        I am assuming the reason you don't respond to your phone now is that you are aware that have committed a crime. Crime which you have fraud ed me into tending you money. As well you create false document, with false signature and stamp of notary and giving as a guarantee. I have been forwarding this letter all political parties in USA, Canada and the U.K. to let them know you are a BIG Fraud. I am asking these people to keep there eyes open and see if you con anyone else to lend you money. I have post these document in many website to alert the public. If you do a search on all the document you have sent me, you will see them as well.
        I will be visiting your neighbourhood soon, and I will come and visit you. Don't be surprise when I knock at your door.

regards

---

Be smarter than spam. See how smart SpamGuard is at giving junk email the boot with the **All-new Yahoo! Mail**

---

🖨 | 📧 | 📇                                                              ▲ | ▼ | ✗ | Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat          Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

'EXHIBIT C'  USDC/DC
Jacobs v. Friedman

20 E-MAILS







sjnhjacobs@msn.com

🐦 Reply | 🐦 Reply All | 🐦 Forward | ✗ Delete | 🗑 Junk | 📁 Put in Folder ▾ | 🖨 Print View | 📇 Save Address

| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Saturday, February 11, 2006 9:39 PM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | Urgent Responce Please |

Dear Mr. Jacobs,
    Am writing this urgent email to inform you that I received a phone call from a strange person representing himself as a investigator from JET AIRWAYS INDIA. He did not disclose his name, but advised that he will disclose more information upon his arrival in 2 weeks in Montreal.

    He had asked me many questions about you and your wife. As to how he got my cellular number, he did not respond, but he asked questions such as, what is my relationship with you and your wife? How I know you and your wife? How long I know you and your wife? What is my involvement with you and your wife. There are many more questions he asked about you and your wife. I did not tell him anything except, asking where he got my number and how he knew my name.

    Mr. Jacobs, please give a call urgently, because he had said he will call me back sometime soon. I need to know what's going on or I need to know what to tell him.

    My wife and kids are coming back on Tuesday, and I don't want this guy's phone call in my house, because I don't want my wife ask questions and be scared about this whole situation.

PLEASE CALL ME BACK URGENTLY !


## *Vijay Patel*

**contact :**
**(514) 917 - 0825**
**vijay123sonu@gmail.com**
**vijay123sonu@yahoo.ca**

Find your next car at **Yahoo! Canada Autos**

🐦 | 🐦 | 📇                                                                 ◄ | ▼ | ✗ | 📇 Vijay-Dili... | 📇 Inbox

**Get the latest updates from MSN**

**MSN Home** | **My MSN** | **Hotmail** | **Search** | **Shopping** | **Money** | **People & Chat**                    Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved  Privacy Statement  GetNetWise  Anti-Spam Policy



THIS IS YOUR FINAL NOTICE.

## *Vijay Patel*

*contact :*
**(514) 917 - 0825**
vijay123sonu@gmail.com
vijay123sonu@yahoo.ca

# GUILLAUME BRIEN
### AVOCAT – ATTORNEY
### BARREAU DU QUEBEC
### 180 RENE-LEVESQUE EAST, SUITE #206
### MONTREAL, QUEBEC, CANADA H2X 1N6
### Tel: (514) 807-1774 Cell: (514) 791-8885 Fax: (514) 807-1773
### E-MAIL: law@immigration-canada.biz
### WEB: www.immigration-canada.biz

**WITHOUT PREJUDICE – BY FAX**

*__FINAL NOTICE:__*

Montreal, May 10th, 2006

**Samuel K. Jacobs**
2300 M Street NW, Suite 800
Washington, D.C. 20037, U.S.A.
Fax: (xxx) xxx-xxxx

**Object: Promissory Note payable to Vijay Patel**

---

Sir,

We have been mandated by our client, Mr. Vijay Patel, to act for him in all matters regarding the Promissory Note executed by you and made payable to our client ('the holder').

On December 20, 2005, you signed a Promissory Note before M. J. Stecyk, Notary Public for the state of Maryland. By executing this Promissory Note you obliged yourself to repay the amount of USD $35,000 on January 17, 2006, in addition to $254.39 in Accrued interest and $9,745.61 in Additional Fee.

**You are hereby formally put on demand to pay to our client USD $45,000.00 within 10 days of receiving this letter, in accordance with the above-mentioned Promissory Note.**

If you fail to comply with these presents, we have been instructed to commence all necessary legal proceedings against you in order to recover all the moneys due to our client. In the event of a lawsuit exemplary damages in addition to solicitor fees and court costs will be requested.

**DO GOVERN YOURSELF ACCORDINGLY.**

Guillaume Brien
Attorney

**To,**
**Samuel K. Jacobs**
2300 M Street NW, Suite 800
Washington, D.C. 20037, U.S.A
(240) 441-6353

This is your FINAL NOTICE I am sending. After this notice, I will not be contacting in civil manner. I will track you down and make sure I receive my money ($ 45,000.00 u.s.) on the spot. I will use what ever force I need to. Do not take this notice littley. You have messed with the wrong person. You have ruined my life and cause great deal problems in my family. I will not forgive this. I will get even.

So, Either you contact me and make some kind of deal or you better hide. If you do decide to hide, make sure you hide very well because when I find you, you will be punished.

Sincerely,

Vijay Patel
(514) 917-0825



msn Hotmail    Today | Mail | Calendar | Contacts    Options | Help

Free Newsletters

sjnhjacobs@msn.com

Reply | Reply All | Forward | X Delete | Junk | Put in Folder ▼ | Print View | Save Address

| | |
| --- | --- |
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Sunday, July 2, 2006 12:19 PM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| CC : | Dilip Patel <patel@videotron.ca> |
| Subject : | demand notice |

Hello Mr. Jacobs,

As of today, it's been 6 months that you have not returned my money for the sum of $35,000.00 us + $10,000.00 us. Before I had given you the money, you promised to return the money within 10 days ( before January 10th, 2006). I don't know your reasoning behind not paying back my money.

When ever I contact you and speak to you, you either respond and say you'll call me back which you never do or you make an excuse of something else.

When the money was given to you there was headache involved. Now, that you have to return back, why am I still waiting. I don't understand, a rich man like you, take this long to payback a loan. Why did you give a promissory note stating to return the money by January 17th, 2006? I have many questions that are very puzzling to answer. I have consulted different lawyers in Montreal and explained the situation and documents. As per the lawyers, they validated if you yourself is a lawyer at the " Bar association of Maryland and DC" your name is not registered. They validated the notary's name on the promissory note and the notary does not exist.

If your intention was to fraud me into giving you the money. That is a crime. Which you know very well the consequences.

Being a man your age, it is very unhealthy to fraud people financially. I assuming that you have fraud-ed others as well, if this is your occupation.

I hope you realize and with honesty return my money. You have caused great problems in my life. Am living off borrowed money presently because of you who doesn't have any descents to return my money.

As you say you have family and family comes first. If you really mean it. Return my money so I can make peace with my family and live normally.

Here is my bank information where the money can be wired.

| | |
| --- | --- |
| name: | Vijay Patel |
| bank name: | Td Canada Trust |
| Address: | 3131 Cote Vertu Ouest |
| | Ville St- Laurent, Quebec |
| | H4R - 1Y8 |
| | (514) 337-2772 |

| | |
| --- | --- |
| Institution # | 004 |
| Branch   # | 03611 |
| Account   # | 7120116 |
| ABA       # | 026009593 |
| Swist Code# | TDOMCATTTOR |
| Designation # | 8262 |

I hope to see the money in my account ASAP.

Thanks You,

Vijay Patel

# Vijay Patel

contact :
**(514) 917 - 0825**
**vijay123sonu@gmail.com**
**vijay123sonu@yahoo.ca**

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat                Web Search: [          ] [Go]

**Hotmail** ▬▬▬      **Today** | **Mail** | **Calendar** | **Contacts**          Options | Help

sjnhjacobs@msn.com

Free Newsletters

🔄 Reply | 🔄 Reply All | 🔄 Forward | ✖ Delete | 📇 Junk | 📁 Put in Folder ▾ | 🖨 Print View | 📇 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Wednesday, July 5, 2006 11:45 AM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| CC : | Dilip Patel <patel@videotron.ca> |
| Subject : | demand for my money |

⬆ | ⬇ | ✖ | 📁 Vijay-Dili... | 📇 Inbox

Mr Jacobs,

    I had spoke to Mr. Dilip and he quotes as per your conversation with him. The money is in the court who will make the decision on when where it will be disputed. A lawyer will be contacting Mr. Dilip to sign an affidavit for your protection against me. As per 911 the united states law has been stricter to threats.

    I can not wait this long to receive my own money. Mr. Jacobs, please a human being and think of other. I had given you the money, not the court. So, I want my money back from you. If you need Mr. Dilip and I to meet you somewhere, let us know, we'll be there.

    It's gone long enough. I need my money. Stop making excuse of the money being here and there. You already took me on a world tour of where the money is.

    At the beginning you told the money was with David Urem who is wiring the money, then weeks later you said it was in Toronto in Td bank in a holding company. Then you said it was with 2 young executive you who will be bring the money when they come to Montreal. Now, your saying it's in the court.

    Mr. Jacobs, please stop all this none-sense and just return my money.

    If you don't have the money, send me monthly payments which will be fee sable for me and you.

    As you said, your wife is sick, for her sake and honesty. Let's settle this issue and go on.

Thanks,
Vijay
(514) 334-4078

---

**All new Yahoo! Mail -**

Get a sneak peak at messages with a handy reading pane.

📧 | 📧 | 📧          ⬆ | ⬇ | ✖ | 📁 Vijay-Dili... | 📇 Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat                Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat      Web Search:    Go

**Hotmail**      Today | Mail | Calendar | Contacts      Options | Help

sjnhjacobs@msn.com      Free Newsletters

Reply | Reply All | Forward | X Delete | Junk | Put in Folder ▾ | Print View | Save Address

| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Tuesday, July 18, 2006 7:44 PM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | i want my money immediately |

Mr. Jacobs,

        I want my money immediately. All the meetings we've had. I have prove of conversations. I had feeling about not getting my money back so,
I had collected proof. I will let submit a copy to mr. Dilip.

Vijay

## *Vijay Patel*

**contact :**
**(514) 917 - 0825**
**vijay123sonu@gmail.com**
**vijay123sonu@yahoo.ca**

---

Make free worldwide PC-to-PC calls. Try the new **Yahoo! Canada Messenger with Voice**

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat      Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy



Play FOX Fantasy Football with MSN: Live scoring, fully customizable & completely free
The HTML graphics in this message have been displayed. [Edit Preferences - What's This?]

Note: forwarded message attached.

## *Vijay Patel*

**contact :**
**(514) 917 - 0825**
vijay123sonu@gmail.com
vijay123sonu@yahoo.ca

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

From: Gopika Patel <radhigopi_68@hotmail.com>
To: vijay123sonu@yahoo.ca
Sent: Monday, August 7, 2006 2:39 PM

http://www.lucky88.eigenstart.nl/ hehe hello.

Play FOX Fantasy Football with MSN: Live scoring, fully customizable & completely free



**Get the latest updates from MSN**

**MSN Home** | **My MSN** | **Hotmail** | **Search** | **Shopping** | **Money** | **People & Chat**                    Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat    Web Search:    Go

**MSN Hotmail**    Today | Mail | Calendar | Contacts    Options | Help

sjnhjacobs@msn.com    Free Newsletters

Reply | Reply All | Forward | Delete | Junk | Put in Folder ▾ | Print View | Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Wednesday, October 4, 2006 10:46 AM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | The Honest Man! |

Mr. Samuel K. Jacobs,

It's been over a year that we have met by Mr. Dilip. From day one, you have stated that you are a family man with wife, children and grand children. You are a military man and a man of your words. You state that you are a very wealthy man. You compliment yourself alot of being a caring and giving person no matter who it is. You state that FAMILY is a priority to you before anything else.

Well, Mr. Jacobs, I have a family as well. I have a wife and two children. Right now my family and I are in financial danger. As you know, I had lost my job, and sold my business. While all this occured, Mr. Dilip, You and I were in process of building up a business. You had stated that you will assist the business financially because you have wealth and will assist so you will get some tax relief. To assist with the tax input, I had introduced you to 2 people who have knowledge on tax and accounting side. You had repeated the same story about yourself and family to them.

You had told Mr. Dilip and I that there are "x" million dollars in taxes you owe to the government because of the cruede oil profit. If I assist you with some amount of money you will get tax relief. This tax document you had showed when we met in Detroit.

After months of phone calls from you asking for some money, Dilip and I repeated that we are no financial shape to give any money. You had even asked me told sell my restaurant to you for three time higher the price of what it is worth. When I accepted to sell the restaurant to you, you said, the business is too small and the government will not accept the transaction. After many other meetings, Dilip and I accepted to give you the sum of $35,000.00u.s. dollar in condition we get notarized document with the details of when the money will be returned. I had also told you that the MONEY I was LENDING YOU was BORROWED MONEY. I need the money back in 30 days. You accepted the situation. You then faxed me the notarized promisary note. I then wired $15,000.00us. The rest of the money I wired while you were with at the bank in Montreal. You witnessed me borrowed the money from my brother-in-law. My brother-in-law then dropped you back at the hotel. So, the $20,000.00us was wired to your account while you were with me. You then said, next day you will call your wife ( Nancy M. Heckerman) who will wire the $45,000.00us into your account. You had left Montreal, no money came into my account as of today.

Repeated calls to you asking for where my money is and you had said there some complication due to the new laws after 911, but will be there shortly. I had to cancel my trip to India because of. My wife and kids went to India to perform a religious ceremony for my younger daughter which I had to be present for. I was not able to go due to no money available because I had given it to you. I repeatedly calling to get some money just for the trip but you didn't answer my calls. When you did answer my call, you called " a son of a bitch, I don't care about you and you family. I don't care if you die because you are not priority" and you hung up. This upset me and I send you and agressive email. Now, with this email you are accusing of me being a terrorist.

Now, your excuse is that because I am a terrorist, the money is in the US court of the trust and it will be released after some court date. I had called the Washington D.C. court of any money there or any per named Samuel K. Jacobs filing a case against me. They had no information. You had also sent a fax to a lawyer I had contacted and you acused of him of being a terrorist.

Mr. Jacobs, listen, I don't know why you don't want to pay me MY MONEY. Maybe you scammed me and it comes to giving you the money, maybe you don't have any money to give or other excuses. Since I have given you the money, I've been living on borrowed money. Since then, I have borrowed $20,000.00cnd. The people I borrowed from are calling for their money. When they call me, I call you.

I never borrowed money from anyone before. First time, I am in this situation. I just want my money back so I can pay people back and live in peace. I don't want to call you, but if people calling me for thier money I will call you. I know it's frustraiting, but I have no choice.

If we can make some compromise of a payment plan, I can do the same with the people I owe to.

So, please come to a conclusion and clear up this mess so, I won't be bothered and I won't bother you..

Thanks,
Vijay

## Vijay Patel

contact :
(514) 917 - 0825
vijay123sonu@gmail.com
vijay123sonu@yahoo.ca

---

Make free worldwide PC-to-PC calls. Try the new Yahoo! Canada Messenger with Voice

Get the latest updates from MSN

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat    Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

msn Hotmail █████    Today | Mail | Calendar | Contacts    Options | Help

sjnhjacobs@msn.com    Free Newsletters

🐦 Reply | 🐦 Reply All | 🐦 Forward | ✖ Delete | 🗐 Junk | 🗂 Put in Folder ▾ | 🖨 Print View | 🖫 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Friday, November 10, 2006 9:30 AM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| CC : | Dilip Patel <patel@videotron.ca> |
| Subject : | Leaving for Washington |

◆ | ◆ | ✖ | 🗐 Vijay-Dili... | 🗐 Inbox

Hello Mr. Jacobs,
          As per our conversations, it seemed like you have very little time to meet with Mr. Dilip. I have spoken to my wife and she has made arrangements to take couple of days off from work to take care of my daughter. I will be leaving to come to Washington on Sunday and I will be staying with a friend if Washinton DC. My friend works for the press as a journalist for the Canadian government covering US Government news. I will contact from his house and give the contact numbers. If you wish to meet in the town you live, please let me know I will drive to the location you want me to meet.
     You had told on the phone that you are leaving for Germany and coming back on Sunday. So, on Monday we can meet finalize my financial situation.
     I had repeatedly told you that, My financial situation is very weak. This situation is effecting my family as well. You have repeatedly said family is first priority and I can't risk them not having a roof and food under them.
     I respect you and your family for what the situation you are in, medically or financially, but you have to understand my side as well. If I had extra money available for me, then I don't need to repeatedly contact you. It's because of the weak financial position, I have to keep calling you.
     As you know, I don't have a job presently and my government insurance has completed as well. There is only one income coming in which is of my wife totaling $1700.00 per month. I can't even pay my mortgage with that.
     I even asked you on the phone, if you anyone in Montreal who can employ me, that will help with my cash flow.
     For imediate financial security, I like to settle with the money owed to me.
If you are not available, maybe I can meet up with Mr. Milan.
     I don't want you to feel surprised when am there, so am sending you an email. I have discussed with Mr. Dilip that I will be going to see you and he is OK with it.

You can reach at these numbers
(514) 231-2995
(514) 562-9233 == Mr. Dilip's Cellular
I will give you the contact number in Washington when I reach there.

See you soon,
Vijay Patel
(514) 562-

## *Vijay Patel*

**contact :**
**(514) 917 - 0825**
vijay123sonu@gmail.com
vijay123sonu@yahoo.ca

---

The best gets better. See why everyone is raving about the **All-new Yahoo! Mail.**

🐦 | 🐦 | 🐦                                                    ◆ | ◆ | ✖ | 🗐 Vijay-Dili... | 🗐 Inbox

**Get the latest updates from MSN**

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

**msn❤ Hotmail** ██████    Today | Mail | Calendar | Contacts                    Options | Help

Free Newsletters

sjnhjacobs@msn.com

🕮 Reply | 🕮 Reply All | 🕮 Forward | ✖ Delete | 🕮 Junk | 🕮 Put in Folder ▾ | 🕮 Print View | 🕮 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Wednesday, November 15, 2006 9:00 AM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | In Town |

◀ | ▾ | ✖ | 🕮 Vijay-Dili... | 🕮 Inbox

Hello Mr. Jacobs,

          I was in your town from Sunday-Tuesday. I tried contacting you multiple times but no answer. Because Monday was a Holiday, I went to your office but it was closed.

The bank tried to withdraw my mortgage from my account for the second attempt, they were unable to because i don't have money in the account. As I told you, there is no money coming for me. The government insurance is finished as well. When I reached Montreal Tuesday evening, I got call from the bank and they want thier money. I have told them, by Friday I will give a certified cheque. I don't where this money is going to come from. Mr. Jacobs, if you think I'm being dishonest, you can call the bank yourself find out the details. If you want I can send you the details of the bank for inquiry.
Please. I desprately need the money or at least for the mortgage payment.
HELP ME OUT.
Here is my bank information. Please wire me some money there.

Here is my bank information where the money can be wired.

| | |
|---|---|
| name: | Vijay Patel |
| bank name: | Td Canada Trust |
| Address: | 3131 Cote Vertu Ouest |
| | Ville St- Laurent, Quebec |
| | H4R - 1Y8 |
| | (514) 337-2772 |

| | |
|---|---|
| Institution # | 004 |
| Branch # | 03611 |
| Account # | 7120116 |
| ABA # | 026009593 |
| Swist Code# | TDOMCATTTOR |
| Designation # | 8262 |

## *Vijay Patel*

*contact :*
**(514) 917 - 0825**
vijay123sonu@gmail.com
vijay123sonu@yahoo.ca

---

Now you can have a huge leap forward in email: **get the new Yahoo! Mail.**

🕮 | 🕮 | 🕮                    ◀ | ▾ | ✖ | 🕮 Vijay-Dili... | 🕮 Inbox

**Get the latest updates from MSN**

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat                    Web Search:                    Go

**msn Hotmail**                    Today | Mail | Calendar | Contacts                    Options | Help

Free Newsletters

sjnhjacobs@msn.com

Reply | Reply All | Forward | Delete | Junk | Put in Folder ▼ | Print View | Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Monday, January 8, 2007 11:21 AM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | urgent request |

▲ | ▼ | X | 📁 Vijay-Dili... | 📥 Inbox

Hello Mr. Jacobs,
        Here is what I owe so far to the creditor. I don't know why you can not understand my situation. I constantly repeat myself requesting you to pay off my money. Here is what I owe.

TD Canda Trust Mortgage =>

October === November === December === January ===
1,751.00        1,751.00        1,751.00        1,751.00 === $7,004.00 mortgage

VISA CreditCard === $7,000.00
Cellular from April 2005 ===$1,200.00
Personal loans === $17,000.00
----------------------------------------------------------------------------------------
Total Depth of = $32,204.00

The personal loan that I owe, I had borrowed that while you were with me from my brother-in-law. So, please take my financial situation seriously and return my money as soon as possible.

I feel very bad calling you constantly, but I have people calling for thier money. Presently, I don't have a job and the government assistance subsidy is complete as well.
Please, take in consideration my families welfare and return the money to me.

Thank you,
Vijay

_____

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

▲ | ▼ | X | 📁 Vijay-Dili... | 📥 Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat                    Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat          Web Search: [          ] [Go]

**msn Hotmail** [            ]    Today | Mail | Calendar | Contacts          Options | Help

sjnhjacobs@msn.com

Free Newsletters

🔁 Reply | 🔁 Reply All | 📨 Forward | ✖ Delete | 🗑 Junk | 📁 Put in Folder ▾ | 🖨 Print View | 📷 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@gmail.com> |
| Sent : | Wednesday, January 24, 2007 8:50 AM |
| To : | sjnhjacobs@msn.com |
| Subject : | info verification |

◆ | ◆ | ✖ | 📷 Vijay-Dili... | 📥 Inbox

| Name | City, State | Age | Relatives | People Report |
|---|---|---|---|---|
| Nancy Marilyn Heckerman | Casselberry, FL | 62 | William H Baker | View Details |
| Associated Names: | Gaithersburg, MD | | K S Ramachandra | |
| Nancy Baker | Potomac, MD | | Kal Ramachandra | |
| Nancy H Ramachandra | Winter Park, FL | | Gregory Allen Ramachandra | |
| | | | Elizabeth J Ramachandra | |
| | | | Kenneth M Baker | |
| | | | K S Ramachandra | |
| | | | Samuel Ramachandra | |

--
Vijay Patel
(514) 334-4078

🖨 | 📷 | 📷          ◆ | ◆ | ✖ | 📷 Vijay-Dili... | 📥 Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat          Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy





**Hotmail** [████████]     Today | Mail | Calendar | Contacts          Options | Help

sjnhjacobs@msn.com          Free Newsletters

🖂 Reply | 🖂 Reply All | 🖅 Forward | ✗ Delete | 🗑 Junk | 📁 Put in Folder ▾ | 🖨 Print View | 💾 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Tuesday, February 6, 2007 1:05 PM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| Subject : | ?????????? |

Samuel K. Jacobs,

It has been over a year that I have not received the money I gave loan you. As per your legal agreement, the money was supposed to be given back to by January 21st, 2006 with interest of $10,000.00 us, totalling the am out as $45,000.00us.

I call you everyday requesting for my money, but you have some kind of excuse that the money is coming or you don't respond. I have sent you numerous emails, but no response. Except for one email that you have considered as a threat to you. You had fax, lawyer, some documents with accusation of being involved in the terrorist activities.

After that you had said there had been misunderstanding and Mr. Dilip will sign some document so I can receive my and you will not be threatened. The story goes on...and ...on..and ....on ..........

Listen, what I want is my money. I had told you that, I have great financial difficulties and need to clear the depths. Creditors call my home everyday wanting their money. Please, let finalize what that has to be done to get my money and I need it done ASAP.

thank you,

# *Vijay Patel*

**contact :**
**(514) 334-4078**
**vijay123sonu@yahoo.ca**
**vijay123sonu@gmail.com**

---

**All new Yahoo! Mail**

---

Get news delivered. Enjoy RSS feeds right on your Mail page.

🖂 | 🖂 | 🖂          🖂 | 🖂 | ✗ | 📷 Vijay-Dili... | 📥 Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat          Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat                Web Search: [            ] [Go]

*msn* **Hotmail**  ▇▇▇      Today | Mail | Calendar | Contacts                    Options | Help

sjnhjacobs@msn.com                                                                    Free Newsletters

🖫 Reply | 🖫 Reply All | 🖫 Forward | ✖ Delete | 🗙 Junk | 🖫 Put in Folder ▾ | 🖫 Print View | 🖫 Save Address

From :    Vijay Patel <vijay123sonu@yahoo.ca>                              ◆ | ▼ | ✖ | 🖫 Vijay-Dill... | 🖫 Inbox
Sent :    Wednesday, February 28, 2007 3:21 PM
To :      samuel k jacobs <sjnhjacobs@msn.com>
Subject :   your location



Web    Images    Groups    News    **Maps**    more »

[ 13620 canal vista potomac,md 20854 ]    [Search Maps]

Search the map  Find businesses  Get directions

Maps 🖶 Print 📧 Email 🔗 Link to this page

**Google** Maps Canada    13620 Canal Vista Ct
Address Potomac, MD 20854
USA

▼



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat    Web Search:    Go

**Hotmail**    Today | Mail | Calendar | Contacts    Options | Help    Free Newsletters

sjnhjacobs@msn.com

📧 Reply | 📧 Reply All | 📧 Forward | ✕ Delete | 📁 Junk | 📂 Put in Folder ▾ | 🖨 Print View | 💾 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Sunday, March 4, 2007 5:48 PM |
| To : | Aigleza Zahid <aigleza@yahoo.ca>, angeli patel <angeli_patel@hotmail.com>, Anisha Patel <anishapatel2005@yahoo.ca>, Ansuya Patel <ansuya.patel@standardlife.ca>, Bashir Patel <bashirpatel@hotmail.com>, Bhavesh patel <peterp@axislighting.com>, Bhavna Patel <bhavna.patel@sitel.com>, Chetna patel <karen_cp_1208@hotmail.com>, Daniel Bourgon <danielbourgon@yahoo.ca>, Dharmistha Patel <dharmistha@gmail.com>, Dilip Patel <patel@videotron.ca>, Dinesh Surti <ontime@bom5.vsnl.net.in>, Gopika Patel <bored_lil_duck@hotmail.com>, hemal patel <hemal_patel@sympatico.ca>, hemant patel <hamentpatel@hotmail.com>, Himansu Patel <himansu19@fidohlptop.ca>, hitesh patel <hitesh.patel@sanmina-sci.com>, hitesh patel <hitesh1612003@yahoo.com>, Hitesh Patel <rambo.hp@gmail.com>, Jagu Patel <jackie.patel@standardlife.ca>, jagu jackie patel <jackiepatel@b2b2c.ca>, Jaswinder Marjara <jazz@canindia.com>, Jimmy vespoli <jvespoli@gmail.com>, Jon Wong <bjwong72@hotmail.com>, Jugu patel <deep2deep@sympatico.ca>, Jyoti Patel <patelj@ca.ibm.com>, kailash patel <kailash@videotron.ca>, Ketan Patel <ketanpatel21@hotmail.com>, Ketan Patel <kpatel816@gmail.com>, Manishaa Patel <patel_manishaa@yahoo.ca>, Manishaa Patel <manishaa.patel@globeunion.com>, Muk England <mukey123@hotmail.com>, Mukesh Patel <mukesh@counselpartners.com>, n_kantawala@yahoo.com, naupaul Patel <naupaul@stickygrafix.com>, Nayna Patel <nayna.patel@advantechamt.com>, Radhika Patel <radhigopi_68@hotmail.com>, Radhika Patel <angel5446@hotmail.com>, Rajesh Patel <rajeshp@pcmail.com>, Rajesh Patel <raj_001ca@hotmail.com>, reesha <reesha05@hotmail.com>, samuel k jacobs <sjnhjacobs@msn.com>, Sanjay Patel <sanj420@sympatico.ca>, Sanjay Patel <sanjay@myparadise.biz>, Satyavati Patel <patelsonuk@yahoo.com>, seema srivastav <seema_dtoys@yahoo.com>, Shital <shital_patel@sympatico.ca>, Shush Shush75 <shush75@hotmail.com>, SNEHA PATEL <sneha@remax-2001.qc.ca>, sonal patel <patelsonuk@yahoo.com>, Sunny Patel <ill_dude1089@hotmail.com>, Suroj Datta <sdatta@jetairways.com>, Vandana Patel <vand@nortel.com>, Vanni Lad <futuremt@hotmail.com>, Vijay Patel <vijpatelhartco@yahoo.com>, Vimal Patel <vp4@hotmail.com>, Vinod Talwar <vinodtalwarfilm@yahoo.com>, vrinda Patel <vrinda_vrinda@hotmail.com>, Yogi Patel <patel.yogesh@sympatico.ca>, Yogi Patel <yogesh@sympatico.ca> |



# Rang barse: A Holi Special

# Hap

# holi to everyone!

### _Vijay Patel_

**contact :**
**(514) 334-4078**
**vijay123sonu@yahoo.ca**
**vijay123sonu@gmail.com**

The best gets better. See why everyone is raving about the All-new Yahoo! Mail.

📧 | 📧 | 📧    📧 Vijay-Dill... | 📧 Inbox

Get the latest updates from MSN

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat    Feedback | Help

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

MSN Hotmail - Message                                                                    Page 1 of 2

**MSN Home** | **My MSN** | **Hotmail** | **Shopping** | **Money** | **People & Chat**                Web Search: [          ] [Go]

*msn* ♥ **Hotmail**  ▬▬▬▬▬     **Today** | **Mail** | **Calendar** | **Contacts**        Options | Help

sjnhjacobs@msn.com                                                                      Free Newsletters

🖳 Reply | 🖳 Reply All | 📧 Forward | ✖ Delete | 📧 Junk | 📁 Put in Folder ▼ | 🖨 Print View | 🖫 Save Address

| | |
|---|---|
| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Tuesday, January 23, 2007 9:00 AM |

◀ | ▼ | ✖ | ▶ | 🗋 Vijay-Dili... | 📭 Inbox

To :

Aigleza Zahid <aigleza@yahoo.ca>, Alan Fishbein <afishbein@fishbeinpa.com>, Angela Law
<angela.law@startec.com>, angeli patel <angeli_patel@hotmail.com>, Anisha Patel
<anishapatel2005@yahoo.com>, Ansuya Patel <ansuya.patel@standardlife.ca>, aries
<aries_31@yahoo.com>, Bashir Patel <bashirpatel@hotmail.com>, Bhavesh patel
<peterp@axislighting.com>, Bhavna Patel <bhavna.patel@sitel.com>, blake fleming
<bflems25@hotmail.com>, Chetna patel <karen_cp_1208@hotmail.com>, Daniel Bourgon
<danielbourgon@yahoo.ca>, Dardy <dardy2005@hotmail.com>, Davina Bee
<b@tatianalondono.com>, Dharmistha Patel <dharmistha@gmail.com>, Dilip Patel
<patel@videotron.ca>, Gaoussou Savane <savair@mail.com>, gaoussou savane
<gaoussousavane@hotmail.com>, gujrat samaj <gslist@gujaratisamaj.ca>, hemal patel
<hemal_patel@sympatico.ca>, hemant patel <hamentpatel@hotmail.com>, HENRY AU-
YEUNG <hay1628@yahoo.ca>, Himansu Patel <himansu19@fidohiptop.ca>, hitesh patel
<hitesh.patel@sanmina-sci.com>, hitesh patel <hitesh1612003@yahoo.com>, Jagu Patel
<jackie.patel@standardlife.ca>, jagu jackie patel <jackiepatel@b2b2c.ca>, Jerusalem Girma
<jeru.girma@gmail.com>, jimmy vespoli <jvespoli@gmail.com>, Jugu patel
<deep2deep@sympatico.ca>, Jyoti Patel <patelj@ca.ibm.com>, kailash patel
<kailash@videotron.ca>, Ketan Patel <ketanpatel21@hotmail.com>, Ketan Patel
<kpatel816@gmail.com>, Manishaa Patel <patel_manishaa@yahoo.ca>, Manishaa Patel
<manishaa.patel@globeunion.com>, Milenka Radman <mradman@quantum.ca>, Missy's Mail
<missyr72@prodigy.net>, Muk England <mukey123@hotmail.com>, Mukesh Patel
<mukesh@counselpartners.com>, n_kantawala@yahoo.com, naupaul Patel
<naupaul@stickygrafix.com>, Nayna Patel <nayna.patel@advantechamt.com>, Radhika Patel
<radhigopi_68@hotmail.com>, Rajesh Patel <rajeshp@pcmail.com>, reesha
<reesha05@hotmail.com>, samuel k jacobs <sjnhjacobs@msn.com>, Sanjay Patel
<sanj420@sympatico.ca>, Sanjay Patel <sanjay@myparadise.biz>, Satyavati Patel
<patel_satyavati@hotmail.com>, Shital <shital_patel@sympatico.ca>, Shush Shush75
<shush75@hotmail.com>, Shyamala Cowsik <hicomind@hciottawa.ca>, SNEHA PATEL
<sneha@remax-2001.qc.ca>, sonal patel <patelsonuk@yahoo.com>, stephane boyer
<boyer@ca.ibm.com>, Sunny Patel <lil_dude1089@hotmail.com>, Suroj Datta
<sdatta@jetairways.com>, taurusgirl66@hotmail.com, Vandana Patel <vand@nortel.com>,
Vanni Lad <futuremt@hotmail.com>, Vijay Patel <vjpatelhartco@yahoo.com>, Vimal Patel
<vp4@hotmail.com>, Vinod Talwar <vinodtalwarfilm@yahoo.com>, vrinda Patel
<patel_vrinda@hotmail.com>, Yogi Patel <patel.yogesh@gmail.com>, Yogi Patel
<yogesh@sympatico.ca>

Subject :    Fwd: FW: Diwali Stamp Petition

*Vijay Patel <vijay123sonu@gmail.com>* wrote:

> Date: Tue, 23 Jan 2007 08:48:49 -0500
> From: "Vijay Patel" <vijay123sonu@gmail.com>
> To: "Vijay Patel" <vijay123sonu@yahoo.ca>
> Subject: Fwd: FW: Diwali Stamp Petition

> Diwali is an important South Asian festival, and USPS (US Postal Service) is considering issuing stamps for this occasion.

> However, <u>USPS needs 500,000 signatures</u> to have a stamp release, and <u>so far ~ 386,000 people have signed the petition.</u>

> Please go to the site below and support the release of the Diwali stamp.

> http://www.petitiononline.com/diwali03

> So, let's get the Diwali stamp issued!

> **Your anticipated participation is greatly appreciated and please pass this along..... Once the stamp is issued in the US, Post Canada can also be approached to do the same.**

> --
> Vijay Patel

(514) 334-4078

# *Vijay Patel*

*contact :*
**(514) 334-4078**
**vijay123sonu@yahoo.ca**
**vijay123sonu@gmail.com**

All new Yahoo! Mail -

Get a sneak peak at messages with a handy reading pane.

Get the latest updates from MSN

**MSN Home** | **My MSN** | **Hotmail** | **Search** | **Shopping** | **Money** | **People & Chat**    Feedback | Help

© 2007 Microsoft TERMS OF USE   Advertise   TRUSTe Approved Privacy Statement   GetNetWise   Anti-Spam Policy

MSN Hotmail - Message

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat          Web Search:          Go

**msn Hotmail**          Today | Mail | Calendar | Contacts          Options | Help

sjnhjacobs@msn.com          Free Newsletters

🔁 Reply | Reply All | 🔁 Forward | ✖ Delete | 🗑 Junk | 📁 Put in Folder ▼ | 🖨 Print View | 💾 Save Address

| From : | Vijay Patel <vijay123sonu@yahoo.ca> |
| Sent : | Friday, May 11, 2007 11:56 PM |
| To : | samuel k jacobs <sjnhjacobs@msn.com> |
| CC : | Dilip Patel <patel@videotron.ca> |
| Subject : | your request |

Hello Mr.Jacobs,
            As per your request, here is what the situation is.

After sending you the money and you promising to return it within 30 days and did not get my money back with in 30 days, I had decided to contact JetAirways.
            Reason for this decision was I had to go to India myself for religious family event and was waiting for th money to purchase my ticket. I never got my money nor I was able to go to India. At the same time, my younger daughter who was in India with my wife fell very ill and was hospitalized. Now, I really needed to go, but without a even a cent in the bank I couldn't afford to purchase a ticket.
            With these reasons and rage in me, I had decide to call JetAir ways. As per the internet, your wife Nancy M. Heckerman (Ramachadra), was having issue with JetAirways. In the internet article, your name was mentioned.
I had called Jetairways by getting the number form the internet. When I called, I spoke to receptionist, who transfered me to someone ( can't recall the name of person), I asked him who can I talk to get some information on Samuel K. Jacobs or Nancy M. Heckerman. This person had given me S.Dutta's number.
I had called his number (on the date of Sunday February 19th, 2006), and asked if he new the name Nancy M. Heckerman or Samuel K. Jacobs. He advised that he is unable to dicuss any informationon that matter. I pleaded with his to give me any other contact information about you or even an address to reach you. S.Dutta advised he can't help me, due to it being a personal matter and he hung up. I had never since heard from S.Dutta or Jetairways again.
            To presure you in giving me money, I kept mentioning that thay have contacted me and will to meet with. I had 1 conversation which didn't help me, and terms of receiving money from them was completely out of the question, because they didn't even want to listen to me.
            So, this is the only time I had contact with JetAirways or S.Dutta.
To confirm this was the only contact I had with them, you can verify my phone records. You can call my long distance company and they will provide you with the record.
            I work in the travel ageny part time and I hav booked many passenger in JetAirway from Montreal to Mumbai.
            I hope by this week I can get my money back and look forward to the future.

Vijay


*Vijay Patel*

contact :
**(514) 334-4078**
vijay123sonu@yahoo.ca
vijay123sonu@gmail.com

_____

Ask a question on any topic and get answers from real people. **Go to Yahoo! Answers.**

🔁 | 🔁 | 🔁                                                  ▲ | ▼ | ✖ | 📥 Inbox

**Get the latest updates from MSN**

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat          Feedback | Help
© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

# AFFIDAVIT

I declare under penalty of perjury, that to the best of my knowledge, the foregoing is true and correct. Executed on <u>February 13, 2007</u> (Date).

<u>SAMUEL K. JACOBS</u>   (Print Name), and

<u>// SAMUEL K. JACOBS</u> (Signature).

That Samuel K. Jacobs, being first duly sworn, deposes and says:

I.

In the spring of 2006 I met a man in Canada by the names  of Dilip Patel and he introduced me to a man named Vijay Patel.  Both of the men claimed to have airline experience, and indeed, I did check the references of Dilip Patel through his employer, Northwest Airlines. My contact in Northwest Airlines gave Dilip Patel a good reference but stated that Vijay Patel was working for a computer company (IBM) that had a contract with Air Canada. Vijay Patel stated that he was employed by them. Later, he stated that he lost his job with them but did not state why.

II.

The two men, Dilip Patel and Vijay Patel, stated that they wanted to start a charter airline service between Canada and India.  I stated to Vijay Patel that the published guide lines to start an airline are established and the format has to be followed in order to meet the structured criteria according to  the Canadian Civil Aviation authorities. This includes the initial paper work for a charter service.

III.

Vijay Patel stated that he had the backing of a prince from Dubai and already had $179,000.00(USD) to start the  initial work for the charter service.  I

'EXHIBIT D'   USDC/DC
Jacobs v. Friedman

stated that it would cost them approximately $250,000.00 USD, *or more,* to use a reputable firm in New York to raise the capital and initiate the Private Placement Program pursuant to the S.E.C. (Securities Exchange Commission) Regulations of 1933. I gave Dilip Patel and Vijay Patel the name of the securities firm and told the two men that they could validate the credentials of the firm and its representatives before we proceeded.

IV.

Some of the limited partners who would be considering the investment were known to Jacobs and according to the law all disclosures had to be made to the potential investors so that they could be review the partnership agreements and obtain proper advise from their accountants, attorneys, and tax advisors in order to decide whether the investment was safe.

V.

Dilip Patel and Vijay Patel agreed that I should select the firm in New York and carry on with the work. The project was taken to New York upon Vijay Patel's approval and he stated that he would advise Dilip Patel of his statement of agreement. I authorized the attorney to approach the investment bankers to start the work to raise the capital for the start of the airline.

VI.

However, since the ownership of an airline in Canada is the same as the United States, I decided that I should get a substantial amount of fee after the completion of the transaction for arranging to put the project together. I told this to Vijay Patel and submitted the agreement to Vijay Patel for $250,000.00USD for the work and he through the document right back at me and stated that he was

*"very rich and did not want to be bothered."* Vijay Patel further stated that he would pay when the work was completed.

VII.

I stated that perhaps Vijay Patel and Dilip Patel should give the payment directly to the firm in New York and leave me out of the transaction if he did not want to address this billing immediately. Vijay Patel said no and that he wanted me to handle the business initiation process since he did not know how to handle the process in New York.

VIII.

I, personally in the past, have started several companies using this firm which are totally unassociated with Dilip Patel and Vijay Patel. Any expenses that I have incurred concerning this airline initiated by these two men have been made because of the time that I have spent making contacts with various legal entities and to find qualified personal such as a Managing Director, Director of Operations, Director of Maintenance, Director of Marketing, and Chief Financial Officer in order to meet the Canadian Civil Aviation authorities requirements and approval to start a new airline.

IX.

I insisted that there should be some valuable consideration given to give credence to securities firm that the project was more than just a whim of words. Vijay Patel did send me $35,000.00USD to start the operation. I gave him a note stating that I had received the money. Since people change their minds about these situations, I gave him a Sight Draft for $45,000.00USD. I also gave him a promissory note that I shall return the money within a certain amount of time if he should change his mind. The following day within that time frame he stated

Page 3 of 11

that he would want $45,00.00USD instead of $35,000.00USD that he had sent to me. He stated that he needed the extra $10,000.00 for "personal expenses."

### X.

The following day when I was in Canada, he returned the original Promissory Note and the Sight Draft. He further stated that he wanted $100,000.00USD instead of the $45,000.00USD and that it should be wired immediately. He stated that he was going to be laid off form his present job and that he needed these extra funds to maintain his family expenses until the new charter airline company was set up and he could draw a salary.

### XI.

Later, when I found out that he was not in the financial position that he had stated, Vijay Patel gave the note back to me and yet he refused to take the payment in the bank. Vijay Patel then stated that he now wanted $100,000.00 back to him instead of the $35,000.00 that he gave to me to start the business proceedings. I stated to both men that the money had already been spent on expenses to start this airline, and this was a fine time to tell me that neither Vijay Patel or Dilip Patel had the adequate source of funds to start an airline operation. Although a statement was made to me that the Dubai prince is a reputable business person, he delayed participating in this project as heavily as Vijay Patel and Dilip Patel had intimated when he was contacted and was asked to pay the start up fees for the airline charter directly to the firm in New York.

### XII.

I told Vijay Patel that the $35,000.00 had already been applied towards the expenses to start the airline operation, and by that point (fall of 2006) there was an account balance of approximately $156,000.00 in fees already accumulated

Page 4 of 11

with the New York attorneys and investment bankers. The work initiated for this airline could not be stopped in time from this heavy amount of money since it was several months later when the true financial condition of Vijay Patell was revealed to me by an work associate of Dilip Patel from the Ivory Coast who wanted to operate an airline charter service from Brazil to Africa. This Ivory Coast man made statements about finances which were in conflict with those of Vijay Patel and Dilip Patel. As of this Affidavit, the account balance for the New York firm is approximately $260,000.00.

XIII.

Although Dilip Patel had a background clearance to be on the Board of Directors or hold a top position in an airline, Vijay Patel later revealed that he had recently been put in jail for three days for beating up his wife. Dilip Patel has recently stated that Vijay Patel was also arrested again for beating his wife and that she had come to the home of Dilip Patel for refuge.

XIV.

After I learned these facts, I asked Dilip Patel why he had not told me about Vijay Patel's problems at the beginning since no one with a record of incarceration such as this can be on the Board of Directors or hold one of the top titles in any airline in Canada or the United States. The security clearances for the two countries are quite rigid. Dilip Patel works for an American airline and he knows this to be true. Dilip Patel apologized for withholding this information and stated that he did not want Vijay Patel to be part of the new Airline.

XV.

I am  citing these soap opera like scenarios to confirm that when someone like Vijay Patel verbally and in writing threatens my life and lives of my family members, my business associates and their families members,  the subject should not be taken lightly since he is prone to violence against even his own family. Also, Vijay Patel entered Canada after leaving Texas, and the reason for his sudden departure is not quite clear to me.

XVI.

**When I was in Canada Vijay Patel introduced me to "one of his best friends" who claims to be Muslim. They both  threatened in front of me to set off bombs in both Canada and the United States. Later, this friend of Vijay Patel's  stated to me on the phone that he hates both the United States and Canada and that the U.S. deserved what happened on 9/11. Both Vijay Patel and his friend stated that they could blow up Detroit or Montreal with very little effort. His friend stated that he could get the assistance of some of the employees that work for Jet Airways of India to help him set off the bombs.**

XVII.

After I learned these facts, I asked Dilip Patel why he had not told me about Vijay Patel's problems at the beginning  since no one with a record of incarceration such as this can be on the Board of Directors or hold one of the top titles in any airline in Canada or the United States. TheAfter I learned these facts, I asked Dilip Patel why he had not told me about Vijay Patel's problems at the beginning  since no one with a record of incarceration such as this can be on the Board of Directors or hold one of the top titles in any airline in Canada or the United

States. The security clearances for the two countries are quite rigid. Dilip Patel works for an American airline and he knows this to be true. Dilip Patel apologized for withholding this information and stated that he did not want Vijay Patel to be part of the new Airline.

## XVIII.

As of this Affidavit I am still in contact with Dilip Patel and have asked him to meet me in New York at the offices of the attorneys and other professionals to discuss this problem and how to resolve it. He stated that he wanted an attorney with him to protect his rights which is acceptable or he would not attend the meeting. I agreed for this meeting only, and he then stated that he wanted me to pay for his attorney's fees after these two men had run up this enormous debt for this securities company.

## XIX.

At this point, I see that I am left holding the bill for the debts incurred because of these two men and I will file in a United States District Court to recoup my losses for all of my time spent on this project as $35,000.00 does not begin to justify all of my expenses. And, I will no doubt be sued by the firm in New York if the bill is not paid for Vijay Patel and Dilip Patel's airline startup expenses.

## XX.

The securities firm in New York proceeded on my word that these two men were legitimate business professionals. If this bill is left on my shoulders, it will severely damage and jeopardize my ability to conduct any future business with these professionals who have trusted me in this proceeding because of my past associations with them. At this point these Vijay Patel and Dilip Patel owe these

firms $262,000.00USD and they owe me another $42,300.00 for my personal expenses for the hours that I spent on this project.

### XXI.

Vijay Patel keeps stating that he must repay the $35,000.00 and yet at the beginning he stated that he was wealthy enough to back the entire airline venture. Why would he want the $35,000.00 back if he had already committed to millions of dollars to fund an airline? The numbers and statements were not logical. Finally, at 6:25 P.M. on January 16, 2007, Dilip Patel stated on the telephone to me that he would notify Jet Airways India if I gave the $35,000.00 back to Vijay Patel. Why would this $35,000.00 be of any concern to Jet Airways of India if it had not supplied the funds for what has turned out to be an apparent scam.?

### XXII.

**Yesterday Vijay Patel stated that he was in control of Jet Airways and if he released them that they would "destroy me permanently." He stated that Jet Airways of India was sending him e-mails with information about me so that he could attack me. Most of the information is bogus with people on it that are of no relation to me.**

### XXIII.

But today Dilip Patel stated that neither of them was in contact with Jet Airways of India. I am attaching copies of Vijay Patel's e-mails which reveal that he has been in contact with them and forwards copies of all of his e-mails to sdatta@jetairways.com. (See attachments).

### XXIV.

Vijay Patel stated that he was in contact with the Department of Justice in Washington, D. C. and all sorts of other Government agencies, including Interpol,

and he was telling them to put me on all sorts of "lists" as a criminal to stop me from traveling or conducting any business. From what I understand, only Government law enforcement agencies can put individuals on their lists. For six months he has been threatening on the telephone to send his contacts that he knows in Maryland to come to my doorstep and that I could be injured or humiliated.

### XXV.

**He has called at least two people and left messages impersonating officers of the Royal Canadian Mounted Police named "SANDY JOHNSON" and "MARVIN CROSBY." The numbers that these two "Mounties" can be reached at in Canada is not a land line but a calling card using a sim telephone number.**

### XXVI.

However, although I thought that this was a civil matter, it has become apparent that the two men had set up this fraudulent airline business as a means to find out about my domestic and international commerce ventures and to sell the information to those that would harm not only my family and myself but the United States and Canada as well by conspiring with this Al Qaeda airline named Jet Airways of India.

### XXVII.

Vijay Patel is calling and threatening and harassing members of my family and other business associates who have never met either of these men and have nothing to do with these airline arrangements. There are also threatening and harassing calls coming from India and Canada to business associates, friends, and family members who do not identify themselves but nonetheless threaten

these people with comments like: *"I know you have children and you can consider this call a threat to them."* Attached are e-mails that Vijay Patel has written e-mails to me which include threats of violence and bodily harm.

## XXVIII.

One of Vijay Patel's associates stated to me on the phone that he hates both the United States and Canada and that the U.S. deserved what happened on 9/11. He stated that he could blow up Detroit or Montreal with very little effort.

## XXIX.

This information is important because my wife owns Jet Airways, Inc., and the corporation holds the U.S. trademark for this name. She has filed responses against a "Petition to Cancel" for that trademark which was filed by Jet Airways India in the United States Patent and Trademark Office in Alexandria, Virginia. When preparing for this trademark case she discovered that Jet Airways India (a.k.a. as "Jet Enterprises Pvt. Ltd" in the United States) *is an Al Qaeda entity* directly financed by the Al Qaeda terrorist Dawood Ibrahim, (a.k.a. Sheikh Dawood Hassan, a.k.a. Dawood Ebrahim), India's Osama Bin Laden,[1] and the United States has designated Ibrahim as a 'Specially Designated Global Terrorist' under Executive Order 13224.[2]

## XXX.

Vijay Patel has revealed in e-mails to me that he has visited with representatives of Jet Airways India in Canada concerning his relationship with me. He also sends copies of those e-mails to: sdatta@jetairways.com in India. This

---

[1] See 'Exhibit A': "Pakistan after India's 'Osama', too," by Siddharth Srivastava, New Delhi-based journalist, *Asia Times Online Ltd.*, 2004.
[2] See 'Exhibit B1': "U.S. DESIGNATES DAWOOD IBRAHIM AS TERRORIST SUPPORTER," FROM THE OFFICE OF PUBLIC AFFAIRS, United States Treasury, October 16, 2003; and, Exhibit B.2: FACT SHEET, www.usembassy.it/file2003.

person is a man named Saroj Datta who is listed as the Executive Director of Jet Airways of India. If further believe that he has been rewarded or will be rewarded for any efforts that he might make to thwart my wife's company and help Jet Airways India enter the United States on behalf of its Al Qaeda benefactors.

### XXXI.

Any consequences of this association may be construed exactly as I have stated it, or as the reader might conceive as probable since I believe upon fact and information supplied  directly by Vijay Patel and Dilip Patel that they will financially benefit from this  Al Qaeda's first official international airline. The reader may be reminded that Amin Asmin, who is an Pakistani Muslim employee of Jet Airways of India, was one of the 24 arrested in London in connection with the train bombings of last August 10, 2006.

### XXXII.

My wife correctly predicted that Jet Airways of India would be part of another attack on another site by either allowing  terrorist conspirators to board Jet Airways of India aircraft with fraudulent passports, or by allowing  such conspirators to become employees of this Al Qaeda airline in India as well as the other countries that this airline enters as an international carrier. She was right about an attack which happened in London against the trains, but wrong about the country because Jet Airways of India is not allowed to land in the United States—yet.

Affidavit pursuant to **Title 28 United States Code Annotated §1746.    Unsworn declarations under penalty of perjury.**
     See *Dickinson v. Wainwright,*  626 F.2nd. 1184, held  that petition, which contained statement "I declare that under penalty of perjury that the foregoing is true and correct" above petitioner's signature, was sufficient even though certificate of oath may have been defective. One who subscribes to a false statement under penalty of perjury pursuant to federal statute may be charged with perjury just as if statements were made under oath. **Title 18 U.S.C.A. §1621; Title 28 U.S.C.A. §1746.**

Page 11 of 11

# OFFICES OF SAMUEL K. JACOBS

2300 M STREET, NW,    SUITE 838
WASHINGTON, D.C. 20037

TEL: 202-416-1753    FAX: 202-622-0019    E-MAIL: SJNHJACOBS@MSN.COM

February 11, 2007

To:  Headquarters-Montreal
     4225 Dorchester Blvd.
     Westmount (Quebec) H3Z 1V5

Re: **VIJAY PATEL**
    4576 Felix-LeClerc
    Ville-Laurent, Quebec   H4R-2R2
    Vijay Patel Telephone: (514) 334-4708 or (514) 917-0825; and,
    **DILIP PATEL** (residence address unknown)
    Employed by Northwest Airlines in Montreal
    Dilip Patel Telephone: 514-231-2995
    Dilip Patel Cellular: 514-562-9233

Dear Sir/Madam:

This letter is being written  to provide information which is important to both  Canada and the United States  because I believe the  national security of the United States is involved. They stated that they were  starting a charter service between Montreal and Bombay, India, and they approached me about obtaining  the  financing  for  their  project.  Since  then  multiple  events  have occurred.

This information is specifically sent to you because I am forwarding the same  information  to  the  U.S.  Department  of  Homeland  Security,  the Department  of  Justice,  the  Federal  Bureau  of  Investigation,  and  the Department of the Treasury which maintains and designates the U.S. list of terrorists.

## BUSINESS  VENTURE  HISTORY:

During the course of one of my visits to Montreal in the spring of 2006, I met an individual by the name of Dilip Patel who is an employee of Northwest Airlines.  As our casual relationship   grew,  Dilip Patel stated  that  he  was planning to start a charter airline between Montreal and Bombay, India.

Dilip Patel then introduced me to a man named Vijay Patel. They both have contact with an individual from the Ivory Coast who is being financed by a royal family member from Dubai. And, they stated that they had a Boeing 747 available from Brazil. I asked them if it was a Boeing 747-200 or 747-400

Page 1 of 4

because the European noise regulations prohibit the 747-200 from flying in and out of Europe.

The following took place during the next consecutive meetings with these two men:

1. Vijay Patel stated that he was employed by IBM Canada which has a contract with Air Canada, and was very familiar with all of the air operation procedures.

2. Mr. Dilip Patel stated that he had ten years experience in sales and marketing with Northwest Airlines where he is still currently employed.

3. The two men were notified at that time by me that investment bankers in New York would charge a minimum of $250,000 to raise the venture capital for their operation provided that a complete business plan was acceptable to all of the investors including financial projections, the mode of procurement of aircraft, etc.

4. Mr. Vijay Patel stated that he had $179,000 available at his disposal plus he had a restaurant business at that time. They agreed on the project

5. Vijay Patel sent $35,000 to me for my work for this program, he then asked for the money back four days later. He asked for $45,000 for which I gave him a bank sight draft to be paid in 30 days along with a promissory note. A few days later when I was back in Montreal he returned the bank sight draft and the promissory note and demanded $100,000 for his work on this airline project.

6. The amount of money owed by Vijay Patel and Dilip Patel to the New York firms to raise the capital for their charter service venture amounts to over $260,000.00 at the present date.

## NATIONAL SECURITY:

**I am aware of the recent activities in Canada for which a Canadian Citizen was alleged to have threatened the security of the United States and was imprisoned, and the Canadian Government has since apologized. Therefore, I understand that if you decide to act on this subject matter you will be inclined to act very carefully concerning the allegations and facts of this complaint.**

Mr. Vijay Patel's actions are important to note because he has made threats of physical violence to me through both letters to my e-mail and has left threatening messages on the answering machine of my telephone. He has threatened to hire some Indians for a certain amount of money to come to my town and murder or physical injure me as well as others associated with me including small children. These messages have been put on a CD and forwarded to the U.S. Homeland Security. When I here from you I can mail a copy of these telephone messages and e-mails to you.

Page 2 of 4

Because I later learned that Vijay Patel had a record of domestic violence complaints filed by members of his family, I am taking his threats seriously. Therefore, I have every right to believe that if he would attack his own family that he would have no qualms about harming another man's family. He has threatened in recorded telephone messages and in writing through e-mails that he will "punish" me, my business associates, and my family. He keeps threatening me with the facts that we have children and grandchildren and that he knows their ages and where they live.

This violence issue became especially clear when I met one of a Muslim friend of Vijay Patel in Montreal who claimed to be an investment banker. He later stated that **"anybody can bomb any city in the United States—including me."** In a subsequent telephone conference call with Vijay Patel and his friend when I was back in the United States, he expanded on this subject.

*Vijay Patel and his associate also stated while I was in Canada that they can acquire the assistance of employees of Jet Airways of India to help them in these bombing projects.* Unless a man is mentally retarded, no one would make such statements today in any part of the world unless he meant it. I consider these statements to be extremely dangerous.

Afterwards, in February, 2006, Vijay Patel stated that he had been contacted by Jet Airways of India because of my indirect involvement in a legal action in the United States against their entry into the United States because of the Jet Airways of India association and financing by Dawood Ibrahim Kaskar who is on the U.S. 'Specially Designated Global Terrorist' under Executive Order 13224. Vijay Patel stated that he would work with Jet Airways of India against me unless he was compensated. On subsequent telephone conversations he stated that I was finished and Jet Airways of India was going to send people to *"completely destroy you."*

Based on the information provided I asked them that we would go and meet companies that would be interested to work with us. Both men claimed that they were extremely busy, therefore, they wanted me to handle the entire matter. Since I had taken personal responsibility to pay all the initial costs to the investment Bankers, if Vijay Patel and Dilip Patel did not meet the obligation I would now become personally liable. These investment Bankers are inquiring about the project.

During the course of many meetings it was revealed to me that Vijay Patel lived in Texas and went to Canada as he did not like the United States.

Page 3 of 4

   I did not include all of the specific details of my dispute with Vijay Patel and Dilip Patel in this e-mail, but I will be glad to supply you with a statement of my side of this disagreement. Please contact me anytime at: 240-441-6353. My e-mail address is: sjnhjacobs@msn.com.

Sincerely yours,


// SAMUEL K. JACOBS
Samuel K. Jacobs

## **APPENDIX**

## **I. CONSTITUTION OF THE UNITED STATES:**

a. Article I, § Section 8, cl. 3: *"To regulate Commerce with foreign Nations, and among the several States, . . ."*

b. Article III, Section 3;

c. Amendment V:  " ..., *nor be deprived of life, liberty, or property, without due process of law; ..."*

d. Amendment IV:  *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searched and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing  the place to be searched, and the persons or things to be seized."*

## **II. UNITED STATES CODE:**

**Title 15 U.S.C.A. § 1692d** (Harassment or abuse).

"A debt collector may not engage in any conduct the natural consequence of which  is to harass, oppress, or abuse any person in connection with the debt of collection. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(1) **The use or threat of violence or other criminal means to harm the physical person, reputation, or property of any person**.

"(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this act.

 (4) The advertisement for sale of any debt to coerce payment of the debt.

"(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

**Title 15 U.S.C.A. § 1692e** (False or misleading representations):

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(2)  The false representation of –

"(A) the character, amount, or legal status of any debt; or

"(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(4)  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

07 1625

**FILED**

SEP 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

"(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

"(8) Communicating or threatening to communicated to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized,, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

"(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**III. RESTATEMENT OF LAW (SECOND) OF TORTS** as Adopted and Promulgated by THE AMERICAN LAW INSTITUTE at Washington, D. C., May 17, 1979:

**§ 285 *How Standard of Conduct is Determined.***

The standard of conduct of a reasonable man may be

(a) established by a legislative enactment or administrative regulation which so provides, or

(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision.

**§ 290 *What Actor is Required to Know.***

For the purpose of determining whether the actor should recognize that his conduct involves a risk, he is required to know

(a) the qualities and habits of human beings and animals and the qualities, characteristics, and capacities of things and forces in so far as they are matters of common knowledge at the time and in the community; and

(b) the common law, legislative enactments, and general customs in so far as they are likely to affect the conduct of the other or third persons.

**§ 291. *Unreasonableness; How Determined; Magnitude of Risk and Utility of Conduct.***

Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.

**§ 292. *Factors Considered in Determining Utility of Actor's Conduct.***

In Determining what the law regards as the utility of the actor's conduct for the purpose of determining whether the actor is negligent, the following factors are important:

(a) the social value which the law attaches to the interest which is to be advanced or protected by the conduct;

(b) the extent of the chance that this interest will be advanced or protected by the particular course of conduct;

ii

(c) the extent of the chance that such interest can be adequately advanced or protected by another and less dangerous course of conduct.

### § 293. *Factors Considered in Determining Magnitude of Risk.*

In determining the magnitude of the risk for the purpose of determining whether the actor is negligent, the following factors are important:

(a) the social value which the law attaches to the interests which are imperiled;

(b) the extent of the chance that the actor's conduct will cause an invasion of any interest of the other or of one of a class of which the other is a member;

(c) the extent of the chance of any interest of the other or of one of a class of which the other is a member;

(d) the number of persons whose interests are likely to be invaded if the risk takes effect in harm.

### § 311. *Negligent Misrepresentation Involving Risk of Physical Harm.*

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

### § 328 B. *Functions of Court.*

In an action for negligence the court determines

(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or non-existence of such facts;

(b) whether such facts give rise to any legal duty on the part of the defendant;

(c) the standard of conduct required of the defendant by his legal duty;

(d) whether the defendant has conformed to that standard, in any case in which the jury may not reasonable come to a different conclusion;

(e) the applicability of any rules of law determining whether the defendant's conduct is a legal cause of harm to the plaintiff; and

(f) whether the harm claimed to be suffered by the plaintiff is legally compensable.

### § 430. *Necessity of Adequate Causal Relation.*

In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm.

### § 500. *Reckless Disregard of Safety Defined.*

The actor's conduct is in reckless disregard of the safety of another if he does as act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Special note: The conduct described in this Section is often called "wanton or willful misconduct" both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.

**§ 501.** *Liability for Conduct in Reckless Disregard of Another's Safety.*
    (1) Except as stated in Subsection (2) and in § 503, the rules which determine the actor's liability to another for reckless disregard of the other's safety are the same as those which determine his liability for negligent misconduct.
    (2) the fact that the actor's misconduct is in reckless disregard of another's safety rather than merely negligent is a matter to be taken into account in determining whether a jury may reasonably find that the actor's conduct bears a sufficient causal relation to another's harm to make the actor liable therefor.

## CONSTITUTION OF THE STATE OF MARYLAND:

    **Art. 2.** *The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and* **shall be the Supreme Law of the State***; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding.* CONSTITUTION OF THE STATE OF MARYLAND, Ratified by the People on the Eighteenth Day of September, Eighteen Hundred and Sixty-seven, with Amendments through Two Thousand and Two (including amendments proposed by the General Assembly and ratified by the voters through November 5, 2002).

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

SAMUEL K. JACOBS, et al

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _WASHINGTON D.C._
(EXCEPT IN U.S. PLAINTIFF CASES)

1/001

## DEFENDANTS

SIDNEY S. FRIEDMAN, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _BALTIMORE_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
OFF. OF SAMUEL K. JACOBS
2300 M ST. NW STE 838
WASHINGTON, D.C. 20037

Case: 1:07-cv-01625
Assigned To : Walton, Reggie B.
Assign. Date : 9/13/2007
Description: Pro Se General Civil

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☒ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— O —

| ☐ **G.** *Habeas Corpus/* *2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H.** *Employment* *Discrimination*<br>☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I.** *FOIA/PRIVACY* *ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ **J.** *Student Loan*<br>☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA* *(non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L.** *Other Civil Rights* *(non-employment)*<br>☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ **M.** *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N.** *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

ART I SECT 8: ART. III AMEND IV & V    18 U.S.C. 2336, 1961, 1951, 1952, 1956, 1959

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** $12,542,000.00    Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** NO ·    (See instruction) ☐ YES ☒ NO    If yes, please complete related case form.

DATE 9·13-07    **SIGNATURE OF ATTORNEY OF RECORD** *Nency Salmm pro*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

    The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

    Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.