# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMUEL K. JACOBS, et al,** | CASE NO.: <u>1:07CV01625</u> |
| **PLAINTIFFS,** | HONORABLE JUDGE: <u>REGGIE B. WALTON</u> |
| v. | |
| **SIDNEY S. FRIEDMAN, et al,** | **PLAINTIFFS' REPSONSE TO MOTION FOR MORE DEFINITE STATEMENT** |
| **DEFENDANTS.** | |

### <u>PLAINTIFFS' RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT</u>

COMES NOW the Plaintiffs who hereby state that it has become almost obligatory that the defendants in any case, especially a RICO case, file a motion for a definite statement regardless of how well defined the Complaint may be in detail of law and actualities of veracity. The Defendants are merely exercising a waste of the Court's time in order to avoid filing an answer to the complaint by the time ascribed as they have done in the past. The Plaintiffs therefore respond to the Defendants' motion, by the following, to-wit:

1. That Plaintiffs concur with the Defendants that a RICO Complaint was filed by Plaintiffs.

2. That the Defendants have a habit of openly denying the federal laws, the Supreme Court of the United States, and the Constitution of the United States *through filings in United States District Courts.* The Defendants fail to recognize that this is not the Maryland State court.. The Defendants were allowed, and were never reprimanded, to defile the Constitution of the United States in another U.S. District Court, and this writing displays the confidence that they can defy the United States Code, the decisions of other Federal Courts, the Supreme Court of the United States in this court also.



RECEIVED

DEC 1 0 2007

NCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3.  That Plaintiffs filed in this Honorable Court because this court has exclusive and additional authorities and prerogatives beyond the other District Courts because of its history which began with the Organic Act of 1801 and which it still maintains.

4. That Plaintiffs clearly defined the crimes. Plaintiffs used citations to emphasize the extent of the crime, and Plaintiffs state that the Defendants should not accuse the Court of not being able to read when it is the Defendants who are sidestepping the facts of the case with smoke and mirrors by failing to recognize or admit:

a.  That the civil RICO statutes enacted in 1970 were based upon the Sherman-Clayton Anti Trust Act including being able to "recover threefold the damages" sustained and the cost of the suit;

b.  That the Defendants violated the laws of the United States by conspiring with a known enemy of the United States who has threatened to bomb a major American city and has threatened to kill the Plaintiffs; and,

c.  That Defendants openly threatened though violence to steal the Plaintiffs' office equipment through theft by conversion and in the process TERRIFIED the office staff.

5.  That the Plaintiffs would request that the Defendants READ the facts of the complaint and the laws which are associated with the incident which is defined. Every law which has been quoted has been referred to in the body of the complaint unless the law is complete with a single reference. RICO requires at least two incidences within a period of ten years to prove the "pattern of racketeering activity."

6.  That the Defendants fail to defend their accusation with any substance that the Plaintiffs have no private cause of action when Title 18 U.S.C.A. § 1964 (c)(Civil remedies) grants the Plaintiffs not only the right to file as private parties, but as *"private attorney generals."* Once

again, the Defendants have proved that they have no knowledge about the basic structure and background of the RICO statutes.

7. That this is a RICO complaint, not a State action where little or no expertise is required to fill out a form. Where required, the Plaintiffs met Rule 8 (General Rules of Pleading) guidelines, but Rule 8 is not typical for any RICO complaint or answer. Where is the Defendants' more definite statement in their motion?  Defendants statements  do not comply to the Rule 12(b) demand under which they are filing  for a more definite answer when they simply opened a Federal Rules of Civil Procedure and began copying the most obvious and **rote** statements for each Rule.

8. That simple one line pleadings do not meet the Rule 9(b) (Pleading Special Matters) requirements for fraud and RICO pleadings, and the Plaintiffs have met that requirement in this Complaint. But if the Defendants actually understood the RICO statutes and provided a proper defense accordingly   then this would not have to be explained.

9. That Plaintiffs state that when the Defendant cannot substantiate any claim with concrete reliance on the law, and support of that reliance with citations of prominent RICO cases, they cannot claim that the Plaintiffs' complaint lacks meaningful content. The Defendants are trying to wing it on rote material not relevant to the subject at hand, and they look foolish with these statements.

10. That the Defendants cannot give an answer when they do not know the subject that is before the Court and criticizing the  Plaintiffs' well constructed pleading with nonsense claims should not excuse them from answering the complaint as required by law. The  Defendants' motion is nothing more than an evasive technique to avoid answering a well documented complaint. Every criticism has already been addressed in the complaint.

11. That Plaintiffs assert that some of the Defendants' statements are just plain ludicrous, and their filing was submitted to stall for time and have the Plaintiffs supply them with the resources, points and authorities to enable them to basically write their Answer.

THEREFORE, the Plaintiffs pray that the Honorable Court rule that the Defendants answer the Complaint as written and that the attached memorandum of points and authorities supplies all documentation that may explain and assist the Defendants in this obligation.

Dated this 10th day of December, 2007.

Respectfully submitted,

Samuel K. Jacobs

Nancy M. Heckerman

OFFICES OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753
E-mail: sjnhjacobs@msn.com

# wiht UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL K. JACOBS, et al, | CASE NO.: 1:07CV01625 |
| **PLAINTIFFS,** | HONORABLE JUDGE: |
| v. | REGGIE B. WALTON |
| SIDNEY S. FRIEDMAN, et al, | **MEMORANDUM OF POINTS AND AUTHORITITES IN SUPPORT OF PLAINTIFFS' REPSONSE TO MOTION FOR MORE DEFINITE STATEMENT** |
| **DEFENDANTS.** | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT

COMES NOW the Plaintiffs who support their PLAINTIFFS' REPSONSE TO MOTION FOR MORE DEFINITE STATEMENT with points and authorities. The Plaintiffs state that they are neither teachers nor are they baby sitters to sit and explain all parts of a RICO complaint to the Defendants. Plaintiffs state the following, to-wit:

1. That at first the Plaintiffs started to oblige the Defendants with the location and explanation of each law which they so sloppily listed on pages 8 and 9. And, if the Court requires further elucidation of the subject, then the Plaintiffs will gladly submit any documents which the Court might require. But, after the Plaintiffs reviewed the Defendants' motion and their own "AMENDED COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED ACT AND CORRUPT ORGANIZATIONS ACT (RICO)," the Plaintiffs realized that they had submitted a complaint which met the criteria for a proper RICO pleading.

2. That, however, Plaintiffs assert that if the Defendants want the Plaintiffs to do the research for the laws referred to in the Complaint which were already cited and exemplified, then the Plaintiffs will submit that research to them for $500 per page. Plaintiffs state the following, to-wit:

3. Plaintiffs have met all of the Checklist requirements for a RICO complaint:

a. The Plaintiffs have alleged each prohibited and unlawful conduct which is a violation under Title 18 U.S.C.A. § 1962 (a),(b), (c), and (d) (Prohibited activities);

b. The liability and misconduct basis of liability of each defendant has been alleged;

c. The Plaintiffs have listed the wrongdoers, known at this time, and have listed the acts committed by the wrongdoers. Plaintiffs have even filed separate actions against some of the known wrongdoers, and other actions are being prepared against others as they are revealed;

d. The Plaintiffs have stated how they, and their business associates and office staff, have been victimized by these Defendants and their coconspirators;

e. The Plaintiffs have described in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim by:

(1) Listing the alleged predicate acts and the specific statutes which were allegedly violated;

(2) Providing dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

(3) Stating that the RICO claim is based on the predicate offenses of wire fraud, mail fraud, and other frauds by identifying the time, place and contents of the alleged misrepresentation and identity of persons to whom and by whom the alleged misrepresentation was made;

(4) Stating how the predicate acts formed a "pattern of racketeering activities";

(5) Stating whether the alleged predicate acts were part of a "common plan"; and,

(6) Stating in the "COUNTS" the criminal actions demanded for each offense.

## I. INTRODUCTION

4. That Plaintiffs aver that very few of the Defendants' statements in the Introductory paragraphs are entirely correct. First of all, the Plaintiffs have supplied copies of their complaints to the Attorney General of the United States for a full investigation of all of these Defendants. Plaintiffs will ask that Subpoenas be issued in order to achieve a full discovery, and yes, this has taken years to almost complete the discovery process. Plaintiffs have requested the cooperation of the Department of Justice, and have mailed or delivered copies of their filings to the Department of Justice regularly since April 4, 2004.

5. That Plaintiffs state that foremost in their objections to the Defendants' vacuous filing is the reference to DEFENDANTS Yelin Shi and Yu Fan as MR. Shi and MS. Fan. They are DEFENDANTS Yelin Shi and Yu Fan who are accused of violating the laws of the United States for which the Plaintiffs have proof—they are not extraneous entities who are average law abiding Citizens who have been victimized by the Plaintiffs; *Plaintiffs assert that it is they who have been victimized, otherwise, they would not have filed this Complaint in this court.*

6. That, now, as to the Defendants' comments in their memorandum, to-wit:

a. That in Case Number: 1:04cv1379, filed in the United States District Court for the Eastern District of Virginia, the Defendants denied the Constitution of the United States, the laws enacted pursuant thereof, the decisions of the U.S. District Court AND the Supreme Court of the United States, and, also, denied the jurisdiction and venue of that court in their Answer to that case. Then, in the same pleading, they filed a Counterclaim citing that same jurisdiction and venue they had just denied.

    b.  That on the face of the record, primarily in the Docket Sheets, other judges and attorneys who have reviewed the exhibits  agree that the Docket Sheets were so convoluted and confusing that there was no way to determine when, if, who, or what hearing was  going to be held at any time in that case. There were violations of at least seven rules or laws, and there were violations of constitutional rights under Amendments IV, V, IX, VII,  and XIV when State laws are applied to Federal Court proceedings.

    c.   That the Plaintiffs aver that the Defendants were  improperly awarded a judgment for  a parol agreement, of sorts, when the most that should  have been awarded to the Defendants was a dismissal with no award to the Defendants.[1] Plaintiffs state that this  was an error on the part of the court to award a judgment for a parol agreement in the face of two written contracts and they appealed the decision. It was denied, and Plaintiffs believe that the Court of Appeal for the Fourth Circuit  did not receive the correct information about this case in time to really review the lower court's opinion.

    7.  That the Plaintiffs filed a complaint for a  second case in the same Virginia U. S. District Court which is Case Number: 1:07cv395, and as of this writing, it is also Case Number: 07-1942 before the Court of Appeal for the Fourth Circuit  in Richmond. Case Number: 1:07cv395 was not filed on the same issues as Case Number: 1:04cv1379 since the Plaintiffs presented two different written contracts made with major suppliers for which the Defendants breached the contracts and caused the inducement of breach of contracts with third party beneficiaries and these issues are still outstanding.

    8.  That Defendants breached these two contracts with damages of at least $5,790,000.00 and are a set off counterclaim to the Defendants' claim for a parol agreement of $140,000.00 *In a*

---

[1]

*few months the reason why these two cases were never resolved correctly will surface.* Plaintiffs

aver that the forthcoming issues will greatly influence this case and will become part of this cause

of action.

9.   That the Defendants brought their judgment  to Maryland, misfiled it as a Foreign

Judgment without following the laws of the State,[2] failed to file a bond with the Court for their

Writs of Attachment  pursuant to Maryland Rule 2-115(c), (Attachment before Judgment), and,

Defendants were not entitled to attachment before judgment pursuant to Maryland Rule 2-115 (g).[3]

10. That at  a motions hearing in the Maryland State court, the judge told the Plaintiffs that

they could not submit any documents or evidence to support their own motions, when they asked if

they could present the two written contracts which the Defendants breached and which  had already

been included in the filings. Only the Defendants' attorney was allowed to speak uninterruptedly

and state his position. The case is continuing in the Circuit Court for Montgomery County,

Maryland, and also in the Special Court of Appeals for the  denial of constitutional rights under of

Amendments IV and XIV and violation of Title 42 U.S.C.A. § 1983 (Civil action for deprivation of

rights).

11.  That Plaintiffs have suffered with bills for over $5,790,000.00 in damages due to these

Defendants' fraudulent actions for breach of contract and inducement of breach of contract. The

large agri-conglomerate Continental Grain now part of Cargill  has notified the Plaintiffs that they

will be suing the Defendants in this case since they are part of the third party beneficiaries who

---

[2]

[3] It has been stated, however, that the mode of procedure, after jurisdiction of the person is obtained, must be in accordance with law, and a clear violation thereof, if fundamental, vitiates the judgment, and subjects it to collateral attack, where the violation is apparent on the face of the record proper. [3] *State v. District Court of Eighth Judicial Dist. in and for Natrona County,* 238 P. 545, 33 Wyo. 281.

suffered damages due to breach  of contract and inducement for breach of contract for failure to

perform on the soy bean contract pursuant to the  following as the basis:

> While a bill of lading in so far as it is a contract, cannot be explained by parol, yet being a receipt as well as a contract, it may in that regard be so explained, especially when used as the foundation of a suit between the original parties to it.
>
> Mr. Robert Rae, for the appellants:
>
> 1. The signing of the bills of lading by the authorized agent of the vessel, after delivery of the property into his possession and control, binds the vessel, and has the same force and effect as if signed by the master.[4]
>
> 2. The owner of the vessel is estopped as against a consignee of the bill of lading, when either has taken it for a valuable consideration upon the faith of the acknowledgments which it contains, to which he has given credit, by the signature of his agent, so far as these statements relate to matters which are, or ought to be, within his knowledge.[5]
>
> In this case, the consignee advanced on the faith of the bill of lading.
>
> 3. Parol testimony cannot be received in courts of admiralty, any more than in courts of law, to contradict the terms of a bill of lading.[6] Nor can courts of admiralty exercise chancery powers to reform maritime contracts.[7]
>
> 4. When a written contract is attacked on the grounds of containing some material mistake, the evidence of mistake must be very strong. Lord Hardwicke says,[8] that in such a case, he would require "the strongest proof possible," which words Lord Eldon observes, "leave a weighty caution to future judges." [9]

12. That the Plaintiffs state that they are loyal American Citizens who have been defrauded

by  Defendants Yelin Shi and Yu Fan, and Defendants Sidney S. Friedman, Greg I. Rose,  and

Weinstock, Friedman & Friedman, P.A. have aided and abetted them through the commission of

more predicate acts.

a. First of all, after living here for approximately fifteen years, Defendant Yelin Shi is not a

Citizen because he is not loyal to the United States. He is an agent of The Peoples Republic of

---

[4] *Rawls et al v. Deshler*, 3 Keys, 577; *Dows v. Greene,* 24 New York, 638; *Coosa River Steamboat Company v, Barclay*, 30 Alabama, 120; *Putnam v. Tillotson*, 13 Metcalf, 517.

[5] *Sears v. Wingate*, 3 Allen, 103; *Ward v. Whitney*, 3 Sanford, 399; *Sutton v. Kettel*, 1 Sprague, 309.

[6] Greenleaf on Evidence, § 402.

[7] *Andrews v. Essex Insurance Company*, 3 Mason, 7; *The Ives*, Newbury, 205.

[8] *Langley v. Brown*, 2 Atkyn, 203. And in *Shelburne v. Inchiquin*, Lord Thurlow demanded "strong irrefragable evidence."

[9] *The Lady Franklin*, 75 U.S. 325; 19 L.Ed. 455 (1868) 8 Wall. 325.

China who is here to obtain information for the Chinese Government against the United States and for the benefit of a foreign Nation. Title 18 U.S.C.A. § 793 (Gathering, transmitting or losing defense information) and § 794 (Gathering or delivering defense information to aid foreign government).

b. That  Defendants Shi and Fan are involved in business in the United States to support their  upkeep in this country and that is how the Plaintiffs were ensnared. Defendants Shi and Fan are here to help other Chinese, (who may or may not be here legally), secure a base through loans for real estate from their Chinese lenders while they perform their  duty for  their Chinese homeland. All of this is done at the expense of the American Citizens such as these Plaintiffs.

c. That if DEFENDANT Yu Fan purports to have a Ph.D. in some esoteric form of biology, why is she selling real estate? Who would work all those years to get a Ph.D. and then just dump it when the demand for biologists is so great? Is it true, as she has stated to the Plaintiffs, that she paid another Chinese to write her dissertations and sit for the oral exam? If she would pay someone to fake her own degree then what assurance does the Honorable Court have that she would tell the truth about anything else she does?   Ask Defendant Yu Fan to write a letter about her business or her years in college, and then the Court can make its own evaluation as to her competence in English to sit for any degree, especially  a Ph.D. in any subject.

d. That Defendants Yelin Shi and Yu Fan would have the Honorable Court believe that they were innocent little lambs when, in fact, DEFENDANT Yelin Shi has high powered transmitters which are not normal household equipment which he uses to send stolen classified American information to The Peoples Republic of China. DEFENDANT Yu Fan has been chastised or punished *at least three times* by Official Boards or courts in *at least two States* for violating the laws concerning her real estate profession.

e. That, from experience in dealing with them in the past, the Plaintiffs state that Defendants

Yelin Sh and Yu Fan think that they can always buy or bribe their way out of trouble or criminalize

some business venture because they can obtain the resources to commit to any financial agreement

through their Government. As long as there are those who will be greedy enough to violate their

own laws and self esteem to accept the Defendants' money to erase their crimes they shall not be

brought to justice. Defendants Shi and Fan act like they do not understand English, but as soon as a

contract appears they understand very quickly how to misconstrue and defraud their victims—in

English. From the Defendants' motion it appears that none of the other Defendants can understand

English either.

> "If two or more violations of § 1954 are established, the defendant becomes subject to §
> 1962 (c), which requires that these two predicate 'acts of racketeering' be related to the
> conduct of the enterprise." *United States v. Palmeri,* 630 F.2d 192, 199 n 3 (3rd Cir 1980),
> (citation omitted), cert. denied, 450 U.S. 967 (1981). This approach is consistent with §
> 1962 (c)'s broad language and legislative history which indicates a congressional intent to
> reach all patterns of racketeering activity engaged in by persons employed by or associated
> with enterprises whose activities affect interstate commerce . . . . There is a legitimate
> federal interest in preventing the corruption and subversion of interstate enterprises, and it is
> this corruption which RICO seeks to eradicate.[10]

13. That Defendants claim that the Plaintiffs have no right to file a private complaint for a

civil RICO. This statement displays that the Defendants have no knowledge of Title 18 U.S.C.A. §

1964 (c) (Civil remedies) which is known as the "private attorney general" provision[11] which is

---

[10] *Acampora v. Boise Cascade Corp.,* 635 F.Supp. 66, 70 (DNJ 1986) (quoting *United States v. Vignola,* 464 F.Supp. 1091, 1098 (ED Pa), affd, 605 F.2d F2d 1199 (3rd Cir 1979), cert. denied, 444 U.S. 1072 (1980).
[11] See *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 493 (1985 and is modeled on section 4 of the Clayton Act. (Also known as the Sherman-Clayton Antitrust Act). See *Sedima* at 485 calling the Clayton Act "the model for §1964 (c). The clearest current in [RICO's legislative] history is the reliance on the Clayton Act model." See also *Shearson/Am.Express, Inc. v. McMahon,* 482 U.S. 220, 241 (1987). (discussing "the recurrent references in the legislative debates to §4 of the Clayton Act as the model for the RICO treble-damages provision").

modeled on section 4 of the Clayton Act and designed to "provide vigorous incentives for plaintiffs to pursue RICO claims that would advance society's fight against organized crime."

> In hearings before the Senate Judiciary Committee, then Assistant Attorney General (now Ninth Circuit Judge) Steven S. Trott stated:
> [I]n gauging the overall deterrent value of auxiliary enforcement by private plaintiffs, the deterrence provided by the mere threat of private suits must be added to the deterrence supplied by the suits that are actually filed. Furthermore, as the federal government's enforcement efforts continue to weaken organized crime and dispel the myths of invulnerability that have long surrounded and protected its members, private plaintiffs may become more willing to pursue RICO's attractive civil remedies in organized crime contexts . . . Finally, *civil RICO's utility against continuous large-scale criminality not involving traditional organized crime elements should be kept in mind.* These considerations suggest that private civil RICO enforcement in areas of the organized criminality may have had a greater deterrent impact than is commonly recognized, and .. . might be expected to produce even greater deterrence in the future. *Oversight on Civil RICO Suits: Hearings before the Senate Committee on the Judiciary,* 99th Cong., 1st Sess. 40-41 (1985) (Emphasis added).

## II. COMPLAINT DOES NOT FAIL TO COMPLY WITH RULES 8(a)(2) & 9(b)

14. That, once again, the Defendants' attorney copied from some first year law book to form an "answer" to a paragraph. The paragraph has no meaning. Defendants are claiming that the complaint fails to satisfy either Rule 8 (General Rules of Pleading) or Rule 9 (Pleading Special Matters). A conspiracy complaint is defined with short and plain statements pursuant to Rule 8 requirements, and the rest of the Complaints meets the RICO requirements and elaborates the details of the special pleading pursuant Rule 9 (b).

> To plead a conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additional elements include an agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity. Allegations of RICO conspiracy are not measured under the Rule 9(b) standard, which requires greater particularity in allegations of fraud, but rather are measured under Rule 8(a)'s more liberal pleading standard. [12]

---

[12] *Shearin v. EF Huton Group, Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).

15. That Defendants fail to define and explain any deviations in the Plaintiffs' complaint from the Rule 9 (Pleading Special Matters) requirements. Where are the frivolous statements? Where are the confusing accounts in the Complaint? Are the statements confusing, or are the Defendants deliberately attempting to confuse the Court with statements which reveal that they admittedly do not know how to answer a RICO Complaint?

a. Defendants give no reason why Defendant Yelin Shi used his friend in Chevy Chase Bank to aid and bett in invasions of privacy and violations of the banking laws. (See paragraphs 14 through 19). Where are the Defendants' answers to the Plaintiffs' allegations of specific acts in violation of Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information), Title 18 U.S.C.A. § 1028A. (Aggravated identity theft), and Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee)? (A RICO conspiracy may be found even when the predicate acts or collection of an unlawful debt never occurred or were not proved.[13]).

In the often-quoted words of Judge Pratt of the Second Circuit:
When Congress provided severe sanctions, both civil and criminal, for conducting the affairs of an "enterprise" through a "pattern of racketeering activity," it provided no exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If the conduct of such people can sometimes fairly be characterized as "garden variety fraud," we can only conclude that by the RICO statute congress has provided an additional means to weed the "garden" of its fraud.
It seems almost too obvious to require statement , but fraud is fraud , whether it is committed by a hit man for organized crime or by the president of a Wall Street brokerage firm.[14]

---

[13] See, e.g., *Sherson v. E. F. Hutton Group, Inc.* , 885 F.2d 1162, 1169 (3d Cir. 19189); *United States v. Teitler*, 802 F.2d 606, 613 (2d Cir. 1986); *United States v. Pepe*, 74 F.2d 632, 660 n.44 (11th Cir. 1986).
[14] *Furman v. Cirrito,* 741 F.2d 524, 529 (2d Cir 1984), *vacated in part on other grounds sub nom Joel v. Cirrito,* 473 U.S. 922 (1985).

b. Defendants give no defense as to why Sidney S. Friedman, Greg I. Rose, or/and some other representative of Weinstock, Friedman & Friedman, P.A., called the Plaintiffs' office more than once and threatened the staff with basically armed robbery by threatening to bring an armed sheriff to steal the equipment in the office and had the staff in hysterics to the point where they were on the verge of calling the police. (See paragraphs 20 through 42). What part of threat of violence is not specific? (RICO conspiracy conviction affirmed where defendant agreed to commit or aid and abet predicate acts. [15])

> The courts are split on the issue of whether a defendant must actually agree to commit the predicate acts *himself or herself* in order to be liable under § 1962 (d). The majority rule recognizes that a defendant need not personally commit the predicate acts as long as he or she actually agrees to their commission by another party. *Shearin v. EF Huton Group, Inc.*, 885 F.2d 1162, 1166 (3rd Cir 1989).

c. That the Plaintiffs have not acted in bad faith and have met the requirements of specific pleading. Bad faith is going to arrive when Continental Grain formerly known as Cargill enters into this case against ALL of the Defendants, not just the two who instigated the criminal and predicate acts.

16. That, now, where are the Defendants' answers to these allegations? Surely, they do not think that their motion for a more definite statement does more than waste a tree.

17. That the Defendants answered their own question when they stated (on the bottom of page 7) that they are required, and yet failed, to explain the defects complained of and the details desired. The Defendants merely listed all of the laws which have been cited as having been violated even if each violation has been fully explained further in the complaint. Plaintiffs aver that the Defendants have to locate each paragraph and defend the allegation properly, or find someone who is knowledgeable about RICO who can explain the Complaint to the Defendants' attorneys.

---

[15] *United States v. Cauble*, 706 F.2d 1322, 1339-1341 (5th Cir. 1983).

In *United States v. Scotto,* 641 F.2d 47 (2d Cir 1980), cert. denied, 452 U.S. 961 (1981), the Second Circuit fashioned a two-part test to determine what constitutes "conducting the activities of an enterprise," holding that the proper connection is established when "1)one is enabled to commit the predicate offenses solely by virtue of [one's] position in the enterprise or involvement or control over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise."

18.  That the Defendants' list of the statutes in the Complaint was ridiculous when one examines the haphazard contents of those citations. Plaintiffs would gladly answer the Defendants' submission of those statutes if it pleased the Court, but Plaintiffs realize that this listing of statutes was nothing more than an attempt by the Defendants to make the Plaintiffs do the research and basically supply an answer to the Complaint for them. Plaintiffs plead that the Court not force the Plaintiffs to do all of the Defendants' research for them—as well as write their pleadings.

19.  That to illustrate the insufficiency of the Defendants' filing, the Plaintiffs state the following to prove that this motion was nothing more than a nuisance filing to stall for time:

a. Defendants listed each one of these acts separately and do not seem to understand the most basic premise that the Fair Debt Collection Practices Act and the Equal Credit Opportunity Credit Act are part of the Consumer Credit Protection Act. These are the names of the acts, and they are all cited pursuant to Title 15 U.S.C.A. § 1601, et seq. (Fair Debt Collection Practices Act is Title 15 U.S.C.A. § 1692, et seq.; Truth in Lending Act, 12 CFR 226.18, et seq., Equal Credit Opportunity Act 12 CFR 202, et seq., etc.).

b. Plaintiffs state that it is rather odd that a group of "debt collector" attorneys do not know how to cite and associate the statutes according to the "Consumer Credit Protection Act." But, again, if the Defendants adhered to the Consumer Credit Protection Act, they would have no problem understanding the complaint, and they would not have violated so many

parts of those laws by calling the Plaintiffs' offices and violently threatening the Plaintiffs' staff with theft by conversion in an effort "to collect a debt"?;

c. Plaintiffs never cited the "Extortionate Credit Transaction Act"; there is literally no such thing; Plaintiffs correctly referred to Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means) as a statute and it is not cited as the "Extortionate Credit Transaction Act." This is explained in the Complaint in paragraphs 29 to 32 when the Defendants terrorized the Plaintiffs' office through violation of the Consumer Credit Protection Act, Title 15 U.S.C.A. § 1601, et seq. ;

d. The Federal Health Care Act in RICO is cited under Title 18 U.S.C.A. § 1956(c)(7)(F)(Laundering of monetary instruments), and refers to the civil rights acts among other health care violations. **When Congress included this section in the amended 1984 civil RICO statutes they made it possible to incorporate a civil rights violation as a criminal statute violation. Before this statute, civil rights violations had only been applicable under Title 42 U.S.C.A., not Title 18 U.S.C.A.** Plaintiffs were the first litigants to bring this issue before the Supreme Court of the United States; and,

e. The Sherman-Clayton Antitrust Act is Cited as Title 15 U.S.C.A. § §§§1-4. The Antitrust statutes are known under all or parts of the names in this Act. The RICO statutes were based on this Act. The Defendants' claim that the Sherman Act, or the Clayton Act, or the Sherman-Clayton Act, is irrelevant to RICO is like saying that the ice cream cone came before ice cream.

f. Defendants criticize the citation of the Organic Act of 1801 because they are ignorant of this Honorable Court's unique history. This Court's history is directly related to the State of Maryland.

20.  That the Defendants accuse the Plaintiffs of throwing the statutes in a shotgun or a kitchen sink manner when it is the Defendants who obviously failed to comprehend the tools used for the RICO complaint. Once again, if the Defendants want the Plaintiffs to do their research the fee is $500.00 per page.

21.  That, very importantly, why do the Defendants make it so hard for the Court to read the pleadings?   Defendants' attorneys failed to read the Federal Rules of Civil Procedure, and this Court's Local Rules, and understand  that each paragraph in each pleading has to be numbered pursuant to Rule 10 (b) (Form of Pleadings). If Rule 10 (Form of Pleadings) is irrelevant, then Rule 8 (General Rules of Pleading) and Rule 9 (Pleading Special Matters) are not an issue. However,  the Judicial Conference and the Congress appear to think that all of the Rules are equally important or they would not have included them each year.

22.  That if  the Defendants are going to cite one Rule under  the Federal Rules of Civil Procedure  then they must adhere to every Rule and present their objectives  properly. The Defendants have failed to adhere to the FRCvP and define their objectives in their pleading. What was the purpose of the Defendants' motion for a more definite statement when they do not understand the Federal Rules of Civil Procedure or the RICO statutes? It is they Defendants who need to state a more definite statement, the Plaintiffs are quite clear.

23.  That in RICO Class 101  there is no such thing as just citing one law; each complaint REQUIRES that at least two laws be violated due to the basic structure. There  are no two or three page RICO complaints. There are no adequate Rule 8 (General Rules of Pleading) RICO complaints due to the complexity of the RICO Act itself. Each  citation is directly linked to the source of civil RICO which is Title 18 U.S.C.A. § 1961 (Definitions). From that definition is the list of the laws for which there must be a minimum of two predicate or overt acts not longer than two years apart to be

classified as part of a pattern of racketeering activity.  RICO activities had to extend over a period

of time until this Court heard and ruled on *Yellow Bus Lines, Inc. v. Local Union 639*, 913 F.2d 948,

954 (DC Cir. 1990):

> *"Conduct" is synonymous with "management" or "direction." Webster's Third New International Dictionary 473 (1961). The  "conduct of [the enterprise's] affairs" thus connotes more than just some relationship to the  enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities. In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show." Yellow Bus Lines, Inc. v. Local Union 639*, 913 F.2d 948, 954 (DC Cir. 1990).

Furthermore:

> *We note that our construction of the statute does allow for participation in the conduct of an enterprise's affairs by "outsiders" as well as "insiders." Section 1962 (c) provides that participation may be indirect as well as direct, 18 U.S.C. § 1962 (c),  and nothing in our interpretation of the participation requirement  precludes liability  on the part of outsiders. The crucial question is not whether a person is an insider or an outsider, but whether and to what extent  that person controls the course of the enterprise's business. Id.*

24.  That the other source of RICO statutes is directly linked to  Title 18 U.S.C.A. § 1956

(Laundering of monetary instruments). Defendants reveal their own lack of comprehension of the

RICO requirements and statutes when they state that there are too many laws cited and hten they are

repeated. The laws have to be repeated to tie them together with the main purpose of RICO.

25.  That the Defendants also complain that the Plaintiffs cite some statutes just once.

Defendants need to read Title 28 U.S.C.A. § 1651 (Writs) and Title 28 U.S.C.A. § 1361 (Action to

compel an officer of the United States to perform his duty). These two statutes are cited together as

a writ of mandamus at the end of a pleading to allow the judge to exercise his authority and apply

any laws that he, or she, may deem appropriate. No one cites these two together more than once

except in the most extraordinary circumstances.

26. That every predicate act under RICO has to be a prohibited activity under Title 18 U.S.C.A. § 1962 (Prohibited activities). No Title 18 U.S.C.A. § 1962 (Prohibited activities) violations, then no RICO.

> "there are four ways to violate the RICO statute, which are set forth in the four subsections of § 1962. All four subsections incorporate the basic elements of 'enterprise' and 'pattern of racketeering activity' . . . However, the various offenses are quite different in the ways they combine those elements." Criminal Division, U.S. Dept. of Justice, Racketeer Influenced and Corrupt Organizations (RICO): A Manual for Federal Prosecutors 58 (1st rev ed 1986) (app I).

WHEREFORE, the Plaintiffs plead that the Honorable Court accept this Memorandum in support of Plaintiffs' pleadings.

Dated this 10th day of December, 2007.

Respectfully submitted,

Samuel K. Jacobs

Nancy M. Heckerman

OFFICES OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753
E-mail: sjnhjacobs@msn.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL K. JACOBS, et al,<br><br>    PLAINTIFFS,<br>  v.<br><br>SIDNEY S. FRIEDMAN, et al,<br><br>    DEFENDANTS. | CASE NO.: 1:07CV01625<br><br>HONORABLE JUDGE:<br>REGGIE B. WALTON<br><br>**ORDER** |

### <u>ORDER</u>

This matter having this day regularly come before me for hearing, 'the Defendants having filed a "MOTION FOR MORE DEFINITE STATEMENT" and the Plaintiffs having filed a Response and memorandum to this motion, and the Court being fully advised in the premises, and good cause appearing therefor,

It is hereby ORDERED, that said motion be, and the same is hereby, DENIED; and,

FURTHERMORE, the Defendants are ORDERED to answer the said Complaint as required; and

That the Clerk of this court hereby is ordered and directed to immediately certify and enter a copy of this order, and that the parties be ordered to proceed with the case from this day forward.

Done and ORDERED this _____ day of _____, 2001.

_____

JUDGE OF THE U. S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2007, I caused the foregoing to be served by First Class U.S. Mail: "PLAINTIFFS' RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT" in the United States District Court for the District of Columbia on the following Defendants' attorney:

SIDNEY S. FRIEDMAN
WEINSOTCK, FRIEDMAN & FRIEDMAN, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301


Nancy Heckerman, Plaintiff