# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAMUEL K. JACOBS, et al,

    **PLAINTIFFS,**

  v.

SIDNEY S. FRIEDMAN, et al,

    **DEFENDANTS.**

CASE NO.: <u>1:07CV01625</u>

HONORABLE JUDGE:
<u>REGGIE B. WALTON</u>

## <u>RESPONSE TO MOTION TO DISMISS</u>

COMES NOW the Plaintiffs Samuel K. Jacobs and Nancy Heckerman who hereby respond to the Defendants' "Motion to Dismiss" which is nothing more than another evasion for failure to answer within ten days the Plaintiffs' "AMENDED COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED ACT AND CORRUPT ORGANIZATIONS ACT (RICO) PER JULY 10, 2008 ORDER" which was filed on August 11, 2008. Plaintiffs state the following, to-wit:

1. **<u>THAT, ONCE AGAIN, THE DEFENDANTS HAVE ENGAGED IN THREATS, INTIMIDATION, AND HARASSMENT, AND THIS TIME IT IS IN THE FORM OF A WRITTEN PLEADING WHICH WAS FILED IN ANOTHER COURT.</u> The Plaintiffs wrote truthful statements in the Amended Complaint and other pleadings in this Court about this pattern of racketeering activities pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence).**

2. **THAT AT LAST THE COURT CAN DISCERN THE TRUTH FROM THE FABRICATIONS EVEN BEFORE THE WITNESSES AND OTHER BONA FIDE**

**EVIDENCE ARE PRESENTED.** Plaintiffs aver that these scare tactics are their modus operandi for all of their victims, and incriminates all of the Defendants even further.

3. That now the Honorable Court can clearly see from the Defendants' filings in another court that not only are the Defendants actually using scare tactics to intimidate and extort an unlawful debt from these victims, they have omitted truthful information from their filings which would drastically affects the court's decision if it was allowed to stand. **PLAINTIFFS AVER THAT THE OMISSION OF THE TRUTH IS EQUIVALENT TO LYING TO THE COURT, AND THESE MULTIPLE OMISSIONS ARE AN OBSTRUCTION OF JUSTICE.**

4. That the Plaintiffs assert that such omissions in the filings, and the threats to have the Plaintiffs arrested when no probable cause exists, are direct violations of Title 18 U.S.C.A. § 1512 (Tampering with a witness, victim, or an informant) and Title 18 U.S.C.A. § 1513 (Retaliating against a witness, victim, or an informant).

5. That Plaintiffs allege that as a member of the ABA, Defendant Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A. have violated the ABA Code of Ethics while complaining to the Court about the Plaintiffs' moral turpitude. Although the attorneys are bound to zealously defend their clients, does it mean that they can commit criminal acts as a means of representation?

6. That Plaintiffs state that it is this underhanded lack of ethics which has made them realize that they must have an attorney represent them in these cases. Even though the Plaintiffs can recognize blatantly and obviously erroneous acts, there are perhaps other actions taken by the Defendants which the Plaintiffs do not discern as being fraudulent. If this request for time to find a criminal attorney is not granted, then the Plaintiffs have no choice but to continue in their search for an attorney and ask him to file for a new trial.

7. That the Defendants claim that the Plaintiffs have failed to state a claim upon which relief may be given. There are two main reasons why the complaint was filed:

**(a) That not once in this case have the Defendants denied that they made those incriminating telephone calls and threatened violence through extortion, harassment and intimidation to at least two members of the Plaintiffs' office staff; and,**

**(b) That not once in four years have the Defendants denied that Defendant Yelin Shi and Yu Fan signed two contracts for soy beans and crude oil, signed letters representing that they had secured the goods from the Plaintiffs companies to sell and were part of the agreement, pledged to fulfill the Letter of Credit obligations to the suppliers before shipment or delivery of shipment, and then purposely breached the contracts to inflict damages and loss upon the Plaintiffs' companies and their suppliers who are now going to sue all of these Defendants and the these Plaintiffs for inducement to breach the contract.**

8. That the Defendants, through a RICO conspiracy(d) under the control(c) of Defendant Sidney S. Friedman conducted(b), pursuant to Title 18 U.S.C.A. § 1962 (Prohibited activities), criminal acts which were threats of violence, intimidation, and harassment pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence), through, primarily, wire fraud (pursuant to Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television).

9. That said criminal acts were also violations of the Fair Debt Collection Practices Act since attorneys Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A. were acting to collect a consumer debt for their clients pursuant to Title 15 U.S.C.A. § 1692d. (Harassment or abuse) and Title 15 U.S.C.A. § 1692e. (False or misleading representations). This is an abuse of the license to practice law as a "debt collector."

10.  That these criminal and overt acts were committed by a RICO person who identified himself as Sidney S. Friedman at eh time of the commission of the overt acts, and intimated that he was an officer of the Government or an attorney. Therefore, Sidney S. Friedman became the main RICO person because he performed these acts with the knowledge of, and for the benefit of Defendants Francis Freidman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan.

11.  That under RICO, it does not matter if the other Defendants knew exactly what was happening at the time, that they approved or disapproved, or that they actually and personally joined in the pattern of racketeering activities. All that is necessary is that the other Defendants had conspired with Sidney S. Friedman to obtain a goal and the entire RICO enterprise was advised that the goal was to harm and injure the Plaintiffs. So say the opinions of the Supreme Court of the United States, and this Court as well.

12.  That the Plaintiffs had to include the facts of their previous relationship with the Defendants to prove that the acts were related, continuous and that if the RICO enterprises were not stopped they were likely to continue and irreparable damage and injury to the Plaintiffs would result.

13.  That this is as simplistic and remedial as the Plaintiffs can explain a RICO cause of action so that the Defendants can understand:

14.  The Plaintiffs allege that the Defendants committed several criminal acts which constitute a pattern of racketeering activities over a period of at least four years and the damage and injury to the Plaintiffs has been continuous, repeated, and because the overt acts are still occurring even as this paper is written, the RICO enterprises show no sign of ceasing due to the conduct and

control of Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A., on behalf of Yelin Shi and Yu Fan.

15. The rest of the complaint details who, where, when, and how.

16. That as this Honorable Court well knows, but others reading this pleading may not know, every civil RICO Complaint is sent to the Attorney General of the United States for review for criminal charges. This takes about two years. The Department of Justice wants to make sure no settlements take place after a lengthy investigation at the taxpayer's expense. Then, the Attorney General wants to make sure that the case has merit. Then the DOJ wants to make sure that there are enough criminal Counts to make the criminal indictment "stick." The last notorious public interest case took seven years to bring to trial. This case is just four years old.

17. That the Defendants' statement is a standard reply for a lack of comprehension of the laws and has become so standard as to be considered illiterate. No attorney files such a nonsensical pleading when combating a RICO complaint.

18. That where is the basis for this motion in any textbook on the subject of RICO? The Plaintiffs have had the Complaint examined by several competent attorneys and have submitted the complaint to the Department of Justice for review. The general agreement is that the Amended Complaint complies with the stringent requirements for a RICO complaint and is not a "regurgitation of all prior and pending complaints brought by plaintiffs." **Defendants are grasping at straws to divert the Court from the criminal allegations, the witnesses who will testify to the criminal acts, and the insurmountable list of other evidence.** The Defendants have NO CONCRETE EVIDENTIARY PROOF FOR THEIR CLAIMS.

19. That since the Defendants did not answer the Amended Complaint, but instead filed a fraudulent pleading in the State Court to have the Plaintiffs arrested when they had no cause of

action to demand this body attachment Order to appear for a oral exam since the Plaintiffs had voluntarily complied with the Order only five days after the Order was issued on April 10, 2008, and the Order had become moot.

20.  That Plaintiffs state this false and fraudulent filing for body attachment in the State Court under totally false information to the court that the Plaintiffs had never appeared, and the omission of truthful and documented proof is certainly astounding.

**21.  That these Defendants have supplied the Honorable Court with evidence of their own intention to continue to threaten, harass and intimidate the Plaintiffs through trickery and deceit in total disregard of the laws which govern their particular profession.** *How can laws be enacted by Congress and a certain class be allowed to be "exempt" from adhering these laws?*

22.  That this time the arrogance of the Defendants' attorneys has caused them to err by committing the crime in a court in writing. The Plaintiffs have incurred irreparable damages and injuries because they are pro se and these Defendants' attorneys have demonstrated that either they cannot read and comprehend a RICO Complaint or that they do not want to devote the time to study and proficiently defend the facts so they choose as a resort to commit pathetic criminal acts disguised as "technicalities" as a defense.

23.  That the basic facts of this Complaint are that the Plaintiffs claim to have evidence and witnesses that support their averments that the Defendants have no evidence to prove that they are innocent of these criminal acts against the Plaintiffs and their companies. And, that since the criminal acts have been continuously repeated over a period of time, the acts constitute a pattern, and since the overt and predicate acts are cited under the RICO statutes, Plaintiffs have stated that there is a pattern of racketeering activities due to a conspiracy.

24.  That although the Plaintiffs have filed as pro se litigants, according to several attorneys who have read the pleadings, they may be lengthy but they are not incoherent and the length is due to the requirements to prove the violations of the RICO statutes and other criminal laws. Each Defendant must be linked to another Defendant to prove conspiracy and each crime requires an overt act and the Plaintiffs have succinctly stated this. The oppositions' lack of reading comprehension should not influence the Court to rule in their favor because of illiteracy. Why have the Defendants not consulted with legal professionals who specialize in RICO cases instead of veering away from answering the pleadings  with a defense outlined in all RICO points and authorities?

25.  That Plaintiffs did not script this complaint out of thin air. They read and reviewed the books written by attorneys who are the leading authorities on the subject, followed these attorneys' suggestions on what issues absolutely must be covered, applied their forms to the pleadings, and, read most of the leading opinions of the Supreme Court, and other Federal Courts, on leading RICO cases.

**26.  That the Defendants have supplied the evidence which proves that the Plaintiffs' pleadings contain  legitimate grievances, and, contrary to the Defendants' averments, there is no regurgitation of past events except by the defenses' own revelations which also confirms that the pattern of racketeering activities  are real, intentional, and the threat of continuity is so undeniably evident from the Defendants' latest actions.**

**<u>27.  That the Plaintiffs met the obligation in the Amended Complaint to detail the events, explain the relationship with the RICO persons to the RICO enterprises, and the Defendants constantly evade the basic fundamentals of this area of law, and their obligation to defend those RICO averments.</u>**

28. That the motion for a more definite statement means that the attorney for the Defendants has almost no knowledge of RICO and the Plaintiffs' response has to supply information which interprets the RICO statutes, shows the relationship to the non RICO statutes, cites the leading RICO cases, and introduces the leading RICO authorities to the reader.

29. That since the Plaintiffs are pro ses, if an attorney knows "A" then the Plaintiffs have to prove that they know "B" as well as "A," and sometimes the Plaintiffs have to prove that they also know "C" even if it is not relevant. The result is that the Plaintiffs appear to be instructing the opposition and the Court. It is certainly not the Plaintiffs' intention to instruct the Court on the subject since the Plaintiffs are depending on the wisdom and expertise of the Court to resolve the issue, not complicate it through insult to the Court.

30. Lastly, Plaintiffs do NOT want to arrogantly insult the court with responses which makes them appear as if they are trying to be law professors, but when they have to prove every detail in the extreme, this is the way it appears. And, luckily for the Plaintiffs, the opposition does not display any knowledge of the manner in which to defend and defeat a legitimate RICO complaint. <u>The attributes of a good RICO rebuttal are simply not evident in the Defendants' pleading.</u>

## <u>RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>

31. How silly to choose, as a defense to a RICO complaint, to state that the case should be dismissed since the Plaintiffs have inadvertently used two legitimate and different suite numbers in their office when each room in the office has a number all of its very own. Is this the best technicality that the Defendants can allege as a defense?

32.   That the Defendants state that the Plaintiffs live in Germantown, Maryland, but that address of 12903 Summit Ridge Court, Germantown, Maryland 20878, belongs to another person and is temporary since the Plaintiffs have not owned a home or a permanent address since they were defrauded by Yelin Shi and Yu Fan and other parties in their group. The criminal acts committed by the Defendants occurred in Washington, D.C. and this the Court where the case should be tried, not some State Court which governs residents of Germantown, Maryland.

WHEREFORE the Plaintiffs pray:

That this case proceed to trial after the Plaintiffs have engaged representation for this cause, and if there are issues in the Complaint which are still unclear, that the Plaintiffs' new counsel rewrite the issues to the Court's satisfaction.

Dated this 2ND  day of September, 2008.

Respectfully submitted,

_____                          _____
Samuel K. Jacobs                                          Nancy Heckerman

OFFICE OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753
E-mail: sjnhjacobs@msn.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMUEL K. JACOBS, et al, | CASE NO.: <u>1:07CV01625</u> |
| **PLAINTIFFS,** | HONORABLE JUDGE: |
| v. | <u>REGGIE B. WALTON</u> |
| SIDNEY S. FRIEDMAN, et al, | |
| **DEFENDANTS.** | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF</u><br><u>RESPONSE TO MOTION TO DISMISS</u>

COMES NOW the Plaintiffs Samuel K. Jacobs and Nancy Heckerman who hereby respond to the Defendants' "Motion to Dismiss" which is nothing more than another evasion for failure to answer the Plaintiffs' "AMENDED COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED ACT AND CORRUPT ORGANIZATIONS ACT (RICO) PER JULY 10, 2008 ORDER" within ten days of August 11, 2008. Plaintiffs state the following, to-wit:

1. That on August 20, 2008, the Defendants filed a "Plaintiffs Request for Issuance of Order for Contempt and Body Attachment" in the Circuit Court for Montgomery County, Maryland for Case Number: 280832-V. This State case is relevant to this cause of action because the Defendants (plaintiffs in that case) filed a paper for a serious action and that action is fraudulent due to the omission of the facts that the Plaintiffs were not in contempt in that court and the issuance of a body attachment is moot since the Plaintiffs have already voluntarily appeared for that Oral Exam.

2. <u>THAT THE OMISSION OF THESE PERTINENT FACTS IS AN OBSTRUCTION</u> <u>OF JUSTICE SINCE SIDNEY S. FRIEDMAN, GREG I. ROSE, WEINSTOCK,</u> <u>FRIEDMAN & FRIEDMAN, P.A., YELIN SHI AND YU FAN HAVE ASKED FOR THE</u>

## ARREST OF THE PLAINTIFFS WITHOUT PROBABLE CAUSE, FOR AN ORDER WHICH IS MOOT SINCE THE PLAINTIFFS VOLUNTARILY COMPLIED WITH THE ORDER OF THE COURT AND APPEARED AT THE MASTER'S OFFICE BEFORE A COURT REPORTER ON APRIL 15, 2008. ALSO, THAT  CASE HAS BEEN CLOSED IN THAT COURT.

To conspire to defraud  the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.[1]

## I. INTRODUCTION

3.    That the Defendants, once again, elaborated upon past cases without really addressing the fact that this case was filed for: a) acts committed by at least one Defendant on behalf of the other Defendants which the are direct and indirect violations of the laws formulated by Congress to protect the consumer from threats of violence, intimidation, and harassment.[2] In its conventional usage, a conspiracy may exist *"even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense"* [3]

4.   That Plaintiffs HAVE stated repeatedly exactly which laws have been violated and how the laws were violated, the relationship of one law to the other laws which must be combined to form a RICO Complaint. Plaintiffs state that the Amended Complaint has demonstrated how four years of criminal acts and evidence proves that the continuity factor is supplied.

---

[1] *Hammerschmidt v. U.S.*, 265 U.S. 182, 188.
[2] "to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985).
[3] *Salinas v. United States*, 118 S.Ct. 469, at 477 (1997).

Open-ended continuity is present when (1) " a specific threat of repetition" exists; (2) "the predicates are a regular way of conducting [an] ongoing legitimate business"; or (3) "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." [4]

5. That the Defendant's statement that they find it hard to "weed through" the complaint to determine the alleged RICO claims merely indicates that the Defendants, and their attorneys, are not familiar with RICO lawsuits. Defendants' statement discloses ignorance of the RICO subject matter, and such statement reveal their failure to properly defend the most crucial aspects of a RICO lawsuit. The Defendants have replied as if this is just a simple complaint for a State district court proceeding.

In *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2523, 69 L.Ed. 2d 246 (1981), the Supreme Court of the United States defined a racketeering enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct" and as an "organization, formal or informal [with] various associates functioning as a continuing unit." It was also in *Turkette* that the Supreme Court 'suggested' that an enterprise is "an entity separate and apart from the pattern of activity in which it engages."

## II. STANDARD FOR REVIEW

6. That the Rule 12(b)(6) points and authorities are the same ones that the Defendants have used in every motion that they have filed in every other U.S. District Court, and are a composite of the citations used in West Books for general civil pleadings. If the Defendants want to eliminate superfluous rhetoric, then how about eliminating these hackneyed citations which determine absolutely nothing in a RICO complaint other than there is a standard form which can be copied for a Rule 12(b) motion? The Judicial Conference should just adopt these citations into Rule 12(b)(6), eliminate eye strain, and save lots of trees.

7. The points and authorities state that the plaintiff is given the benefit of the doubt by the court until proved otherwise—that is a given statement which all can agree upon for accuracy. But

---

[4] Baptista, pg. 114.

then, the water gets muddied when the Defendants state that they can not answer the complaint because it fails "to comply with the leading standard required of the courts." Whose pleading standards are the Defendants claiming to be superior? How many RICO cases have they filed? How many have they defended? Better yet, how many have they won?

## III. PLAINTIFFS MEET AND SET FORTH ALL CLAIMS UPON WHICH A PROPER RICO COMPLAINT MAY BE GRANTED PURSUANT TO THE JULY 10, 2008 ORDER

### A. PLAINTIFFS' CLAIMS EXCEED THE REQUIREMENTS AS A MATTER OF LAW

#### 1. The Amended Complaint Meets the Requirements of Rule 8 (a)(2) and Rule 9 (b)

8. That maybe there is some mysterious RICO pleading criteria known only to the Defendants which determines how the RICO complaint is to be plead and defended. Plaintiffs state that they have followed the forms and writings of Baptista, Brown, Abrams, Butterworth, and a Department of Justice Manuel used for RICO complaints, and no where in any of these authorities have the Plaintiffs seen a decent RICO defense lodged as if the case was filed in a small claims court, or even in a normal civil court proceeding. Rule 9 (Pleading Special Matters)(b) dominates RICO cases because of the complexity of the laws.

9. That a Rule 9 (Pleading Special Matters)(b) pleading is uniquely available at the start of the case as a pleading issue; if it is not made at the inception of the litigation, the motion tends to lose its vitality.[5]

Plaintiffs allege that the information concerning continuing RICO activities which affect other victims and can only be compelled to be revealed by the enterprise through discovery. These averments do comply with FRCvP Rule 9 (b) pursuant to *Michaels Building Co. v.*

---

[5] See *Luce v. Edelstein*, 802 F.2d 49, 55 (2ndCir. 1986); *Schlick v. Penn-Dixie Cement Corp.* 507 F.2d 374 (2ndCir.1974); *Segal v. Gordon*, 467 F.2d 602 (2dCir. 1972); *Spira v. Nick*, 876 F.Supp. 553 (S.D.N.Y. 1995).

*Ameritrust Co.. N*.A. 848 F.2d 674 (6th Cir.1988), which avers that  that dismissal would mean that *"corporate entities who jealously guard the names of their clients, as they should, would be forever victorious."*

10.  That the Defendants, once again, display their lack of knowledge by bringing up Rule 8 (General Rules of Pleading) as if they are going to a small claims court to fight for back rent. RICO pleadings are not entirely governed by Rule 8 (general rules of pleading), and this is according to Baptista, Abrams, and Butterworth.

11.  That the Plaintiffs assert that the Court must be exhausted with the Defendants' lack of comprehension surrounding Rule 8 (General Rules of Pleading) and Rule 9 (Pleading Special Matters) pleadings. RICO pleadings  cannot be so simplified that the issues are lost due to lack of detail.

12.  That  the Defendants state in one of their none ending unnumbered paragraphs which deifies Rule 5  criteria, that  the Amended Complaint . . . *"fails to set forth any allegations in short and plain statements, let alone with particularity."* Someone is missing the RICO complaint objective here, and it is not the Plaintiffs. *"Short and concise"*  is exclusive to Rule 8  pleadings, and *"particularity"* is used for Rule 9. No wonder the Defendants, and not the Court, remain confused.

13.  That the Defendants complain that the Plaintiffs fail to answer Rule 8 (General Rules of Pleading) and Rule 9 (Pleading Special Matters) in the same sentence, yet the Defendants languish on forever in tirades of non-ending paragraphs in complete defiance to Rule 5 objectives, and fail to use that second grade education to number the paragraphs so that the Court, as well as the opposition can respond in kind without having to hunt forever to find the direct reference which is being refuted. Plaintiffs are pro ses but do try to read and comply with all of the Federal Rules of Civil Procedure to determine these basic rules in an attempt not to insult or irritate the court.

## 2. Plaintiffs Succinctly Identify and State Specific Claims for RICO Pleadings

14.  That Plaintiffs are willing to send their complaint to one of these leading authorities on RICO or a law school professor and ask if the Plaintiffs' complaint meets the RICO criteria; or, they can submit the complaint to the Department of Justice and ask if a prosecution could be sustained using the Plaintiffs' pleadings.  Are the Defendants willing to do the same?

15.  The civil RICO complaint is not a standard civil complaint. Defendants' list of standard citations do not support an apposite RICO defense.

> "there are four ways to violate the RICO statute, which are set forth in the four subsections of § 1962. All four subsections incorporate the basic elements of 'enterprise' and 'pattern of racketeering activity' . . . However, the various offenses are quite different in the ways they combine those elements." [6]

16.  That although the fraud must be plead with particularity, this does not extend to all allegations in a RICO Complaint. Sidney S. Friedman's lack of moral turpitude, misuse of an authority which he was granted to be exercised with discretion and respect,  and abusive unethical conduct is one of the main components of this lawsuit. The Amended Complaint complies strictly with the requirements outlined by the Court for the rewrite. *Why should the  Plaintiffs  be punished for the defense attorney's  lack of knowledge of the subject of RICO?*

17.  Unlike the defense, the Plaintiffs have not only written the Complaint pursuant to the outlines and outlines of the leading authorities on the subject of RICO, they have "crossed the t's" and dotted the i's" on what the defense might use as an attack.

18.  The Defendants have not even hit upon the vital issues for a good defense pleading, but instead have borrowed a few quotations albeit from respected judicial opinions, but these opinions are irrelevant when they do not relate to the issues.

---

[6] Criminal Division, U.S. Dept. of Justice, Racketeer Influenced and Corrupt Organizations (RICO): A Manual for Federal Prosecutors 58 (1st rev ed 1986) (app I).

19. **That NOT ONCE have the Defendants stated to the Honorable Court that they have proof and witnesses that they did not commit the criminal actions of which they have been accused, nor, *most importantly*, have they *denied* that they committed the alleged overt acts for which the Plaintiffs do have proof which are in violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television); Title 18 U.S.C.A. § 1951[7] (Interference with commerce by threats or violence); Title 15 U.S.C.A. § 1692d. (Harassment or abuse); and Title 15 U.S.C.A. § 1692e. (False or misleading representations).** Pursuant to Rule 8 (d) (General Rules of Pleading): *"Averments to a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."*

20.    That when the citations are just thrown in to meet the points and authorities requirements and the full case is not read, the writer can make glaring errors by quoting just a singular phrase. The Defendants made a major faux pas by citing the *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union*, 883 F.2d 132 (1989), one of this Court's most famous RICO cases, as a defense to isolated events supporting a RICO cause of action.

> "Conduct" is synonymous with "management" or "direction." Webster's Third New International Dictionary 473 (1961). The "conduct of [the enterprise's] affairs" thus connotes more than just some relationship to the enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities. In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show." *Yellow Bus Lines, Inc. v. Local Union 639*, 913 F.2d 948, 954 (DC Cir. 1990).
> Furthermore:
> We note that our construction of the statute does allow for participation in the conduct of an enterprise's affairs by "outsiders" as well as "insiders." Section 1962 (c) provides that participation may be indirect as well as direct, 18 U.S.C. § 1962 (c), and nothing in our interpretation of the participation requirement precludes liability on the part of outsiders.

---

[7] Hobbs Act- Title 18 U.S.C. § 1951. To prove economic harm, the plaintiff must establish that the victim reasonably believed that the defendant had the power to harm the victim, and that the defendant would exploit that power to the victim's detriment

The crucial question is not whether a person is an insider or an outsider, but whether and to what extent that person controls the course of the enterprise's business. *Id.*

21.  That the Defendants, as pleaders, were attempting to prove that the telephone calls to the Plaintiffs' office over a period of months should not be considered RICO acts since they were short and isolated.  By citing the wrong part of the following case, the Defendants defended the Plaintiffs' case.

22.  That Plaintiffs state that this Court was a hero with its decision in *Yellow Bus Lines , Inc. v. Drivers, Chauffeurs & Helpers Local Union* which is a major case which set the criteria nationwide to establish that a case with a few isolated events which occur over a short period and which violate only a limited number of RICO statutes can qualify as a RICO cause of action.

23.  That the Defendants cited one phrase in that case which they think vindicates their stance, but it is not the  equivalent to stating that the Plaintiffs' complaint must be *"construed liberally in the plaintiff's favor"* pursuant to cases concerning Rule 12(b)(6) of the Federal Rules of Civil Procedure since the quote that Defendants cited from *Yellow Bus Lines, Inc.* was part of the argument which was overturned, and not the final opinion of the Court.

24.  That in *Yellow Bus Lines , Inc.,* the Defendants attacked the main case which declared that a RICO case which was basically isolated as to length of time and events was not to be dismissed because it did not cover a large number of year and events. The Court found that, after all, Title 18 U.S.C.A. § 1961(5) (Definitions) states: *"at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity"* was all that is needed to pursue a RICO cause of action.

25. That, furthermore, the parties involved in the part of this case which involves the wire fraud to transmit the threats of violence, extortion, and harassment does involve the same Plaintiffs and Defendants in the other cases which the Defendants cited as a history. The objective of the telephone calls cited in this complaint were the same as the other cases involving the same parties: a) a conspiracy to injure and harm the Plaintiffs, b) a scheme to defraud the Plaintiffs of funds, goods, and/or resources, and c) the use of threats of violence through harassment, extortion, theft, kidnapping, or murder.

> As overt act which completes crime of conspiracy to violate federal law is something apart from conspiracy and  is an act to effect the object of the conspiracy, and need be neither a criminal act, nor crime that is object of conspiracy, but must accompany or follow agreement and must be done in furtherance of object of agreement.[8]

26. That the pattern of racketeering activities is defined by the number of criminal acts which are committed to effectuate the conspiracy. The Defendants in this case only expanded the number of criminal and *overt* acts and included new acts which had not been attempted by them before in any other scenario against the Plaintiffs.

27. That the mere fact that there are at least one hundred statutes, including not only the criminal statutes but  other statutes under other Titles of the United States Code, which could qualify as RICO violations is the best testament that it does not matter what statute is violated if at least two of the Defendants are in agreement to conspire to commit the violations of  at least one of the laws at least twice. These separate and sometimes distinct units form what is known as the RICO enterprise.[9]

---

[8] *Marino v. United States*, C.C.A.Cal., 91 D.2d 691, 694, 695, 113 A.L.R. 975.
[9] RICO required a specified relationship between the RICO defendant and enterprise. Either the enterprise must be the object or goal of the racketeering activity (§§ 1962(a) and (b)), or it must be a tool utilized to carry out racketeering activity. *Benard v. Hoff*, 727 F. Supp 211, 214 (D MD 1989).

28. That Plaintiffs state that a partial list of the various RICO enterprises and RICO persons is as follows:

a. That the first RICO conspiracy in this case began when Yelin Shi and Yu Fan joined Susan Wu to conspire to defraud the Plaintiffs.  Plaintiffs believe that Susan Wu was in control of the conspiracy but Yelin Shi and Yu Fan conducted the pattern of racketeering activities.

> The courts are split on the issue of whether a defendant must actually agree to commit the predicate acts *himself or herself* in order to be liable under § 1962 (d). The majority rule recognizes that a defendant need not personally commit the predicate acts as long as he or she actually agrees to their commission by another party.[10]

b. That Yelin Shi and Yu Fan formed a new conspiracy and a new RICO enterprise with their friend who works at Chevy Chase Bank who monitored the Plaintiffs' physical activities through violations of the banking laws pursuant to Title 12 U.S.C.A.

c. That the objective of the third RICO enterprise was conducted by Yelin Shi and Yu Fan to breach two contracts and induce the breach of the contracts  and a loss was incurred by the Plaintiffs for the two contracts.

d. That  Plaintiffs sued Yelin Shi and Yu Fan to recapture their lost funds, and Yelin Shi and Yu Fan enlisted Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A., to "represent them." But when Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., committed overt and criminal acts to aid Yelin Shi and Yu Fan a new and fourth RICO enterprise was formed and new RICO persons were joined in the conspiracy.

e. That when this RICO enterprise formulated a new RICO enterprise through the Maryland courts and increased the number of overt acts through submission of documents which linked

---

[10] *Shearin v. EF Huton Group, Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).

Sidney S. Friedman, Greg I. Rose,  and Weinstock, Friedman & Friedman, P.A.   with a known Al
Qaeda person named Vijay Patel who lives in Canada.

f. That a fifth RICO enterprise and conspiracy was formed when Vijay Patel stated to the
Plaintiffs on a recording machine that he was in conspiracy with Sidney S. Friedman, and others,
and that he had given Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A.,
Yelin Shi and Yu Fan information about the Plaintiffs' banking account. This information, which
had not been known by the Defendants until Vijay Patel gave them account number, was then used
to file for attachment of the account through the  State court, and, thus, another RICO enterprise
was formed since the banking information was obtained through fraud.[11]

g. That Defendants claim that the Plaintiffs have not been injured with the telephone calls
between Friedman and Vijay Patel, yet the Defendants would not have filed for that attachment
without the information from Vijay Patel and the other information that Vijay Patel claims to have
given to Sidney S. Friedman.[12]

h. That in yet another RICO enterprise which is conducted and controlled by Sidney S.
Friedman  on behalf of and in agreement with the other Defendants,[13]  overt acts of threats of

---

[11] Sidney S. Friedman's constant communications with Vijay Patel who is a confessed Al Qaeda
member makes all of those associated with Vijay Patel, Sidney S. Friedman, Greg I. Rose,
Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan in violation of Title 18 U.S.C.A. §
2332b (Acts of terrorism transcending national boundaries).
[12] Each fraudulent use of wire or mail constitutes a RICO predicate act.
**The intended victim need not allege that the defendant was successful, that the intended
victim actually was defrauded or suffered a loss, or that the defendant secured a gain. It is
sufficient that the defendant instructed an agent to use the mails or wires, or that the
defendant precipitated events that foreseeably would involve such use.** Venue also pursuant to
Title 15 U.S.C. § 15(a) and § 22. See pg 51 Abrams., footnote 2.
[13] In *United States v. Scotto*, 641 F.2d 47 (2d Cir 1980), cert. denied, 452 U.S. 961 (1981), the
Second Circuit fashioned a two-part test to determine what constitutes "conducting the activities of
an enterprise," holding that the  proper connection is established when "1)one is enabled to commit
the predicate offenses solely by virtue of [one's] position in the enterprise or involvement or control

violence, harassment, extortion and intimidation were made through wire fraud against the Plaintiffs' office staff which the Plaintiffs have explained in detail in the Complaint and other pleadings at least five times, and about which the Defendants conveniently have amnesia. The Plaintiffs will explain it another five times in five other courts if necessary until there is a trial for these blatant violations of at least five criminal statutes and the Fair Debt Collection Practices Act.

29. That to prove that the Defendants have no intention to stop with this continuous assault and flagrant violations of the United States Code, Sidney S. Friedman and Weinstock, Friedman & Friedman, P.A., on behalf of Yelin Shi and Yu Fan, formed yet another conspiracy and new RICO enterprise by filing a pleading in the Circuit Court for Montgomery County, Maryland, **which asks for the Plaintiffs to be arrested without a probable cause** *in order to intimidate, threaten and harass the Plaintiffs*.

30. This the Defendants' latest overt act is this *written* admission of the Defendants' threats of violence, harassment and intimidation which the Plaintiffs have claimed in this case. The Plaintiffs can produce two witnesses in this Court, and have attached the actual written admissions that through omission of the truth the Defendants will continue to actually harass, threaten and intimidate the Plaintiffs unless this case comes to a full trial.

31. That not only are these two Plaintiffs suffering from these overt acts, there are indeed others who are the subject of the same actions every day through the Defendants Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., "debt collection" agency. This debt collection agency believes that it has the right to commit criminal acts and remain exempt from

---

over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise."

prosecution. Is this what Congress really intended, or is this what those who perform these acts have convinced the courts and the public is the debt collector's "right above the law"?

32. That the reason for the large number of the statutes which can be cited for RICO violations is the relationship of the statutes to the body of the crime which is cited from Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence) to § 1968 (Civil Investigative demand).

33. That Defendants personally attacked the Plaintiffs' office staff. Just as the Plaintiffs have witnesses to testify that they were the victims of the criminal acts and events which occurred here in Washington, D. C. through wire fraud from Maryland, the Plaintiffs now have written evidence of the obstruction of justice which is occurring in another court right now.

> An overt act which will justify the exercise of the right of self-defense is such as would manifest to the mind of a reasonable person a present intention to kill him or do him great bodily harm. [14]

34. That as the Court can plainly see from the writings in the Circuit Court for Montgomery County, Maryland, the Defendants have no intention of settling this case when the objective is to harm and injure the Plaintiffs continuously until they can seize what assets they believe the Plaintiffs to have in their possession. Whether in this case or the next case, the Plaintiffs will pursue a Grand Jury indictment if it takes them to 50 States and a hundred Grand Juries. The longer it goes on the longer the list of defendants and the longer the list of criminal acts.

35. That the Plaintiffs did not sue the Defendants Yelin Shi and Yu Fan because they are Chinese, they sued them because they have been deceived and defrauded twice by different members of this group and their lies about the incidents will remain until a full trial is held and the evidence and facts are presented for a jury to determine.

---

[14] *Cooke v. State*, 18 Ala.App. 416, 93 So. 86, 88.

36. That the Defendants are wrong on several issues concerning the two contracts:

a. That first they claim that there is a statute of limitation on the contracts. RICO has never contained a statute of limitation clause. The nearest thing to a decision was the *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*[15] which was designed  to resolve the *"confusion, inconsistency, and unpredictability"* of the statute of  limitations for RICO lawsuits as proclaimed by an American Bar Association Tack Force.[16]

b. That  even though a  "uniform" national limitations period of four years had been suggested by this American Bar Association Tack Force, The Supreme Court determined that the plaintiff's RICO claims had been *"timely brought,"*[17] and the Court noted *"we have no occasion to decide the appropriate time of accrual for a RICO claim."*[18]

c. That even though these contracts were timely brought, they have yet to be heard since each time the Plaintiffs attempted to produce them in Court the contracts have been denied even an entry into the record. Plaintiffs assert that Defendants Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan are well aware that if these contracts are presented in court, the Defendants  will lose their case since these written documents will preclude any heresay claims.

37. . That since  the Plaintiffs have not been able to have these contracts  presented and tried in any court up to now, they have been informed by both suppliers that there will be a day in court since the Plaintiffs are still in contact with the suppliers, and these mega corporations  will not be represented by pro se litigants.  Both third party suppliers are aware that the Plaintiffs have

---

[15] 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed. 2d 121 (1987).
[16] ABA Section of Corporation, Banking, and Business Law, Report of the Ad Hoc Civil RICO Task Force 391 (1985).
[17] *Id.* at 157, 107 S.Ct. at 1267.
[18] *Id.* at 158, 107 S.Ct. at 2767.

diligently attempted to resolve these breaches of contract, and are also aware of the Defendants' fraudulent schemes to evade their obligation for their acts.

38.  That  Plaintiffs have stated that there are copies of the contracts in Europe which Yelin Shi signed, and those contracts will either be submitted to this court or will be part of the cases being filed by the third party suppliers. Defendants may think the contracts issue is moot but the companies that lost almost ten million dollars are not eager to say give the Defendants an opportunity to exercise any res judicata excuses since they will file their own lawsuits separate from these Plaintiffs.

39.  That, also, the contracts have been constantly active through Plaintiffs' discussions with Cargill, formerly known as Continental Grain, so the statute of limitation is moot even under normal contract  litigation. And,  as recently as a few weeks ago when Plaintiff Jacobs was in New York, Cargill announced its intention to sue all of these Defendants, especially the attorneys who have controlled and orchestrated this debacle, as well as the Plaintiffs for these breached contracts.

40..  That    the Defendants activated these new RICO conspiracies when the RICO enterprise still controlled by Susan Wu, devised  the "accidental" meeting between the Plaintiffs and Defendants Yelin Shi and Yu Fan because of the "lost dog" who soon thereafter "disappeared." The Defendants Yelin Shi and Yu Fan formed this new RICO enterprise with  Susan Wu, and the new RICO enterprises have been spun from that initial  "chance" encounter.

38.  That as the Defendants stated, the Susan Wu case was held from 1999 to 2001 and, therefore, the new meetings in furtherance of the original RICO pattern of activities meets the time criteria for the   pattern of racketeering activities as defined by Title 18 U.S.C.A. § 1961(5) (Definitions): *"at least two acts of racketeering activity, one of which occurred after the effective*

*date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity.*"

39.  That the objective of these RICO conspiracies from the beginning was to defraud the Plaintiffs, and they have continued with these objectives for more than thirteen years.

40.  That to prove the allegations stated in the Amended Complaint, the Plaintiffs must be allowed to submit the contracts and other documents which are in the control of the attorneys and suppliers in Europe who Yelin Shi met and before whom he signed the contracts. This is one of the main reasons that the Plaintiffs must be allowed to have an attorney represent them in this case since the revered Mr. G.A.J. Dolk, the Plaintiffs' main attorney, died last year in Belgium, and the records must be acquired from the estate.

41.  That the Plaintiffs assert that Defendants, especially Sidney S. Friedman, acts as if he has never heard of Vijay Patel and yet Vijay Patel recites intricacies about this case which eh could have only been told about from Sidney S. Friedman, or Greg I. Rose, or other persons in Weinstock, Friedman & Friedman, P.A.

42.  That the Defendants state through their averments that they are not desirous of the testimony from the two members of the Plaintiffs' office staff to be heard by this Court through their statements that calling and threatening people to come and take their belongings and furniture is no big deal. If a jury heard these statements from these two members of the Plaintiffs' office staff, would they regard the screaming and threats as acceptable manner of conducting a law practice?

43.  That the Plaintiffs gave statements from two different people in the Plaintiffs' office and one call came from a man who  identified himself as Sidney S. Friedman. Another call was received from Weinstock, Friedman & Friedman, P.A. and when that call was  made a man named  Greg I.

Rose was filing pleadings in the United States District Court for the Eastern District of Virginia in that case for this firm.

44. That another call came from the voice of one of these men who did not identify himself but said that he was with the Government. The receptionist said that he made statements which were suspect and the receptionist said that she received calls from people who worked for the Government all of the time and they always identified themselves and acted professionally, and this man who identified himself as Sidney S. Friedman did not act like a professional person since he started screaming and using profanity when he was told the Plaintiffs were not in the office but that he could leave a voice message.

45. That the Plaintiffs ask that the Court grant them the right to have these witnesses speak. Plaintiffs ask the Court not to let these Defendants confuse and demean the issues of the threatening and intimidating telephone calls which upset both of these women so much. It takes a great deal to upset two women who have answered the telephones each day for years and have heard every type of unwarranted rude statements that are given by the public. But the threats made by Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., go beyond rudeness—they qualify as actual and intended wire fraud in the manner in which Congress intended and as defined in Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television).

46. That the Plaintiffs deserve the right to have these two women testify as to how the Defendants Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A. conduct their legal practice as "debt collectors" and then decide if firms that use these scare tactics to actually violate the Fair Debt Collection Practices Act meet the guidelines of the ethics provisions of the American Bar Association. Plaintiffs are not a judge or jury—they are merely one of many who receive these unwarranted threats everyday.

47. That the Plaintiffs recently had to change a telephone number not because of any action of theirs but because the number had belonged to a family which had obviously fallen on hard times. Plaintiffs received calls about a lady named was Carolina and from the Children's Hospital about the couple's child who had a serious medical problem. From the telephone calls it was obvious that Carolina had maxed out their credit cards to care for the child, and had her car repossessed.

48. That Plaintiffs received telephone calls increased in volume and almost daily for a month the Plaintiffs received calls who said they were from "legal firms" and "debt collectors." When Plaintiff Heckerman stated that her name was not Carolina and that the telephone number was new to her, the callers would state: "I know where you live and I will come after you!" One caller, just like Sidney S. Friedman and his group, threatened to come to Plaintiffs' house with the police, knock down her door, and drag her out of the house to a police car since she was aiding and abetting in the hiding of this Carolina—a woman she has never met.

49. That this "debt collector" abuse is epidemic, and Plaintiffs pray that the Court allow this case to be heard so that the Carolinas of this country can also obtain some relief because someone stood up for them by going through an entire trial to right this wrong. The Judicial Committee of Congress must address this issue if the law is permitting these overt acts to be practiced on the public by the attorneys who state that they are "exempt" from obeying the laws.

> [White-collar crime [is] a term commonly used to designate those occupational crimes committed in the course of their work by persons of high status and social repute [that] . . . are only rarely dealt with through the full force of criminal sanctions . . . Serious erosion of morals accompanies [the white collar offender's] violation. [Those who so] flout the law set an example for other businesses and influence individuals, particularly young

people, to commit other kinds of crime on the ground that everybody is taking what he can get.[19]

50. That the American Bar Association has excellent standards and ideals to adhere to, and attorneys such as these do the organization no favor. Plaintiffs plead that the ABA do its part to rectify the situation or distance itself from those who practice this less than ethical behavior.

51. That the Defendants state that they do not comprehend the term "enterprise" as used in the RICO statutes since they state that the Plaintiffs' reference to the "various "enterprises" is not remotely specific." The Plaintiffs do not believe that the Court actually expects them to define the RICO definition for "enterprise" for the Defendants since this subject could fill a textbook, or at least a thesis.

> It has been held that the enterprise-defendant distinction requirement does not preclude a person from being a section 1962(c) enterprise with respect to other defendants' racketeering activity, and a defendant with respect to its own racketeering activity involving another enterprise.
> First, a defendant conducts or participates only if the defendant had at least general knowledge or awareness of the enterprise's existence or of the predicate acts' illegality. Second, section 1962(c) does not require proof that the racketeering acts benefited the enterprise. See *United States v. Webster*, 639 F.2d 174, 669 F.2d 185.

52. That many major Federal Court decisions, and, of course, several major Supreme Court decisions, cases have pivoted on the definition of the RICO person and the RICO enterprise and the fact that a RICO enterprise cannot be a RICO person at the same time—and some courts believe that the RICO enterprise can never be a RICO person. Maybe the attorneys for the Defendants all graduated from law school before the civil RICO statutes were enacted in 1970. This might explain why so few attorneys practice RICO litigation.

> Post-Webster decisions also decline invitations to embellish section 1962 (c) with other adornments. The plaintiff need not demonstrate (1) that the defendant solidified or otherwise

---

[19] President's Commn on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 33-34, (1967) note 154, at 47-48.

enhanced his position in the enterprise through commission of the predicate acts, (Scotto) (2) that the racketeering activities corrupted or changed the enterprise's policies or administration, (Scotto) or (3) that the racketeering activity's proceeds went to the enterprise rather than to the defendant. *US v. Welch*, 656 F.2d 1039.

53.    That the Defendants accuse the Plaintiffs of attaching "conspicuously unsigned" Affidavits since the originals were given to the police when the kidnapping was attempted and when Yelin Shi and Yu Fan threatened to kill the Plaintiffs. Since the Plaintiffs gave the original Affidavits to the police officers they only had unsigned copies of the Affidavits. When someone threatens to murder you or to kidnap a grandchild, authentic copies of the filings are not high on the priority list—only the filing of the Affidavit with the police is important.

54. That the Plaintiffs aver that it is hard to believe that the Defendants, through a supposedly educated legal professional, would make these inane statements to the Honorable Court in hopes that the Judge cannot figure out who wrote the Affidavits and why they were not signed. What other insults can the Defendants sling at the intelligence of the Court?

> In the often-quoted words of Judge Pratt of the Second Circuit:
> When Congress provided severe sanctions, both civil and criminal, for conducting the affairs of an "enterprise" through a "pattern of racketeering activity," it provided no exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If the conduct of such people can sometimes fairly be characterized as "garden variety fraud," we can only conclude that by the RICO statute congress has provided an additional means to weed the "garden" of its fraud.
> It seems almost too obvious to require statement , but fraud is fraud , whether it is committed by a hit man for organized crime or by the president of a Wall Street brokerage firm. [20]

55. That in regard to the bank clerk who works at Chevy Chase Bank and who reported the Plaintiffs' activities through credit charges to Yelin Shi and Yu Fan, the Plaintiffs will meet with the

---

[20] *Furman v. Cirrito*, 741 F.2d 524, 529 (2d Cir 1984), *vacated in part on other grounds sub nom Joel v. Cirrito*, 473 U.S. 922 (1985).

bank's attorneys and see if they find these allegations are a joke if a copy is sent to the Financial Institutions Examinations Council.

56. That Defendant Yelin Shi is the person who told the Plaintiff Jacobs that he was going to have him killed by a Chinese hit man from New York. Until then, the Plaintiffs did not know that there was such a thing as a "Chinese hit man."

57. That, once again, the Defendants are attempting to convince the Honorable Court that the contracts have been tried in several(?) Courts. Plaintiffs state that since the contracts have never been presented in open court, and there has never been an open trial where the contracts were represented by counsel, there has been no decision given concerning the contracts. There is no statute of limitation in RICO litigations, all of these Defendants will be joined in the forthcoming contract lawsuit regardless of when they became involved in the enterprises, and the Plaintiffs have been informed by the corporate attorneys for the third parties that the corporations are confident that they will be properly defended.

> In its seminal decision in *United States v. Elliot,* 571 F.2d 880, 903 (5th Cir.), cert. denied, 439 U.S. 953 (1978), the Fifth Circuit stated that "[t]he substantial proscriptions of the RICO statute apply to insiders *and outsiders*- those merely 'associated with' an enterprise- who participate directly *and indirectly* in the enterprise's affairs. **Thus the RICO net is woven tightly to catch even the smallest fish, those peripherally involved with the enterprise**" (emphasis added-citations omitted).[21]

58. That Plaintiffs aver that Weinstock, Friedman & Friedman, P.A. is a RICO person which has RICO enterprises operating within the walls of its otherwise legal business.[22] There are a myriad of cases which admonish legal professionals for joining their clients in the commission of

---

[21] *Shearin v. EF Huton Group, Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).
[22] "Association does not require that the defendant be employees by or legitimately connected to the racketeering enterprise." *United States v. Mokol,* 957 F.2d 1410, 1417 (7th Cir 1992).

criminal activities instead of simply and legally defending their clients for their past indiscretions. The most infamous was the Lincoln Savings and Loan case. [23]

> The Fifth Circuit has pointedly stated that § 1962 (c) applies:
> *to insiders and outsiders- those merely "associated with" as enterprise- who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity. . . [T]he RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.* [24]

59.   That enterprises are not "substantive allegations"; they are organizations formed either as completely independent entities or as a group within a group which has different objectives of the main organization. Regardless of what Weinstock, Friedman & Friedman, P.A. might declare in this Court, it is an active member of a RICO enterprise, and since it has lent its name to the filings in the courts where the written offenses have been submitted, Weinstock, Friedman & Friedman, P.A. is a RICO person. And,  just like a corporation, this RICO person will need an attorney when it is sued by the third parties.

### 1962(d) Conspiracy.

As a threshold matter, most decisions have concluded that RICO conspiracy does not require allegation or proof of an overt act. In *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990), the court of appeals held that although a criminal RICO conspiracy  does not require proof of an overt act, standing in a private action alleging a RICO conspiracy requires proof of proprietary injury from an overt act. The injury must be

---

[23] There are other unanswered questions presented by this case. Keating testified that he was so bent on doing the "right thing" that he surrounded himself with literally scores of accountants and lawyers to make sure all the transactions were legal. The  questions that must be asked are:

Where were these professionals, a number of whom are now asserting their rights under the Fifth Amendment, when these clearly improper transactions were being consummated?

Why didn't any of them speak up or disassociate themselves from the transactions?

Where also were the outside accountants and attorneys when these transactions were effectuated?

**What is difficult to understand with all the professional talent involved (both accounting and legal), why at least one professional would not have blown the whistle to stop the overreaching that took place in this case.**   *Lincoln Savings & Loan Assn. V. Wall,* 743 F.Supp. 901, 919-20 (DDC 1990) (footnote omitted).

[24]*United States v. Elliot,* 571 F.2d 880, 903 (5th Cir) (emphasis in original; citation omitted), cert. denied, 439 U.S. 953 (1978).

caused by an overt act that is a section 1961(1) predicate act, and not merely one caused by other overt acts furthering the conspiracy. 897 F.2d at 25.

A RICO conspiracy allegation has three basic elements. First, the plaintiff must allege the existence of an enterprise. RICO conspiracy is so broad that the jury must often resolve whether there is a single conspiracy or multiple conspiracies.

Second, the plaintiff must prove that the defendant agreed to participate directly or indirectly in the enterprise's affairs. A RICO conspiracy conviction may be based or partly on agreement to participate as an aider-abettor of racketeering acts. See *Leonard v. Amex*, 687 F.Supp. 177,182.

Third, the plaintiff must allege that the defendant agreed to participate in a pattern of racketeering activity or agreed to collect an unlawful debt in a manner that violated section 1962(a), (b), or (c). Mere agreement to commit predicate acts, without such agreement to participate in a pattern, is insufficient.

Courts remain split on the question whether a corporation and its wholly owned subsidiary are capable of conspiring to violate RICO. [25]

## 3. The Fair Debt Collection Practices Act Does Apply to This Matter.

60.  That the decision as to whether the Fair Debt Collection Practices Act applies to this case is a decision for the Court to make, not the Defendants. Just as presumptive arrogance does not excuse criminal and overt acts, the Defendants do not make a strong case to avoid accepting responsibility for irrational and criminal behavior under the guise of a legal professional.

61.  That Defendants Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A., state on their nomenclature that they are "debt collectors" and when they called the Plaintiffs' office they attempted to collect an unlawful debt of $140,000.00 under this "debt collector" mantle through threats, intimidation and harassment. They maintain that this $140,000.00 "consumer" debt was supposedly owed to their "consumer" clients. The Defendants made the telephone calls to collect an unlawful debt for a "consumer" debt, and when the calls were made the Fair Debt Collection Practices Act applied to those telephone calls and any acts in violation to those laws applies to those overt acts.

---

[25]See *Shearin* and *Pandick, Inc. v. Rooney*, 632 F.Supp. 1430, 1435-1436 (N.D. 1986) (corporation can conspire with its officers and subsidiaries to violate RICO.)

62.    That now these same Defendants state that the Plaintiffs' claim for this same $140,000.00 is a "commercial" debt for commercial reasons, and nothing is owed to the Plaintiffs because the Plaintiffs' "commercial" claims are not covered under the Fair Debt Collection Practices Act since this is not a personal debt even though Yelin Shi and Yu Fan supposedly wrote checks to a person but not to a company. But the Defendants state that they are under this "consumer" umbrella and the Plaintiffs are not. Say what ???????

63.    That even if the over $9,230,000.00 in debt and damages which has accrued because of the breach of contract is not under the Fair Debt Collection Practices Act, it is still a debt which was accumulated as an unlawful debt through intended and actual fraud, breach of contract, and inducement for breach of contract. This over $9,000,000.00 amount demanded by the Plaintiffs is for damages and injuries to their businesses, and for the amount owed to the third parties who also suffered damages.

64.    That the Defendants Yelin Shi and Yu Fan claim that this is a "commercial" debt for business only and the Fair Debt Collection Practices Act doe not apply. However, since the Defendants had a premeditated intention to defraud the Plaintiffs and the third party suppliers, the laws of civil RICO apply, and since the Defendants used threats of violence and intimidation to collect an unlawful debt, Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence) applies to those telephone calls to the Plaintiffs' office and the other more serious overt acts of intended kidnapping, threats of murder and bodily harm.

65.    That the Defendants Yelin Shi and Yu Fan generated business expenses for business ventures which they helped create and orchestrate, and when they breached those contracts they relinquished any and all claims to that $140,000.00 which was used to procure those breached contracts. The inducement to breach those contracts was supplied by the $140,000.00 checks used

to procure those contracts.  The $140,000.00  was a small amount of exchange to pay for millions of dollars worth of goods.

66.  That Plaintiffs state that  Defendants Yelin Shi and Yu Fan,  and those who were to receive the goods at the destination, never  had the  intention  fulfill the obligations of the Letters of Credit nor to otherwise pay for those goods. The intention was always to defraud the Plaintiffs and the suppliers as a repayment for having sued the other members of the group for the theft of the $1,500,000.00 which, by the way, also was never recovered by the Plaintiffs.[26]

## B. PLAINTIFFS HAVE COMPLIED WITH LOCAL RULE 11.1

67.  That the Defendants make issue with the fact that the Plaintiffs have no permanent residential address, and this is true because the Plaintiffs do not own a home, nor do they have a contract for a rental residence due to the fact that they have lost the money through fraudulent investment schemes with Defendants Yelin Shi and Yu Fan in this case, and with Susan Wu for over $1,500,000.00.

68.  That  Plaintiffs have paid any large amounts of money which has been obtained through business ventures to the third parties who are preparing to sue all of these Defendants and the Plaintiffs for these two contracts in this case.  Since the Plaintiffs have attempted to pay part of this debt for the breached contract for soy beans to Cargill, the statute of limitation does not apply since the last payment was made the first part of this year.

---

[26] *Edgecombe Bank & trust Co. v. Barrett,* 238 N.C. 579, 586 (1953). The victims are within their rights to say, "We are entitled to pursue the just so long as we can track the fox; and not until we lose the trail are we obliged to abandon the chase, call our dogs and go home." *Jarrrett v. Green,* 230 N.C. 104, 108 (1949). Less colorfully, "where the converted property has assumed altered forms by successive investments, the owner may follow it as far as he can trace it and sue at law for the substituted property, or he may hold the wrong does liable for appropriate damages." *May v. LeClaire,* U.S. (11 Wall.) 217, 235-236, 20 L.Ed. 50, 54 (1871).

69. That a friend of the Plaintiffs allowed the Plaintiffs to move into one of the homes that he owns when Plaintiff Heckerman needed to have a major surgery, but this is not a permanent address since the home is being sold shortly.

70. That just as this Courthouse has a room number outside of every office, the Plaintiffs' office also has room numbers and 800 is a general number and 838 is a specific number for a specific office, and, both are legitimate and interchangeable numbers to receive mail and telephone calls since these are the same offices to which the Defendants made their telephone calls from Maryland which constituted wire fraud.

WHEREFORE, Plaintiffs pray that;

A. That the Court accepts that the Plaintiffs have succinctly addressed the issues in the Amended Complaint and declares that they have met the criteria outlined by the Order of July 10, 2008;

B. That all other objections and arguments which were stated in this Motion to Dismiss were properly and thoroughly defended in this response, and the averments which were not denied might not have also been omitted since the Defendants failed to file proper RICO defenses to the standard context attributed to RICO Complaints and Answers;

C. That the Plaintiffs pray that they be allowed to engage the services of an attorney to defend them in this cause since the latest filing of the Defendants in the State court demonstrates the main criteria for this cause to proceed to trial, and that criteria is the proof of repetition which supports the Plaintiffs' averments, and,

D. That the Defendants have demonstrated that the Defendants intend to continue with the pattern of racketeering activities just as the Plaintiffs detailed in their complaint, and the State has

no control over the actions of these Defendants so a United States District Court is the only form of judicial decision for which relief may be granted to the Plaintiffs.

    E. That a full jury be granted for the trial of this cause.

Dated this 2ND day of September, 2008.

Respectfully submitted,

_____

Samuel K. Jacobs

_____

Nancy Heckerman

OFFICE OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753
E-mail: sjnhjacobs@msn.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SAMUEL K. JACOBS, et al,

      PLAINTIFFS,

v.

SIDNEY S. FRIEDMAN, et al,

      DEFENDANTS.

CASE NO.: <u>1:07cv1625</u>

HONORABLE JUDGE:
  <u>REGGIE B. WALTON</u>

## <u>ORDER</u>

This matter having this day regularly come before me for hearing, pursuant to a notice of Defendants' 'Motion To Dismiss,'  and the Plaintiffs having filed an 'Response  To Motion To Dismiss' in response thereto  this motion for dismissal, and the Court  being fully advised in the premises, and good cause appearing therefor,

It is hereby ORDERED, that said motion be, and the same is hereby, DENIED,  and, that this Court shall continue to hear this cause of action as it was assigned; and, it is

FURTHERMORE so ORDERED

That the Clerk of this court hereby is ordered and directed to immediately certify and enter a copy of this order, and that the parties be ordered to proceed with the case from this day forward.

Done and ORDERED this _____ day of _____, 2008.

_____
JUDGE  OF  THE  DISTRICT  COURT

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008, I caused the foregoing to be served by

First Class U.S. Mail: "RESPONSE TO MOTION TO DISMISS" in the United States District

Court for the District of Columbia on the following Defendants' attorney:


SIDNEY S. FRIEDMAN
WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301


Nancy Heckerman, Plaintiff